# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATCH GROUP, LLC,<br><br>                    Plaintiff,<br><br>     v.<br><br>BEAZLEY UNDERWRITING, LIMITED,<br><br>                    Defendant. | Case No.: 1:22-cv-4629-LGS |

## DEFENDANT BEAZLEY UNDERWRITING, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)</u>

Jonathan S. Zelig
**DAY PITNEY LLP**
One Federal Street
Boston, MA 02110
jzelig@daypitney.com
Tel. (617) 345-4601
Fax (617) 892-4236

Joseph T. Nawrocki
**DAY PITNEY LLP**
242 Trumbull Street
Hartford, CT 06103
jnawrocki@daypitney.com
Tel. (860) 275-0356
Fax (860) 748-4929

*Attorneys for Defendant*

TABLE OF CONTENTS

Page

Introduction ............................................................................................................1

Background ............................................................................................................2

I.    The Mellesmoen Claim and Beazley's Declination of Coverage ...............2

II.   The Claims-Made-and-Reported Policy .....................................................3

      A.   The Definition of "Claim" and the Policy's Reporting
           Requirements .....................................................................................4

      B.   In the Amended Complaint, Match Attempts to Evade the
           Definition of "Claim" with Alleged Extrinsic Evidence ...................5

      C.   The Policy's Optional Extension Period ............................................6

Applicable Standards..............................................................................................7

Argument ...............................................................................................................8

I.    Match's Failure to Report the Mellesmoen Claim During the Policy
      Period Precludes Coverage as a Matter of Law ..........................................8

      A.   The Mellesmoen Claim Was First Made When Match Received
           the Demand Letter in February 2016 ................................................9

      B.   Reporting the Mellesmoen Claim by the "End of the Policy
           Period" Is Integral to Coverage ......................................................11

      C.   Match Cannot Nullify the Unambiguous Terms of the Policy with
           Extrinsic Evidence of an Alleged Course of Dealing ......................13

II.   Match Cannot Cure Its Six-Month Delay in Reporting the Mellesmoen
      Claim by Invoking New York General Construction Law § 25 .................16

      A.   Section 25 Extends the Policy's Reporting Deadline by a
           Maximum of 48 Hours .....................................................................16

      B.   Section 25 Does Not Apply to Reporting Deadlines in Claims-
           Made-and-Reported Policies .............................................................19

III.  Coverage Cannot Be Created by Estoppel and
      Match Suffered No Prejudice ....................................................................21

Conclusion ...........................................................................................................22

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Vehicle & Prop. Ins. Co. v. Mars,*
    533 F. Supp. 3d 71 (E.D.N.Y. 2021) ......................................................................21

*Am. Ins. Co. v. Fairchild Indus., Inc.,*
    56 F.3d 435 (2d Cir. 1995)......................................................................10, 11, 14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................7

*Berkley Assurance Co. v. Hunt Constr. Grp., Inc.,*
    465 F. Supp. 3d 370 (S.D.N.Y. 2020)..............................................................4, 21

*Brumfield v. Shelton,*
    831 F. Supp. 562 (E.D. La. 1993) ...................................................................12, 21

*Burlington Ins. Co. v. NYC Transit Auth.,*
    29 N.Y.3d 313 (2017) ........................................................................................8

*Calocerinos & Spina Consulting Eng'rs, P.C. v. Prudential Reinsurance Co.,*
    856 F. Supp. 775 (W.D.N.Y. 1994) ......................................................................11

*Carmel Acad. v. New York State Educ. Dep't,*
    94 N.Y.S.3d 715 (3d Dep't 2019).......................................................................18

*Cath. Med. Ctr. v. Exec. Risk Indem., Inc.,*
    151 N.H. 699 (2005) ....................................................................................11, 20

*Catlin Specialty Ins. Co. v. QA3 Fin. Corp.,*
    36 F. Supp. 3d 336 (S.D.N.Y. 2014).....................................................................8

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002).................................................................................3

*Checkrite Ltd., Inc. v. Illinois Nat. Ins. Co.,*
    95 F. Supp. 2d 180 (S.D.N.Y. 2000).............................................................11, 14, 19

*Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC,*
    724 F. Supp. 2d 407 (S.D.N.Y. 2010).................................................................22

*Colliton v. Cravath, Swaine & Moore LLP,*
    2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008)......................................................16

*Colony Ins. Co. v. AIG Specialty Ins. Co.,*
    2018 WL 1478045 (S.D.N.Y. Mar. 26, 2018) .......................................................9

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
    650 F. Supp. 2d 314 (S.D.N.Y. 2009)........................................................................13

*Compas Med., P.C. v. Fiduciary Ins. Co. of Am.*,
    31 N.Y.S.3d 734 (2d Dep't 2016)............................................................................20

*Coventry Enters. LLC v. Sanomedics Int'l Holdings, Inc.*,
    191 F. Supp. 3d 312 (S.D.N.Y. 2016)......................................................................20

*DeMoura v. Cont'l Cas. Co.*,
    523 F. Supp. 3d 314 (E.D.N.Y. 2021) .......................................................................8

*In re Estates of Covert*,
    97 N.Y.2d 68 (2001) ..................................................................................................7

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013).....................................................................................14

*Freda Green & Assocs., Inc. v. Heydt*,
    562 N.Y.S.2d 79 (1st Dep't 1990) ............................................................................20

*Friedman v. Connecticut Gen. Life Ins. Co.*,
    9 N.Y.3d 105 (2007) ................................................................................................17

*Harrison v. Allstate Ins. Co.*,
    1999 WL 638243 (S.D.N.Y. Aug. 18, 1999)...........................................................20

*Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    530 F. Supp. 3d 447 (S.D.N.Y. 2021).................................................................8, 13

*Home Ins. Co. of Illinois (New Hampshire) v. Spectrum Info. Techs., Inc.*,
    930 F. Supp. 825 (E.D.N.Y. 1996) .....................................................................12, 14

*Hunt Constr. Grp., Inc. v. Berkley Assurance Co.*,
    2021 WL 4392520 (S.D.N.Y. Sept. 24, 2021).......................................1, 11, 19, 21

*J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
    659 F. Supp. 2d 350 (E.D.N.Y. 2009) .....................................................................20

*Jet Drive Gen. Marine Mfg. Co. v. Scottsdale Ins. Co.*,
    426 F. Supp. 3d 60 (S.D.N.Y. 2019) .......................................................................13

*Johnson v. Nextel Commc'ns Inc.*,
    660 F.3d 131 (2d Cir. 2011).....................................................................................22

*Kulanski v. Celia Homes, Inc.*,
    184 N.Y.S.2d 234 (2d Dep't 1959)...........................................................................20

*Kuzmich v. 50 Murray St. Acquisition LLC,*
    34 N.Y.3d 84 (2020) ........................................................................................17

*Lesk v. London & Lancashire Indem. Co. of Am.,*
    286 N.Y. 443 (1941) ........................................................................................19

*Liberty Mut. Ins. Co. v. Fairbanks Co.,*
    170 F. Supp. 3d 634 (S.D.N.Y. 2016)............................................................13

*Liberty Mut. Ins. Co. v. McDonald,*
    775 N.Y.S.2d 83 (2d Dep't 2004)...................................................................21

*McCabe v. St. Paul Fire & Marine Ins. Co.,*
    914 N.Y.S.2d 814 (4th Dep't 2010).................................................................9

*Mental Hygiene Legal Serv. v. Sullivan,*
    32 N.Y.3d 652 (2019) ......................................................................................18

*Michael Cetta, Inc. v. Admiral Indem. Co.,*
    506 F. Supp. 3d 168 (S.D.N.Y. 2020)..............................................................8

*Montero v. City of Yonkers, N.Y.,*
    890 F.3d 386 (2d Cir. 2018).............................................................................7

*Morgan Stanley Grp. Inc. v. New England Ins. Co.,*
    225 F.3d 270 (2d Cir. 2000).............................................................................8

*Nat'l State Bank, Elizabeth, N.J. v. Am. Home Assur. Co.,*
    492 F. Supp. 393 (S.D.N.Y. 1980) .................................................................14

*People v. Williams,*
    66 N.Y.2d 659 (1985) ......................................................................................18

*Protective Specialty Ins. Co. v. Castle Title Ins. Agency, Inc.,*
    437 F. Supp. 3d 316 (S.D.N.Y. 2020).............................................................12

*Quanta Lines Ins. Co. v. Inv'rs. Cap. Corp.,*
    2009 WL 4884096 (S.D.N.Y. Dec. 17, 2009) ................................................10

*Rich v. Fox News Network, LLC,*
    939 F.3d 112 (2d Cir. 2019)........................................................................7, 15

*Seneca Ins. Co. v. Kemper Ins. Co.,*
    2004 WL 1145830 (S.D.N.Y. May 21, 2004) ...........................................10, 14

*Squicciarini v. Park Ridge at Terryville Assocs.,*
    605 N.Y.S.2d 372 (2d Dep't 1993).................................................................20

*Syracuse Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,*
   975 N.Y.S.2d 370 (Sup. Ct.), *aff'd,* 976 N.Y.S.2d 921 (4th Dep't 2013) .............................14

*Travelers Indem. Co. v. Northrop Grumman Corp.,*
   677 F. App'x 701 (2d Cir. 2017) ..............................................................................................9

*In re U.S. Specialty Ins. Co. (Denardo),*
   57 N.Y.S.3d 743 (3d Dep't 2017)............................................................................................21

*Univ. of Pittsburgh v. Lexington Ins. Co.,*
   2016 WL 4991622 (S.D.N.Y. Sept. 16, 2016)........................................................................12

*Venoco, Inc. v. Gulf Underwriters Ins. Co.,*
   175 Cal. App. 4th 750 (2009) .................................................................................................21

*W. Waterproofing Co., Inc. v. Zurich Am. Ins. Co.,*
   2022 WL 329225 (S.D.N.Y. Feb. 3, 2022)..............................................................................10

*Westchester Fire Ins. Co. v. MCI Commc'ns Corp.,*
   902 N.Y.S.2d 350 (1st Dep't 2010) ...........................................................................................8

*Wilson v. JPMorgan Chase Bank, N.A.,*
   2021 WL 5179914 (S.D.N.Y. Nov. 8, 2021) ..........................................................................15

**Statutes**

N.Y. Stat. Law § 94 ...........................................................................................................................17

N.Y. Gen. Const. Law § 20................................................................................................................18

N.Y. Gen. Const. Law § 25.....................................................................................................*passim*

N.Y. Gen. Const. Law § 25(1)...............................................................................................16, 17, 19

**Other Authorities**

13 Couch on Ins., § 186:13 (3d ed. June 2022) ................................................................................19

Ostrager & Newman, *Handbook on Insurance Coverage Disputes*, § 1.05[b][4]
   (20th ed. 2020) .........................................................................................................................6

Fed. R. Civ. P. 12(b)(6).............................................................................................................2, 7, 23

<u>INTRODUCTION</u>

This is a straight-forward insurance coverage dispute that is resolved by enforcing the plain language of the policy. Defendant Beazley Underwriting, Ltd. ("Beazley") issued a claims-made-and-reported policy to a predecessor of plaintiff Match Group, LLC ("Match"). The policy imposed a bright-line cut-off date for reporting claims: "no later than … the end of the Policy Period." Match received the subject claim during the policy period, but then waited over six months to report it to Beazley, by which time the policy had expired. In this scenario, New York law is very clear: "The authorities establish that there is no coverage under a claims-made policy where the insured fails to notify the insurer of a claim by the end of the policy period (or extended reporting period, if any)." *Hunt Constr. Grp., Inc. v. Berkley Assurance Co.*, 2021 WL 4392520, at *2 (S.D.N.Y. Sept. 24, 2021) (quoting *Checkrite Ltd., Inc. v. Illinois Nat. Ins. Co.*, 95 F. Supp. 2d 180, 191–92 (S.D.N.Y. 2000)).

To avoid this inevitable conclusion, Match tries to circumvent the policy's definition of "Claim" with vague allegations of the parties' course of dealing. According to Match, the parties shared an unwritten "understanding" that "minor matters" did not constitute "Claims" that must be reported under the Policy, notwithstanding the fact that the express definition of "Claim" contains no such exception. Thus, according to Match, its late reporting of the subject claim is excused. However, Match's course of dealing argument fails as a matter of law, because it is well-established that extrinsic evidence of the parties' intent or course of dealing is inadmissible where, as here, the contract language is unambiguous. Match's allegations are also facially implausible. When the parties wanted to alter the policy language, they did so through written endorsements memorializing their agreements, as required by the express language of the policy. But there is no endorsement amending the definition of "Claim."

Alternatively, Match invokes New York General Construction Law § 25, which extends some contract deadlines that fall on a weekend or holiday to "the same hour of such next succeeding business day." However, even if Section 25 applies to the policy – which it does not – Section 25 cannot help Match. The policy period ended "at 12:01 a.m. Local Time" on Saturday, August 20, 2016. Match admits that it reported the claim at "8:42 a.m. on Monday, August 22, 2016." Thus, even a forty-eight-hour extension to "the same hour of such next succeeding business day" under Section 25 would not be enough to bring the claim into coverage.

Finally, Match cannot rely on estoppel to excuse its untimely reporting. New York law is clear that estoppel cannot create coverage where (as here) the policy was never triggered in the first instance. In any event, Match fails to allege prejudice, as required for estoppel.

For these reasons, Beazley respectfully requests that the Court dismiss the complaint with prejudice under Rule 12(b)(6).

<u>**BACKGROUND**</u>

## I.    **The Mellesmoen Claim and Beazley's Declination of Coverage**

This litigation arises out of Beazley's declination of insurance coverage for an intellectual property dispute. The dispute involved an alleged Match predecessor corporation, Tinder, Inc. ("Tinder" or "Match"), which operates a dating and social networking app. (*See* Am. Compl. ¶ 40.) John Mellesmoen, a product development consultant, alleged that Tinder incorporated one of his innovations into its dating app without compensation (the "Mellesmoen Claim"). (*Id.* ¶¶ 60–61.) Beazley denied coverage of the Mellesmoen Claim, principally on the basis of late reporting of the claim. (*See id.* ¶ 84.)

Tinder first learned of the Mellesmoen Claim from a letter sent by Mr. Mellesmoen's counsel on February 16, 2016 (the "Demand Letter"). (*Id.* ¶ 60.)[1] The Demand Letter was written "to apprise you of claims Mr. Mellesmoen has against Tinder." (Ex. 1 to Declaration of Mark Singer ("Singer Decl."), Demand Letter, at 1.) Mr. Mellesmoen demanded that Tinder commence "good faith" negotiations to resolve the matter "within 14 days," or else "Mr. Mellesmoen will proceed vigorously with litigation and take other appropriate actions to vindicate his rights." (*Id.* at 8.) Tinder's parent corporation responded in writing to Mr. Mellesmoen, disputing the assertions. (Am. Compl. ¶ 63.)

The Policy required Tinder to notify Beazley of Mr. Mellesmoen's Demand Letter "as soon as practicable." (Ex. A to Am. Compl., Policy § IX.A, ECF No. 26-1, at 58.) Tinder did not do so. Instead, Tinder waited until Mr. Mellesmoen commenced litigation, six months later, before reporting the claim at 8:42 a.m. on August 22, 2016. (Am. Compl. ¶ 69.) By that time, the Policy had already expired, "at 12:01 a.m. Local Time" in New York on August 20, 2016. (Ex. A to Am. Compl., Policy, Declarations, Item 2, ECF No. 26-1, at 1.)

Beazley formally denied coverage of the Mellesmoen Claim on March 31, 2017. (Am. Compl. ¶ 83.) Based on that denial, Match brings claims for breach of contract and equitable estoppel. (*Id.* ¶¶ 100–20.)

## II.    The Claims-Made-and-Reported Policy

Beazley issued the Policy to another alleged predecessor of Match, InterActiveCorp, for the policy period of August 20, 2015 to August 20, 2016, "[b]oth dates at 12:01 a.m. Local Time

---

[1] The Court may consider the February 2016 Demand Letter on this Rule 12(b)(6) motion because Match "has actual notice of all the information [in the letter] and has relied upon th[is] document[] in framing the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

at the Address stated" in New York. (Ex. A to Am. Compl., Policy, Declarations, Item 2, ECF No. 26-1, at 1.)

### A.    The Definition of "Claim" and the Policy's Reporting Requirements

The Policy is a claims-made-and-reported policy, meaning that its coverage "extends only to those claims made by or against the insured *and* reported to the insurer within the policy period." *Berkley Assurance Co. v. Hunt Constr. Grp., Inc.*, 465 F. Supp. 3d 370, 377 (S.D.N.Y. 2020) (emphasis in original). As relevant here, the Policy provides coverage for certain "Damages and Claims Expenses, ... resulting from ***any Claim first made*** against any Insured during the Policy Period or Optional Extension Period (if applicable) and ***reported to [Beazley] during the Policy Period***[.]" (Ex. A to Am. Compl., Policy § I.F, ECF No. 26-1, at 37–38 (emphases added).) "Claim" is defined to include "a ***written demand*** received by any Insured for money or services, including the service of a suit or institution of arbitration proceedings." (*Id.* § VI.G.1, ECF No. 26-1, at 50 (emphasis added).)

The Policy imposes hard deadlines for reporting Claims in order to trigger coverage:

> all Claims made against any Insured must be reported no later than (i) the end of the Policy Period, (ii) sixty (60) days after the expiration date of the Policy Period in the case of Claims first made against the Insured during the last sixty (60) days of the Policy Period, [or] (iii) the end of the Optional Extension Period (if applicable)[.]

(*Id.* § IX.A, ECF No. 26-1, at 58–59.)

In the Initial Complaint, Match did not dispute that subsection (ii) – the provision concerning Claims first made in the last sixty days of the Policy Period – is inapplicable. Match even used an ellipsis to excise the provision from its pleadings:

34.     The Policy provides, in pertinent part, that "Claims made against any Insured [must] be reported no later than (i) the end of the Policy Period [. . . or . . .] (iii) the end of the Optional Extension Period (if applicable) . . . ." *See id.* at IX.

(Initial Compl. ¶ 34.)

### B.     In the Amended Complaint, Match Attempts to Evade the Definition of "Claim" with Alleged Extrinsic Evidence

After excising the provision from its Initial Complaint, Match now makes subsection (ii) of Section IX.A the centerpiece of its Amended Complaint. According to Match's new story, the parties had an unwritten "shared understanding and course of dealing" that altered the definition of "Claim" such that Match was entitled to sixty more days to report the Mellesmoen Claim. (Am. Compl. ¶¶ 46–47.)

Specifically, Match avers that the parties had established a course of dealing by which "minor matters did not constitute 'Claims'" that needed to be reported to Beazley, "regardless of whether any of their insurance policies arguably called for something else." (*Id.* ¶ 46.) Conveniently, under this newly alleged, unwritten understanding of "Claim," Mellesmoen's August 17, 2016 complaint – but ***not*** his February 2016 Demand Letter – constituted a "Claim" that triggered reporting obligations under the Policy. (*Id.* ¶ 71.) And, since the Mellesmoen complaint was filed three days before the end of the Policy Period, under Match's new theory, its reporting of the Mellesmoen Claim was timely under subsection (ii) of Section IX.A – which permits the policyholder "sixty (60) days after the expiration date of the Policy Period" to report "Claims first made … during the last sixty (60) days of the Policy Period." (Ex. A to Am. Compl., Policy § IX.A.(ii), ECF No. 26-1, at 59.)

Match does not allege that the parties memorialized their purported "shared understanding" of an altered definition of "Claim" in the text of the Policy. This is despite the

fact that the Policy *expressly provides* that "this Policy embodies all agreements between [Beazley] and the Insured relating to this Policy." (*Id.* § XIX, ECF No. 26-1, at 63.) Consistent with that provision, the parties negotiated numerous manuscript endorsements to the policy language[2] – but *not* an endorsement altering the definition of "Claim." (*See, e.g.*, *id.*, Additional Insured Endorsement, ECF No. 26-1, at 10 ("The Insured and the Insured Organization, is amended to include Ticketmaster, Lending Tree, Interval International and HSN …"); *id.*, Scheduled Subsidiary Endorsement, ECF No. 26-1, at 11 (amending definition of "Subsidiary"); *id.*, Amended Professional Services to Include Advertising Services Endorsement, ECF No. 26-1, at 19 (amending definition of "Professional Services" to "also mean[] advertising services performed solely by Felix Calls LLC for others").)

Nevertheless, Match alleges that the parties discussed this alleged shared understanding "during one or more insurance renewal meetings" and during other unspecified "regularly scheduled meetings." (Am. Compl. ¶¶ 51–52.) Match also alleges that Beazley consented to this revised understanding of "Claim" when Beazley agreed to cover a different claim reported months after Match first received a demand – though notably that claim (unlike the Mellesmoen Claim) was both made and reported during the applicable policy period. (*Id.* ¶¶ 53–56.)

### C.    The Policy's Optional Extension Period

Finally, the Policy permits the Insured to purchase an Optional Extension Period, which extends coverage "for Claims ***first made*** *against any Insured and reported to [Beazley]* ***during***

---

[2] "Since business risks are often extremely complicated and specialized, many business insurance arrangements are consummated in the form of individually negotiated and drafted policies known in the industry as 'manuscript' policies. While 'standard-form' policies characterize many *personal* insurance arrangements may properly be viewed as contracts of adhesion for which a contra-insurer rule is appropriate, individually negotiated manuscript policies, by their nature, reflect the bargaining power of the insured." Ostrager & Newman, *Handbook on Insurance Coverage Disputes*, § 1.05[b][4] (20th ed. 2020) (emphasis in original).

*the Optional Extension Period*.” (Ex. A to Am. Compl., Policy § X.A, ECF No. 26-1, at 60 (emphasis added).) By definition, the Optional Extension Period begins “***after the end of the Policy Period***.” (*Id.* § VI.X, ECF No. 26-1, at 54 (emphasis added).) If purchased, the Optional Extension Period would apply only to Claims “first made” after the Policy Period ended, *i.e.*, after 12:01 a.m. on August 20, 2016. Thus, the Optional Extension Period (even if purchased) could not provide coverage for the Mellesmoen Claim because, according to Match’s Amended Complaint, the Mellesmoen Claim was “first made on August 17, 2016,” before the Policy Period ended. (Am. Compl. ¶ 71.)

APPLICABLE STANDARDS

On a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 391 (2d Cir. 2018). To survive a Rule 12(b)(6) motion, a complaint “must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). “Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.” *Iqbal*, 556 U.S. at 678. Rather, a plaintiff “must provide the grounds upon which [its] claim rests through factual allegations sufficient to raise a right to relief above the speculative level.” *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (quotations omitted and cleaned up).

“Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation.” *In re Estates of Covert*, 97 N.Y.2d 68, 76 (2001).[3] “Therefore, as with the construction of contracts generally, unambiguous provisions of an

---

[3] The Policy contains a New York choice of law provision. (Ex. A to Am. Compl., Policy, Declarations, Item 11, ECF No. 26-1, at 3.)

insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 321 (2017) (quoting *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 10 N.Y.3d 170, 177 (2008)) (quotations omitted and cleaned up).

"If the provisions are clear and unambiguous, courts are to enforce them as written." *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 175–76 (S.D.N.Y. 2020) (quoting *Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995)) (cleaned up). "In 'interpreting an unambiguous contract, … the court is not to consider any extrinsic evidence as to the parties' intentions.'" *Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 530 F. Supp. 3d 447, 454 (S.D.N.Y. 2021) (quoting *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009)).

"It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss," even on a motion to dismiss. *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000) (appeal of motion to dismiss); *see also DeMoura v. Cont'l Cas. Co.*, 523 F. Supp. 3d 314, 320 (E.D.N.Y. 2021). Where, as here, the policy was issued to a "sophisticated policyholder," the *contra proferentem* canon of construction does ***not*** apply. *Westchester Fire Ins. Co. v. MCI Commc'ns Corp.*, 902 N.Y.S.2d 350, 351 (1st Dep't 2010); *see also Catlin Specialty Ins. Co. v. QA3 Fin. Corp.*, 36 F. Supp. 3d 336, 342 (S.D.N.Y. 2014) (Schofield, J.) (similar).

<u>**ARGUMENT**</u>

I.   **Match's Failure to Report the Mellesmoen Claim During the Policy Period Precludes Coverage as a Matter of Law**

Under the plain language of the Policy and New York law, the Mellesmoen Claim was first made in February 2016, when Match received the Demand Letter. The Policy therefore

required that the Mellesmoen Claim "must be reported **no later than** (i) **the end of the Policy Period**," *i.e.*, by August 20, 2016 "at 12:01 a.m. Local Time." (Ex. A to Am. Compl., Policy § IX.A, ECF No. 26-1, at 59 (emphasis added); *id.*, Declarations, Item 2, ECF No. 26-1, at 1.) Match cannot obtain coverage because it admits that it first reported the Mellesmoen Claim two days *after* the end of the Policy Period, on August 22, 2016. (Am. Compl. ¶ 69.) Moreover, because the Policy is unambiguous, Match cannot rely on extrinsic evidence to nullify the parties' express contractual agreement.

### A. The Mellesmoen Claim Was First Made When Match Received the Demand Letter in February 2016

The Policy is clear: "all Claims made against any Insured must be reported **no later than** (i) **the end of the Policy Period**," unless the Claim was "first made against the Insured during the last sixty (60) days of the Policy Period." (Ex. A to Am. Compl., Policy § IX.A, ECF No. 26-1, at 59 (emphasis added).) Because the Mellesmoen Claim was first made when Match received the Demand Letter – *i.e.*, in February 2016 – Match was required to report the claim by the end of the Policy Period: August 20, 2016 "at 12:01 a.m. Local Time."

The Policy defines "Claim" to include "**a written demand** received by any Insured for money or services." (*Id.* § VI.G.1, ECF No. 26-1, at 50 (emphasis added).) Consistent with this definition, New York courts hold that "a claim is an assertion by a third party that in the opinion of that party the insured may be liable to it for damages within the risks covered by the policy." *Travelers Indem. Co. v. Northrop Grumman Corp.*, 677 F. App'x 701, 705 (2d Cir. 2017) (quoting *Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 439 (2d Cir. 1995)). A party need "not specifically request monetary damages in [a] letter" to assert a claim, *McCabe v. St. Paul Fire & Marine Ins. Co.*, 914 N.Y.S.2d 814, 816 (4th Dep't 2010), and "an unreasonable – even sanctionable – assertion of liability" triggers a reporting requirement, *Colony Ins. Co. v. AIG*

*Specialty Ins. Co.*, 2018 WL 1478045, at *8 (S.D.N.Y. Mar. 26, 2018) (quotations omitted). In short, "[a]n assertion of possible liability, no matter how baseless, is … all that is needed to trigger a notice of claim provision." *Fairchild Indus.*, 56 F.3d at 439.

Under this standard, New York courts have held that a letter alleging wrongdoing and "request[ing] a meeting … to seek a 'possible resolution of this matter'" constituted a "claim," even though the letter neither expressly threatened litigation nor demanded specific monetary damages. *Seneca Ins. Co. v. Kemper Ins. Co.*, 2004 WL 1145830, at *5 (S.D.N.Y. May 21, 2004) (applying definition of "Claim" similar to the one at issue here). Another Southern District of New York decision held that a letter alleging fraud and requesting that the recipient "make arrangements to reimburse [the client] 'for her investments'" constituted a "claim." *Quanta Lines Ins. Co. v. Inv'rs. Cap. Corp.*, 2009 WL 4884096, at *13 (S.D.N.Y. Dec. 17, 2009). Most recently, this Court held that a claim was made when a letter alleged wrongdoing and threatened to hold a party legally "responsible" for damages. *W. Waterproofing Co., Inc. v. Zurich Am. Ins. Co.*, 2022 WL 329225, at *16 (S.D.N.Y. Feb. 3, 2022).

The February 2016 Demand Letter goes far beyond the letters in the above-cited cases. The Demand Letter begins by "appris[ing] [Tinder] of claims Mr. Mellesmoen has against Tinder," and offering an "opportunity for the company to reach an amicable – and confidential – resolution of this dispute without the need for litigation." (Ex. 1 to Singer Decl., at 1–2.) The Demand Letter references more than a dozen different court decisions that purportedly provided Mr. Mellesmoen with a right to recovery. (*Id.* at 5–7.) The Demand Letter proceeds to issue "a formal notification of potential litigation," triggering Tinder's "preservation obligations under applicable law." (*Id.* at 8.) The Demand Letter concludes: "should good faith attempts to resolve

this matter not commence within 14 days …, *Mr. Mellesmoen will proceed vigorously with litigation*." (*Id.* (emphasis added).)

Plainly, the February 2016 Demand Letter was an "assertion by a third party that in the opinion of that party the insured may be liable to it for damages," and therefore a "Claim." *Fairchild Indus.*, 56 F.3d at 439. Accordingly, the Mellesmoen Claim was "first made" in February 2016, and the Policy required Match to report the Demand Letter "no later than … the end of the Policy Period" to obtain coverage. (Ex. A to Am. Compl., Policy § IX.A, ECF No. 26-1, at 59.) Match, of course, concedes that it failed to do so. (Am. Compl. ¶ 69.)

### B.   Reporting the Mellesmoen Claim by the "End of the Policy Period" Is Integral to Coverage

Match's failure to timely report the Mellesmoen Claim by "the end of the Policy Period" precludes coverage as a matter of law.

"The existence of a cut-off date is integral to a claims-made policy." *Checkrite Ltd., Inc. v. Ill. Nat. Ins. Co.*, 95 F. Supp. 2d 180, 191 (S.D.N.Y. 2000). This is because "the timing of notice is the *trigger* for coverage in a claims made policy and is thus material to the existence or nonexistence of coverage." *Calocerinos & Spina Consulting Eng'rs, P.C. v. Prudential Reinsurance Co.*, 856 F. Supp. 775, 780 (W.D.N.Y. 1994) (emphasis in original); *see also Checkrite Ltd., Inc.*, 95 F. Supp. 2d at 190 (similar).

Courts *strictly enforce* reporting cut-off deadlines in claims-made-and-reported policies. "The authorities establish that there is no coverage under a claims-made policy where the insured fails to notify the insurer of a claim by the end of the policy period (or extended reporting period, if any)." *Hunt Constr. Grp., Inc. v. Berkley Assurance Co.*, 2021 WL 4392520, at *2 (S.D.N.Y. Sept. 24, 2021) (quoting *Checkrite Ltd., Inc.*, 95 F. Supp. 2d at 191–92). Missing the deadline by even a few hours precludes coverage. *See, e.g., Cath. Med. Ctr. v. Exec. Risk Indem., Inc.*, 151

N.H. 699, 700, 704 (2005) (holding that policyholder's "failure to give timely notice forfeits coverage under this claims-made policy as a matter of law" where policy expired at "12:01 a.m. August 1, 2002" and policyholder provided notice "on August 1, 2002, at 9:03 a.m."); *Brumfield v. Shelton*, 831 F. Supp. 562, 565 (E.D. La. 1993) (holding notice untimely and coverage unavailable where notice given "at 8:25 a.m. on December 31, 1985, a little more than eight hours after the policy expired").

The reason for strict enforcement of claim reporting deadlines is that they form an integral "benefit of the bargain" that drives down the price of insurance. Policyholders purchase claims-made-and-reported policies because they are less expensive than other forms of insurance, such as occurrence-based coverage. *See Univ. of Pittsburgh v. Lexington Ins. Co.*, 2016 WL 4991622, at *3 (S.D.N.Y. Sept. 16, 2016) (explaining that the policyholder "could have insured itself in a more costly but less risky manner, for example, by purchasing occurrence coverage"); *see also Protective Specialty Ins. Co. v. Castle Title Ins. Agency, Inc.*, 437 F. Supp. 3d 316, 325 n.11 (S.D.N.Y. 2020) ("Claims-made-and-reported policies have pros and cons, … and are priced accordingly. It would not be equitable to apply to one kind of policy the terms applicable to another." (citation omitted)). By including a strict cut-off date for reporting claims, claims-made-and-reported policies allow the insurer "to compute premiums with greater certainty," "result[ing] in lower premiums for the insured." *Home Ins. Co. of Illinois (New Hampshire) v. Spectrum Info. Techs., Inc.*, 930 F. Supp. 825, 829 n.1 (E.D.N.Y. 1996).

Match chose to purchase a claims-made-and-reported policy from Beazley. In exchange for a lower premium, Match agreed that claims made in the middle of the Policy Period must be reported "no later than … the end of the Policy Period." (Ex. A to Am. Compl., Policy § IX.A,

ECF No. 26-1, at 59.) Match failed to report the Mellesmoen Claim by the end of the Policy Period. Coverage is thus unavailable as a matter of law.

C.     **Match Cannot Nullify the Unambiguous Terms of the Policy with Extrinsic Evidence of an Alleged Course of Dealing**

In the Amended Complaint, Match attempts to nullify the definition of "Claim" by alleging purported extrinsic evidence of a course of dealing. The Policy provides Match with an extra sixty days to report Claims "***first made*** against the Insured during the ***last sixty (60) days*** of the Policy Period." (Ex. A to Am. Compl., Policy § IX.A, ECF No. 26-1, at 59 (emphases added).) To avail itself of this extra time, Match alleges that the parties had an unwritten understanding under which the term "Claim" encompassed Mr. Mellesmoen's commencement of litigation in the last week of the Policy Period – but ***not*** his February 2016 Demand Letter. (Am. Compl. ¶ 46; *see also id.* ¶¶ 44–54.) This newfound argument fails for a simple reason: extrinsic evidence cannot be considered where, as here, the contract is unambiguous. Match's argument is also facially implausible, and blatantly contradicts both the Policy and the allegations in the Initial Complaint.

It is well-established that, "[i]f a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634, 642–43 (S.D.N.Y. 2016) (quoting *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993)) (collecting cases); *see also Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 530 F. Supp. 3d 447, 454 (S.D.N.Y. 2021). That includes evidence of a supposed "course of dealing." *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 323 (S.D.N.Y. 2009) ("[I]n the face of an unambiguous contract, evidence of the parties' course of dealing is inadmissible."). This rule applies with full force on a motion to dismiss. *See Jet Drive Gen. Marine Mfg. Co. v. Scottsdale Ins. Co.*, 426 F. Supp. 3d 60, 66–67 (S.D.N.Y. 2019).

Where, as here, a claims-made-and-reported policy defines the term "Claim," New York courts uniformly hold that the definition is unambiguous. *See, e.g.*, *Home Ins. Co. of Illinois (New Hampshire) v. Spectrum Info. Techs., Inc.*, 930 F. Supp. 825, 845–46 (E.D.N.Y. 1996) (finding unambiguous nearly identical definition of "claim"); *Seneca Ins. Co. v. Kemper Ins. Co.*, 2004 WL 1145830, at *5 (S.D.N.Y. May 21, 2004) (same); *Syracuse Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 975 N.Y.S.2d 370 (Sup. Ct.), *aff'd*, 976 N.Y.S.2d 921 (4th Dep't 2013) (similar definition of "claim" held unambiguous); *Checkrite Ltd., Inc. v. Illinois Nat. Ins. Co.*, 95 F. Supp. 2d 180, 190 (S.D.N.Y. 2000). Indeed, even where a policy does ***not*** include a definition of "claim," New York courts have found the term unambiguous. *See, e.g.*, *Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 439 (2d Cir. 1995); *Nat'l State Bank, Elizabeth, N.J. v. Am. Home Assur. Co.*, 492 F. Supp. 393, 396 (S.D.N.Y. 1980). Because the defined term "Claim" in the Policy is unambiguous, as a matter of law, Match cannot rely on extrinsic evidence to amend that term of the contract.

Independently, Match's allegations "lack the facial plausibility necessary to survive a motion to dismiss." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). Match is a sophisticated policyholder that agreed "this Policy embodies all agreements between [Beazley] and the Insured relating to this Policy." (Ex. A to Am. Compl., Policy § XIX, ECF No. 26-1, at 63.) Consistent with this provision – and with the assistance of a broker – Match negotiated numerous manuscript endorsements to the Policy. (*See, e.g.*, *id.*, Additional Insured Endorsement, ECF No. 26-1, at 10 ("The Insured and the Insured Organization, is amended to include Ticketmaster, Lending Tree, Interval International and HSN …"); *id.*, Scheduled Subsidiary Endorsement, ECF No. 26-1, at 11 (amending definition of "Subsidiary"); *id.*, Amended Professional Services to Include Advertising Services Endorsement, ECF No. 26-1, at

19 (amending definition of "Professional Services" to "also mean[] advertising services performed solely by Felix Calls LLC for others").) It beggars belief that Match would negotiate these (and other) specific changes to the Policy language, and then sign a contract that did not reflect the parties' mutual understanding on a *fundamental* term – the definition of "Claim."

Underscoring the facial implausibility of Match's averments, the Amended Complaint contains only vague allegations about "explicit and/or implicit mutual understandings" that were "discussed during one or more" meetings. (Am. Compl. ¶¶ 45 & 51.) Match does not specify when those meetings took place – just that some "pre-dated the issuance of the Policy," and others were "regularly scheduled." (*Id.* ¶¶ 51–52.) Match likewise fails to provide the names of the individuals who were in attendance, let alone describe what exactly was said. In fact, the sole concrete allegation about the parties' course of dealing concerns Beazley's acceptance of a claim that, critically, Match reported ***during*** the Policy Period in which it was made. (*Id.* ¶¶ 55–56.) These vague, unsupported allegations of a course of dealing in the face of unambiguous contract language are not "sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (quotations omitted and cleaned up).

In any event, the Court need not credit Match's new allegations about a supposed course of dealing regarding the definition of "Claim." "A court may disregard factual allegations in an amended complaint where the plaintiff 'blatantly changes' her story in a way that 'directly contradicts' her earlier pleadings." *Wilson v. JPMorgan Chase Bank, N.A.*, 2021 WL 5179914, at *1 (S.D.N.Y. Nov. 8, 2021) (citing cases). In the Initial Complaint, Match did not dispute that the Mellesmoen Claim was made in the middle of the Policy Period, when Match received the February 2016 Demand Letter. In fact, Match omitted the provision – with an ellipsis, no less – applicable to Claims made "during the last sixty (60) days of the Policy Period," *i.e.*, Claims made

-15-

between June 21, 2016 and August 20, 2016. (*Compare* Initial Compl. ¶ 34 *with* Ex. A to Am. Compl., Policy § IX.A.(ii), ECF No. 26-1, at 59.)

It was only after Beazley filed its pre-motion letter that Match changed its story to invoke the "last sixty (60) days of the Policy Period" provision. Now, Match alleges that the parties had an "understanding" and "course of dealing" under which the August 17, 2016 Mellesmoen complaint – but not the February 2016 Demand Letter – was a "Claim." Because this is a "transparent attempt by plaintiff" to avoid the "dipositive defense[s]" raised by Beazley in "a pre-motion letter," the Court is not required to accept the new allegations as true. *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008).

## II. Match Cannot Cure Its Six-Month Delay in Reporting the Mellesmoen Claim by Invoking New York General Construction Law § 25

Alternatively, Match tries to exploit the fact that the Policy Period extended one minute into the weekend to obtain an extra seventy-two hours to report the Mellesmoen Claim. Specifically, Match alleges that New York General Construction Law § 25 extended the deadline to report from 12:01 a.m. on Saturday to the *end* of the following Monday. (Am. Compl. ¶ 26.) Match's argument fails for two reasons. First, by its plain terms, Section 25 can extend the Policy's reporting deadline only to the "same hour" of the next business day – not to the *end* of the next business day, as Match alleges. Second, New York General Construction Law § 25 does not apply to cut-off dates in claims-made-and-reported policies.

### A. Section 25 Extends the Policy's Reporting Deadline by a Maximum of 48 Hours

New York General Construction Law § 25(1) provides, in full:

> Where a contract by its terms authorizes or requires the payment of money or the performance of a condition on a Saturday, Sunday or a public holiday, or authorizes or requires the payment of money or the performance of a condition within or before or after a period of time computed from a certain day, and such period of time ends on

-16-

> a Saturday, Sunday or a public holiday, unless the contract expressly or impliedly indicates a different intent, such payment may be made or condition performed on the next succeeding business day, and ***if the period ends at a specified hour, such payment may be made or condition performed, at or before the same hour of such next succeeding business day***, with the same force and effect as if made or performed in accordance with the terms of the contract.

N.Y. Gen. Constr. Law § 25(1) (emphases added). Under the plain language of the statute, Match had *at most* an additional 48 hours – to 12:01 a.m. on Monday, the "same hour of such next succeeding business day" – to report the Mellesmoen Claim. But by its own admission, Match failed to meet even that extended deadline. (*See* Am. Compl. ¶ 69.)

As the Court of Appeals has "repeatedly explained, courts should construe unambiguous language [of a statute] to give effect to its plain meaning." *Kuzmich v. 50 Murray St. Acquisition LLC*, 34 N.Y.3d 84, 91 (2020) (quotation omitted); *see also* N.Y. Stat. Law § 94 ("The legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction."). In so doing, a court must "harmonize all parts of a statute with each other and give effect and meaning to the entire statute ***and every part and word thereof***." *Friedman v. Connecticut Gen. Life Ins. Co.*, 9 N.Y.3d 105, 115 (2007) (quotation omitted and cleaned up) (emphasis added).

Giving effect to "every part and word" requires giving effect to Section 25's same-hour provision: "if the period ends at a specified hour, such payment may be made or condition performed, at or before the same hour of such next succeeding business day." N.Y. Gen. Constr. Law § 25(1). Since the Policy Period ended at "12:01 a.m. Local Time" on Saturday, August 20, 2016, (Ex. A to Am. Compl., Policy, Declarations, Item 2, ECF No. 26-1, at 1), Section 25 could

extend the deadline only until 12:01 a.m. on Monday, the "next succeeding business day." Match missed that extended deadline by more than eight hours. (Am. Compl. ¶ 69.)

Nevertheless, Match objects that enforcing the plain language of Section 25 would "thwart" the supposed legislative intent of allowing "parties to satisfy contractual conditions during business hours." (Pre-Motion Response, ECF No. 19, at 3.) But "the text of a provision is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning." *Mental Hygiene Legal Serv. v. Sullivan*, 32 N.Y.3d 652, 658 (2019) (quotation omitted). If the Legislature had wanted to enact a time computation statute that extended deadlines through an entire business *day* – and not a "specified *hour*" – it certainly "knew how to do so." *People v. Williams*, 66 N.Y.2d 659, 660 (1985) (applying "Legislature knew how to do so" canon of construction); *Carmel Acad. v. New York State Educ. Dep't*, 94 N.Y.S.3d 715, 717 (3d Dep't 2019) (same). Indeed, one example of a computation statute without a same-hour provision is found just a few sections prior, at New York General Construction Statute § 20.

At bottom, Match's objection is not to the plain language of Section 25, but the plain language of its own contract. After all, it is the *Policy* – not the statute – that required reporting of the Mellesmoen Claim by "12:01 a.m. Local Time." (Ex. A to Am. Compl., Policy, Declarations, Item 2, ECF No. 26-1, at 1.) Section 25's same-hour provision merely instructs courts to enforce that "specified" hour on the next business day. And for good reason: a party should not receive an entire **calendar day** (beyond the weekend) to perform just because a contract happened to extend **sixty seconds** into a Saturday morning. That result would grant Match an entire business day it never bargained for.

**B.      Section 25 Does Not Apply to Reporting Deadlines in Claims-Made-and-Reported Policies**

Section 25 cannot excuse Match's failure to timely report the Mellesmoen Claim for another reason: it does not apply to the Policy.

The Court of Appeals has held that Section 25 does not apply where the triggering event for coverage occurs outside the policy period. *Lesk v. London & Lancashire Indem. Co. of Am.*, 286 N.Y. 443, 447–48 (1941) (holding Section 25 does not apply where policy "will absolutely cease at 12 o'clock NOON Standard Time November 8th" and accident occurred five hours after noon, even though November 8th was a holiday). For a claims-made-and-reported policy, "[t]he requirement that claims be reported within a specified time period is 'the trigger for coverage.'" *Checkrite Ltd., Inc. v. Illinois Nat. Ins. Co.*, 95 F. Supp. 2d 180, 190 (S.D.N.Y. 2000) (quoting *Calocerinos & Spina Consulting Eng'rs, P.C. v. Prudential Reinsurance Co.*, 856 F. Supp. 775, 779 (W.D.N.Y. 1994)); *see also* 13 Couch on Ins. § 186:13 (3d ed. June 2022) ("[T]he event that invokes coverage under a claims made policy is transmittal of the notice of the claim to the insurance carrier."). Accordingly, just as Section 25 did not create coverage for the post-expiration occurrence under the *Lesk* occurrence policy, Section 25 does not create coverage for the post-expiration reporting of the Mellesmoen Claim under Match's claims-made-and-reported policy. *See Hunt Constr. Grp., Inc. v. Berkley Assurance Co.*, 2021 WL 4392520, at *2 (S.D.N.Y. Sept. 24, 2021) ("[T]he nature and purposes of claims-made policies are such that the timing of reporting claims (within or outside the policy period) is fundamental to defining coverage.").

Moreover, Section 25 does not extend a deadline for contract performance where "***the contract expressly or impliedly indicates a different intent***." N.Y. Gen. Constr. Law § 25(1) (emphasis added). A contract "indicates a different intent" – *i.e.*, that Section 25 does not apply –

where "time was clearly of the essence." *Kulanski v. Celia Homes, Inc.*, 184 N.Y.S.2d 234, 236 (2d Dep't 1959) (finding time of the essence where "the contract required respondent to 'grant title and occupancy' by May 30, 1955"); *see also Squicciarini v. Park Ridge at Terryville Assocs.*, 605 N.Y.S.2d 372, 373 (2d Dep't 1993) (enforcing contract deadline where title had to be delivered on Sunday, "October 1, 1989"); *cf. Coventry Enters. LLC v. Sanomedics Int'l Holdings, Inc.*, 191 F. Supp. 3d 312, 319 (S.D.N.Y. 2016) ("The use of the generic term 'shall occur within 30 days' does no such thing, and the DPA never mentions October 11 as an important date or that time is of the essence.").[4]

Here, "time was clearly of the essence," because the Policy required that "all Claims made against any Insured ***must*** be reported no later than … the end of the Policy Period," (Ex. A to Am. Compl., Policy § IX.A, ECF No. 26-1, at 59 (emphasis added)), and specified that the Policy Period ended at "12:01 a.m. Local Time," (*id.*, Declarations, Item 2, ECF No. 26-1, at 1). *See J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 659 F. Supp. 2d 350, 354 (E.D.N.Y. 2009) (holding that Section 25 did not apply where agreement "terminated on a specific day"); *Freda Green & Assocs., Inc. v. Heydt*, 562 N.Y.S.2d 79 (1st Dep't 1990) (declining to extend real estate broker's exclusivity agreement to sell apartment beyond April 30, 1989 expiration date). Indeed, with a claims-made-and-reported policy, time is so clearly "of the essence" that missing the reporting deadline by even a few hours vitiates coverage. *See, e.g., Cath. Med. Ctr.*

---

[4] *Harrison* and *Compas*, cited by Match in its Pre-Motion Response, are in accord. (ECF No. 19, at 2–3.) Both decisions involved requirements to perform within certain periods of time, rather than hard deadlines to perform by specified dates and times. *Harrison v. Allstate Ins. Co.*, 1999 WL 638243, at \*1 (S.D.N.Y. Aug. 18, 1999) ("Any suit or action must be brought ***within two years*** after the inception of loss or damage." (emphasis added)); *Compas Med., P.C. v. Fiduciary Ins. Co. of Am.*, 31 N.Y.S.3d 734, 735 (2d Dep't 2016) (statutory provision requiring that notice be given no "more than ***30 days*** after the date of the accident" (emphasis added)). Typically, time is not of the essence when a contract requires performance within a generic period of time, such as "two years" or "30 days."

*v. Exec. Risk Indem., Inc.*, 151 N.H. 699, 700, 704 (2005) (nine hours); *Brumfield v. Shelton*, 831 F. Supp. 562, 565 (E.D. La. 1993) (eight hours); *see also Venoco, Inc. v. Gulf Underwriters Ins. Co.*, 175 Cal. App. 4th 750, 761 (2009) (stating "time is of the essence" in "claims made and reported policies").

## III.   Coverage Cannot Be Created by Estoppel and Match Suffered No Prejudice

In a final foray, Match alleges that it is entitled to coverage because Beazley delayed in disclaiming, which prevented Match from purchasing the Policy's Optional Extension Period. (*E.g.*, Am. Compl. ¶¶ 73–86.) Match's estoppel argument fails as a matter of law for two independent reasons: (i) New York does not recognize coverage by estoppel; and (ii) Match suffered no prejudice because it could not have obtained coverage for the Mellesmoen Claim by purchasing the Optional Extension Period.

Under New York law, where the claim "falls outside the policy's coverage and the denial of the claim is based upon lack of coverage, estoppel may not be used to create coverage regardless of whether or not the insurance company was timely in issuing its disclaimer." *Liberty Mut. Ins. Co. v. McDonald*, 775 N.Y.S.2d 83, 85 (2d Dep't 2004); *see also Allstate Vehicle & Prop. Ins. Co. v. Mars*, 533 F. Supp. 3d 71, 81 (E.D.N.Y. 2021) (same); *In re U.S. Specialty Ins. Co. (Denardo)*, 57 N.Y.S.3d 743, 747 (3d Dep't 2017) (same).[5] Moreover, "[t]he authorities establish that there is no coverage under a claims-made policy where the insured fails to notify the insurer of a claim by the end of the policy period (or extended reporting period, if any)." *Hunt Constr. Grp., Inc. v. Berkley Assurance Co.*, 2021 WL 4392520, at *2 (S.D.N.Y. Sept. 24,

---

[5] Waiver is likewise inapplicable as a matter of law. *See, e.g.*, *Hunt Constr. Grp., Inc. v. Berkley Assurance Co.*, 2021 WL 4392520, at *2 (S.D.N.Y. Sept. 24, 2021) (Because "the nature and purposes of claims-made policies are such that the timing of reporting claims (within or outside the policy period) is fundamental to defining coverage," an "insurer's late-reporting defense is not subject to waiver."); *Berkley Assurance Co. v. Hunt Constr. Grp., Inc.*, 465 F. Supp. 3d 370, 381 (S.D.N.Y. 2020) (similar).

2021) (quoting *Checkrite Ltd., Inc. v. Illinois Nat'l Ins. Co.*, 95 F. Supp. 2d 180, 191–92 (S.D.N.Y. 2000)) (citing cases). Because Match's late notice of the Mellesmoen Claim precludes coverage as a matter of law, *see supra* Section I.B, Match cannot rely on estoppel to create coverage in the first instance.

Furthermore, Match has not pleaded any facts to support its claim that it suffered prejudice from Beazley's alleged untimely disclaimer, as required to make out a claim for estoppel. *See Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*, 724 F. Supp. 2d 407, 419 (S.D.N.Y. 2010) (elements of estoppel). Match avers that, had Beazley disclaimed earlier, Match would have purchased the Policy's Optional Extension Period to obtain coverage for the Mellesmoen Claim. (Am. Compl. ¶¶ 85–86.) But the Optional Extension Period applies only to "Claims ***first made*** against any Insured and reported to [Beazley] ***during*** the Optional Extension Period." (Ex. A to Am. Compl., Policy § X.A, ECF No. 26-1, at 60 (emphases added).) The Optional Extension Period begins "***after*** the end of the Policy Period." (*Id.* § VI.X, ECF No. 26-1, at 54 (emphasis added).) Because the Mellesmoen Claim was undisputedly made during the Policy Period, (Am. Compl. ¶ 69), Match could not have obtained coverage for the Mellesmoen Claim by purchasing the Optional Extension Period.[6]

**CONCLUSION**

Match received a "Claim" on February 16, 2016 that it could have – and should have – reported to Beazley in accordance with the terms of the Policy. Instead, Match held onto the

---

[6] For this same reason, Match's claim that Beazley breached the implied duty of good faith and fair dealing fails as a matter of law. To make out a plausible claim for breach of contract, Match must allege damages, among other things. *Johnson v. Nextel Commc'ns Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (elements of breach of contract). Here, even if Beazley breached a contractual duty for timely disclaimer (which Beazley denies), Match suffered no damages from the breach because Match could not have obtained coverage by purchasing an Optional Extension Period.

Claim for six months and reported it to Beazley two days after the Policy Period ended. Now, Match invites this Court to overlook its delay and ignore the unambiguous contract in order to find coverage where none exists. The Court should refuse Match's invitation.

Because amendment to the pleadings cannot remedy these defects, Beazley respectfully requests that the Court dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) with prejudice.

Respectfully submitted,

By: */s/ Jonathan S. Zelig*
Jonathan S. Zelig
**DAY PITNEY LLP**
One Federal Street
Boston, MA 02110
jzelig@daypitney.com
Tel. (617) 345-4601
Fax (617) 892-4236

Joseph T. Nawrocki
**DAY PITNEY LLP**
242 Trumbull Street
Hartford, CT 06103
jnawrocki@daypitney.com
Tel. (860) 275-0356
Fax (860) 748-4929

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 2, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jonathan S. Zelig*
Jonathan S. Zelig

-24-