**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MATCH GROUP, LLC,

                  Plaintiff,

    v.

BEAZLEY UNDERWRITING, LIMITED,

                  Defendant.

Case No.: 1:22-cv-4629-LGS

**DEFENDANT BEAZLEY UNDERWRITING, LTD.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Jonathan S. Zelig
**DAY PITNEY LLP**
One Federal Street
Boston, MA 02110
jzelig@daypitney.com
Tel. (617) 345-4601
Fax (617) 892-4236

Joseph T. Nawrocki
**DAY PITNEY LLP**
242 Trumbull Street
Hartford, CT 06103
jnawrocki@daypitney.com
Tel. (860) 275-0356
Fax (860) 748-4929

*Attorneys for Defendant*

TABLE OF CONTENTS

Page

Introduction ......................................................................................................................1

I.  The Mellesmoen Letter Was a "Claim" Under the Plain Language
    of the Policy ............................................................................................................1

II.  Extrinsic Evidence Cannot Alter the Unambiguous Terms of a
     Contract, and Match Fails to Plead Oral Modification ...................................4

III.  Match Cannot Salvage Its Late Reporting with New York General
      Construction Law Section 25 ...............................................................................7

IV.  Match Cannot Rely on Reasonable Excuse Doctrine to Remedy
     Its Late Reporting .................................................................................................8

V.  Match's Estoppel Argument Fails .......................................................................9

Conclusion .....................................................................................................................10

TABLE OF AUTHORITIES

Page(s)

## Cases

*Allegrino v. Ruskin Moscou Faltischek, P.C.*,
   2021 WL 429121 (S.D.N.Y. Feb. 8, 2021)............................................................6

*Anostario v. Vicinanzo*,
   59 N.Y.2d 662 (1983) ...........................................................................................5

*Auscape Int'l v. Nat'l Geographic Soc'y*,
   282 F. App'x 890 (2d Cir. 2008) ..........................................................................4

*Automated Irrigation Controls, LLC v. Watt Stopper, Inc.*,
   407 F. Supp. 3d 274 (S.D.N.Y. 2019).....................................................................5

*Berry v. St. Paul Fire & Marine Ins. Co.*,
   70 F.3d 981 (8th Cir. 1995) ...................................................................................2

*Cade & Saunders, P.C. v. Chicago Ins. Co.*,
   307 F. Supp. 2d 442 (N.D.N.Y. 2004)..................................................................8, 9

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*,
   90 F.3d 1264 (7th Cir. 1996) .................................................................................8

*Cass v. Am. Guarantee & Liab. Ins. Co.*,
   2006 WL 3359664 (Sup. Ct. 2006).........................................................................9

*Cellular Mann, Inc. v. JC 1008 LLC*,
   978 N.Y.S.2d 842 (1st Dep't 2014) .......................................................................4

*Checkrite Ltd., Inc. v. Illinois Nat. Ins. Co.*,
   95 F. Supp. 2d 180 (S.D.N.Y. 2000)......................................................................8

*City of Burlington v. Indem. Ins. Co. of N. Am.*,
   332 F.3d 38 (2d Cir. 2003)...................................................................................10

*CMC Transaction Servs., LLC v. IDEX Corp.*,
   2019 WL 3496643 (S.D.N.Y. Aug. 1, 2019).........................................................6

*Concourse Rehab. & Nursing Ctr. Inc. v. Exec. Risk Indem. Inc.*,
   2010 WL 4642357 (S.D.N.Y. Nov. 12, 2010)........................................................6

*Coventry Enters. LLC v. Sanomedics Int'l Holdings, Inc.*,
   191 F. Supp. 3d 312 (S.D.N.Y. 2016)....................................................................8

*Diamond Glass Companies, Inc. v. Twin City Fire Ins. Co.*,
    2008 WL 4613170 (S.D.N.Y. Aug. 18, 2008) ........................................................... 2

*DiStefano v. Maclay*,
    102 F. App'x 188 (2d Cir. 2004) ............................................................................... 5

*Fed. Ins. v. Sheldon*,
    150 B.R. 314 (S.D.N.Y. 1993) .................................................................................. 9

*Hunt Constr. Grp., Inc. v. Berkley Assurance Co.*,
    2021 WL 4392520 (S.D.N.Y. Sept. 24, 2021) ........................................................ 5

*Illinois Nat. Ins. Co. v. AlixPartners, LLP*,
    2017 WL 10604080 (Mich. Cir. Ct. Mar. 3, 2017) ........................................... 2, 3, 4

*Ispat Inland, Inc. v. Kemper Env't, Ltd.*,
    2009 WL 4030858 (S.D.N.Y. Nov. 20, 2009) ......................................................... 3

*Klein v. Klein*,
    79 N.Y.2d 876 (1992) .............................................................................................. 5

*Kulanski v. Celia Homes, Inc.*,
    184 N.Y.S.2d 234 (2d Dep't 1959) .......................................................................... 8

*LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*,
    424 F.3d 195 (2d Cir. 2005) .................................................................................... 4

*OJ Com. LLC v. Beazley USA Servs., Inc.*,
    2021 WL 1907532 (S.D. Fla. Feb. 24, 2021) ......................................................... 2

*See Paul K. Rooney, P.C. v. Chicago Ins. Co.*,
    2001 WL 262703 (S.D.N.Y. Mar. 16, 2001) .......................................................... 9

*Quanta Lines Ins. Co. v. Invs. Cap. Corp.*,
    2009 WL 4884096 (S.D.N.Y. Dec. 17, 2009) ......................................................... 3

*Randolph Equities, LLC v. Carbon Cap., Inc.*,
    2007 WL 914234 (S.D.N.Y. Mar. 26, 2007) .......................................................... 6

*Retail Brand All., Inc. v. Factory Mut. Ins. Co.*,
    489 F. Supp. 2d 326 (S.D.N.Y. 2007) .................................................................. 10

*Rockland Exposition, Inc. v. Great Am. Assur. Co.*,
    746 F. Supp. 2d 528 (S.D.N.Y. 2010) .................................................................... 9

*Rye Ridge Corp. v. Cincinnati Ins. Co.*,
    535 F. Supp. 3d 250 (S.D.N.Y. 2021) .................................................................... 9

*Seneca Ins. Co. v. Kemper Ins. Co.*,
  2004 WL 1145830 (S.D.N.Y. May 21, 2004) ..................................................2, 3

*Sklair v. Mike Bloomberg 2020, Inc.*,
  2022 WL 889849 (S.D.N.Y. Mar. 25, 2022) ...........................................................6

*St. Paul Fire & Marine Ins. Co. v. Est. of Hunt*,
  811 P.2d 432 (Colo. App. 1991) ...............................................................................8

*Starr Indem. & Liab. Co. v. Brightstar Corp.*,
  388 F. Supp. 3d 304 (S.D.N.Y. 2019)......................................................................4

*Steinbeck v. Steinbeck Heritage Found.*,
  400 F. App'x 572 (2d Cir. 2010) ..............................................................................6

*United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.*,
  53 F. Supp. 2d 632 (S.D.N.Y. 1999)........................................................................4

*W.W.W. Assocs., Inc. v. Giancontieri*,
  77 N.Y.2d 157 (1990) ...............................................................................................4

*Ward v. Nat'l Geographic Soc'y*,
  284 F. App'x 822 (2d Cir. 2008) ..............................................................................4

*WMOP, LLC v. Scottsdale Ins. Co.*,
  139 N.Y.S.3d 540 (1st Dep't 2021) ..........................................................................2

## Statutes

Bankruptcy Code § 108 ...................................................................................................9

N.Y. Gen. Oblig. Law § 15-301(1)...................................................................................4

N.Y. Gen. Const. Law § 25.........................................................................................1, 7, 8

## Other Authorities

3 Insurance Claims & Disputes § 11:5 (6th ed.) ..............................................................7

<u>**INTRODUCTION**</u>

Four months into this litigation – and six years after the underlying events took place – Match changes its legal theory once again. In the Initial Complaint, Match focused on New York General Construction Law Section 25 to excuse its late reporting of the Mellesmoen Claim. Then, in the Amended Complaint, Match pivoted to the parties' course of dealing, which allegedly altered the Policy's definition of "Claim" and reporting requirements. Now, in a last-ditch effort to avoid dismissal, Match argues for the first time that the February 2016 Mellesmoen Letter never constituted a "Claim" under the Policy's plain language. The Court need only read the Mellesmoen Letter to confirm that Match is wrong yet again.

Match's ever-evolving efforts to find coverage under the Policy all fail. Accordingly, Beazley respectfully requests that the Court dismiss this action with prejudice.

**I.     The Mellesmoen Letter Was a "Claim" Under the Plain Language of the Policy**

Match cannot dispute that the Policy defines "Claim" to include "a written demand received by any Insured for money or services." Match also cannot dispute that the Mellesmoen Letter was a "written demand." So, Match hangs its hat on the last hook left – arguing that the Mellesmoen Letter did not demand "money or services." The letter itself proves otherwise.

The Mellesmoen Letter alleges that Tinder's CEO failed to provide Mr. Mellesmoen "the promised compensation" for his concept of the "Super Like," which "rapidly increas[ed] revenue for a company that had struggled to monetize its" service. (Ex. 1 to Singer Decl., ECF No. 34-2, at 4.) Based on that alleged breach, the letter asserts various causes of action entitling Mr. Mellesmoen "to recover [Tinder's] profits from the unlawful use of the idea," and cites a jury verdict that exceeded $15.5 million. (*Id.* at 4–7.) "In short," Mr. Mellesmoen alleges through counsel, "Tinder's malicious and bad faith refusal to ***compensate*** Mr. Mellesmoen for his valuable idea is unlawful, wrong, and entitles Mr. Mellesmoen to ***substantial recovery***." (*Id.* at 7

(emphases added).) The letter concludes with "a formal notification of potential litigation," threatening that Mr. Mellesmoen is prepared to "proceed vigorously with litigation and take other appropriate actions to vindicate his rights." (*Id.* at 8.)

Despite this stated intent to sue for money damages, Match argues that the letter does not demand "money" because it does not name a specific dollar figure. As far as Match was aware, Mr. Mellesmoen might only have wanted "a tweet giving him credit" or a "Tinder branded coffee mug." (Opp. at 9–10.) This is unserious. Neither the case law nor common sense requires a claimant to specify a dollar figure to make a monetary demand. *See, e.g.*, *Seneca Ins. Co. v. Kemper Ins. Co.*, 2004 WL 1145830, at *5 (S.D.N.Y. May 21, 2004) (rejecting similar argument because "implication" of the letter "was to demand monetary damages or other relief"); *Berry v. St. Paul Fire & Marine Ins. Co.*, 70 F.3d 981, 982 (8th Cir. 1995) ("Treating the letter as other than a claim, it seems to us, requires a tortured construction of its text. In our view, anyone receiving this letter would know that Mr. Berry was claiming that he was owed money.").

Undeterred, Match invokes two unpublished, out-of-jurisdiction decisions: *OJ Commerce* and *AlixPartners*.[1] Neither supports Match's position. The letter in *OJ Commerce* did not demand money, but sought compliance with the terms of the parties' contract. Specifically, it "advised that if you wish to continue to sell NOCO products, then you must" "advertis[e] various NOCO products [at] the price set forth in the MAP Policy." *OJ Com. LLC v. Beazley USA Servs., Inc.*, 2021 WL 1907532, at *4 (S.D. Fla. Feb. 24, 2021). In *AlixPartners*, the letter from a corporate representative (and non-attorney) contained a "suggestion," with no threat of litigation:

---

[1] Match also cites two New York decisions that unremarkably held (i) a request for records is not a demand for "monetary damages," and (ii) a subpoena and search warrant do not constitute a claim for legal "relief." *WMOP, LLC v. Scottsdale Ins. Co.*, 139 N.Y.S.3d 540, 541 (1st Dep't 2021); *Diamond Glass Companies, Inc. v. Twin City Fire Ins. Co.*, 2008 WL 4613170, at *4 (S.D.N.Y. Aug. 18, 2008).

"[W]e would appreciate if AlixPartners would agree to waive the following parts of fees and success fees…" *Illinois Nat. Ins. Co. v. AlixPartners, LLP*, 2017 WL 10604080, at *1 (Mich. Cir. Ct. Mar. 3, 2017). A "suggestion" is not a "written demand" for money or services.

In point of fact, New York courts have repeatedly rejected policyholders' attempts to excuse claims-made-and-reported policy reporting requirements by arguing that demand letters threatening litigation are not "claims." (*See* Beazley Br. at 9–10.) Match tries to evade this authority by asserting that the Policy's definition of "Claim" is uniquely narrow.[2] But *Seneca Insurance*, *Quanta Lines*, and *McCabe* all involved definitions of "claim" that are narrower than even the one **subpart** of the "Claim" definition at issue here.[3]

Hedging its bets, Match speculates (at 13–15) that the definition of "Claim" might be ambiguous. New York courts, however, repeatedly find nearly identical definitions of "Claim" unambiguous. (*See* Beazley Br. at 14.) Match offers no persuasive reason for departing from this precedent. In fact, Match identifies only one outlier New York decision, *Ispat Inland, Inc. v. Kemper Env't, Ltd.*, 2009 WL 4030858 (S.D.N.Y. Nov. 20, 2009). But the letter at issue in *Ispat*, much like *AlixPartners*, "mere[ly]" "invited Ispat to participate" in an assessment process and

---

[2] Match's assertion that Beazley defined "Claim" "narrowly" ignores that the definition of "Claim" includes **four subparts**: "**1.** a written demand received by any Insured for money or services, including the service of a suit or institution of arbitration proceedings; **2.** a threat or initiation of a suit seeking injunctive relief (meaning a temporary restraining order or a preliminary or permanent injunction); **3.** with respect to coverage provided under Insuring Agreement E. only, institution of a Regulatory Proceeding against any Insured; and **4.** a written request or agreement to toll or waive a statute of limitations relating to a potential Claim described above." (Policy § VI.G, ECF No. 26-1, at 50.)

[3] *Seneca Ins. Co.*, 2004 WL 1145830, at *5 ("a written demand against any Insured for monetary damages or other relief"); *Quanta Lines Ins. Co. v. Invs. Cap. Corp.*, 2009 WL 4884096, at *2 (S.D.N.Y. Dec. 17, 2009) ("a demand received by any Insureds for Damages (including pleadings received in a civil litigation or arbitration) for an actual or alleged Wrongful Act"). The definition of "claim" at issue in *McCabe* is found in the defendants' summary judgment brief. 2009 WL 8612870 ("a demand received by an insured for money alleging an error, omission or negligent act in the rendering of or failure to render 'professional legal services' for others by you or on your behalf").

failed to "threaten any consequences" for non-compliance. *Id.* at *6. The Mellesmoen Letter, in contrast, alleges several causes of action "entitl[ing] Mr. Mellesmoen to substantial recovery," and concludes with a clear threat of litigation. (Ex. 1 to Singer Decl., ECF No. 34-2, at 5–8.)

## II.  Extrinsic Evidence Cannot Alter the Unambiguous Terms of a Contract, and Match Fails to Plead Oral Modification

By itself, extrinsic evidence cannot alter the unambiguous terms of a written contract. *LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 207–08 (2d Cir. 2005) ("[T]he court should not have relied on other extrinsic evidence of the parties' intent, such as their 'course of dealing,'" where contract was unambiguous); *Cellular Mann, Inc. v. JC 1008 LLC*, 978 N.Y.S.2d 842, 843 (1st Dep't 2014). This rule "imparts stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses, infirmity of memory, and the fear that the jury will improperly evaluate the extrinsic evidence." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) (cleaned up). Every extrinsic evidence decision cited by Match conforms to this rule, which is why they all consider extrinsic evidence only *to resolve textual ambiguities or gap fill – not to re-write the terms of the contract*.[4]

Knowing this, Match quietly recasts its complaint as alleging oral modification, rather than course-of-dealing. (Opp. at 15–19.) Setting aside the fact that Match did not actually plead oral modification, this latest gambit fails as a matter of law because the Statute of Frauds bars the oral modification of contracts with a no-oral-modification clause. N.Y. Gen. Oblig. Law § 15-301(1). (Policy § XIX, ECF No. 26-1, at 63.) New York does recognize partial performance and

---

[4] *Auscape Int'l v. Nat'l Geographic Soc'y*, 282 F. App'x 890, 891 (2d Cir. 2008) (summarily affirming Judge Kaplan's use of extrinsic evidence to resolve ambiguity); *Ward v. Nat'l Geographic Soc'y*, 284 F. App'x 822, 823 (2d Cir. 2008) (same); *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 328–29 (S.D.N.Y. 2019) (gap fill) *United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.*, 53 F. Supp. 2d 632, 641 (S.D.N.Y. 1999) (gap fill and confirm interpretation of plain language). Match's other citations are to oral modification decisions.

reliance as "narrow" exceptions,[5] but the bar is very high. *See Klein v. Klein*, 79 N.Y.2d 876, 878 (1992) (holding that plaintiff "has not sufficiently presented a basis for application of the narrow partial performance exception to the Statute of Frauds"). The parties' actions must be "unequivocally referable to the [oral] agreement alleged," meaning that the actions are "unintelligible or at least extraordinary, explainable ***only*** with reference to the oral agreement." *Anostario v. Vicinanzo*, 59 N.Y.2d 662, 664 (1983) (quotations omitted) (emphasis added).

Match alleges nothing of the sort. In fact, Match avers just one action to support the alleged oral modification: Beazley's acceptance of the "Greenberg Smoked Turkey" claim. (Am. Compl. ¶¶ 53–56.) Yet Match undeniably reported that claim "by the end of the Policy Period" in which the claim was first made. In fact, the Amended Complaint admits that Beazley's acceptance of the claim sidestepped only the Policy's separate condition that "Claims" be noticed "as soon as practicable" – ***not*** the insuring agreement requirement for reporting of claims by the end of the policy period.[6] (*Id.* ¶ 56.)  Thus, the Greenberg Smoked Turkey example fails to support Match's claimed "oral modification" *at all* – let alone show "extraordinary" actions "explainable only with reference to the oral agreement." *Anostario*, 59 N.Y.2d at 664.

To the contrary, the only thing "extraordinary" – indeed, implausible – here is Match's claim that, over the course of several years, Match and Beazley regularly discussed oral modifications of the reporting requirements in the Policy, but never amended the written contract to reflect this understanding as they did for other items via written endorsements. (*See* Beazley

---

[5] Or as Match's case law puts it, "limited" exceptions. *DiStefano v. Maclay*, 102 F. App'x 188, 189 (2d Cir. 2004); *Automated Irrigation Controls, LLC v. Watt Stopper, Inc.*, 407 F. Supp. 3d 274, 283 (S.D.N.Y. 2019).

[6] Unlike the claims-made-and-reported insuring agreement requirements at issue in this case, which "trigger" coverage and form an essential element of the contractual bargain, the "as soon as practicable" notice requirement found in many insurance contracts is a mere "condition" that can be waived by the insurer under New York law. *See Hunt Constr. Grp., Inc. v. Berkley Assurance Co.*, 2021 WL 4392520, at *1–2 (S.D.N.Y. Sept. 24, 2021) (analyzing distinction).

Br. at 14–15.) More remarkable still, some of these alleged discussions took place at "renewal meetings," when the parties were re-negotiating the policy language itself. (Am. Compl. ¶ 51.) Match is a sophisticated "multi-national holding company." (Opp. at 14.) Match knew the Policy "by its terms can only be [modified] in writing." *Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x 572, 577–78 (2d Cir. 2010) (holding that plaintiff could not reasonably rely on "oral promise" to modify written contract with a no-oral-modification provision). It is simply implausible that Match and Beazley would orally negotiate critical coverage terms of the Policy at renewal meetings, but never add those terms to the written contract.[7]

Match's categorical claim that "a modification-by-course-of-dealing theory cannot be disposed of at the pleading stage" is wrong. (Opp. at 16.) Courts dismiss such claims all the time. *See, e.g.*, *Sklair v. Mike Bloomberg 2020, Inc.*, 2022 WL 889849, at *7 (S.D.N.Y. Mar. 25, 2022); *Allegrino v. Ruskin Moscou Faltischek, P.C.*, 2021 WL 429121, at *7 (S.D.N.Y. Feb. 8, 2021); *CMC Transaction Servs., LLC v. IDEX Corp.*, 2019 WL 3496643, at *3 (S.D.N.Y. Aug. 1, 2019). As to Match's cited cases: the specific allegations in *Randolph* contrast sharply with Match's pleadings, *Randolph Equities, LLC v. Carbon Cap., Inc.*, 2007 WL 914234, at *1–2 (S.D.N.Y. Mar. 26, 2007); while in *Concourse*, it is unclear from the bare-bones factual recitation if the plaintiff was even advancing a theory of oral modification, *Concourse Rehab. & Nursing Ctr. Inc. v. Exec. Risk Indem. Inc.*, 2010 WL 4642357, at *2 (S.D.N.Y. Nov. 12, 2010).

Finally, Match denies that the allegations in the Initial and Amended Complaints are blatantly contradictory. (Opp. at 17–19.) But Match never explains why the Initial Complaint omitted (with an ellipsis, no less) the reporting provision applicable to Claims made in the last

---

[7] Notably, Match's allegations concerning these meetings are devoid of detail. For instance, Match fails to specify where or when they occurred, who was in attendance, or precisely what was agreed. (*See* Am. Compl. ¶¶ 45–46, 51–52.)

sixty days of the Policy Period. (*Compare* Initial Compl. ¶ 34 *with* Policy § IX.A.(ii), ECF No. 26-1, at 59.) If the parties had orally modified the definition of "Claim" such that the Mellesmoen Claim was made in August 2016 (when the lawsuit was filed), then Match would have made the last-sixty-days reporting provision central to its Initial Complaint. That Match instead *omitted* it proves that Match changed both its legal theory and its factual allegations.

## III.   Match Cannot Salvage Its Late Reporting with New York General Construction Law Section 25

Match asks this Court to read these twenty-eight words out of New York General Construction Law Section 25: "if the period ends at a specified hour, such payment may be made or condition performed, at or before the same hour of such next succeeding business day." (Opp. at 19–20.) But Match's rationale – "12:01 a.m. on Monday is the middle of Sunday night" – demonstrates why the Legislature included the "same hour" provision in the first instance.

Match did not miss the reporting deadline because businesses are closed on Saturday. Match missed the reporting deadline because 12:01 a.m. Saturday is "the middle of ***Friday*** night," and Match did not report the claim before heading home on Friday evening (or at any time in the six months previous). The situation would be exactly the same if the deadline had fallen on 12:01 a.m. on a Wednesday, and Match had failed to report the claim before closing up shop on Tuesday. The "same hour" provision ensures that these two scenarios are treated the same. Otherwise, defaulting parties would obtain additional (un-bargained-for) time to perform.[8]

That's not the only part of Section 25 that Match asks this Court to ignore. Section 25 does not apply where "the contract expressly or ***impliedly*** indicates a different intent." N.Y. Gen. Constr. Law § 25(1) (emphasis added). Match argues (at 21) that "impliedly" somehow means

---

[8] In contrast, if the reporting deadline were ***5 p.m.*** on Saturday, Match could more plausibly claim that weekend office closures interfered with timely reporting. But in that hypothetical scenario, Section 25 (if it applied) would extend the deadline to 5 p.m. on Monday.

"clearly," and thus Beazley should have included an express contract provision if it did not want Section 25 to apply. But that is not what Section 25, or the case law, says. A contract "impliedly indicates a different intent" where "time is of the essence."[9] *Kulanski v. Celia Homes, Inc.*, 184 N.Y.S.2d 234, 236 (2d Dep't 1959); *cf. Coventry Enters. LLC v. Sanomedics Int'l Holdings, Inc.*, 191 F. Supp. 3d 312, 319 (S.D.N.Y. 2016). Fatally, Match does not (and cannot) dispute that time is of the essence under a claims-made-and-reported policy.

## IV.   Match Cannot Rely on Reasonable Excuse Doctrine to Remedy Its Late Reporting

Alternatively, Match argues that it sufficiently pleaded a basis to excuse its late notice. (Opp. at 22–23.) But late notice of claims may not be excused under claims-made-and-reported insurance policies. "The requirement that claims be reported within a specified time period is 'the trigger for coverage' under a claims-made policy." *Checkrite Ltd., Inc. v. Illinois Nat. Ins. Co.*, 95 F. Supp. 2d 180, 190 (S.D.N.Y. 2000). "The authorities establish that there is no coverage under a claims-made policy where the insured fails to notify the insurer of a claim by the end of the policy period (or extended reporting period, if any)." *Id.* at 192. To excuse notice of claims beyond the policy period of a claims-made policy "would alter a basic term of the insurance contract which expresses the parties' agreement." *St. Paul Fire & Marine Ins. Co. v. Est. of Hunt*, 811 P.2d 432, 435 (Colo. App. 1991).

The cases cited by Match do not hold otherwise. Match cites only two decisions involving claims-made policies, and both concern late notice of *potential* claims under the policies' timely notice provisions. *See Cade & Saunders, P.C. v. Chicago Ins. Co.*, 307 F. Supp. 2d 442, 446–47 (N.D.N.Y. 2004); *Cass v. Am. Guarantee & Liab. Ins. Co.*, 2006 WL 3359664,

---

[9] In the dicta quoted by Match, the court in *Caisse Nationale* explains how a contract can expressly indicate a different intent. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1274 (7th Cir. 1996). *Caisse Nationale* does not speak to whether a contract "impliedly indicates a different intent" where, as here, time was clearly of the essence.

at *1 (Sup. Ct. 2006).[10] In fact, both decisions noted that the policyholder had satisfied the insuring agreement requirement to report claims during the policy period. *Cade*, 307 F. Supp. 2d at 447; *Cass*, 2006 WL 3359664, at *1, *4. The remaining cases cited by Match involve occurrence-based policies and are therefore inapposite.

These decisions are consistent with New York law, under which late notice of occurrences and potential claims may be excused, but the failure to report claims to a claims-made-and-reported insurer during the policy period cannot be excused. *See Paul K. Rooney, P.C. v. Chicago Ins. Co.*, 2001 WL 262703, at *9 (S.D.N.Y. Mar. 16, 2001) ("New York law treats excuses by the insured for failing to give notice differently depending on whether the notice is required by a notice of occurrence provision or a notice of claim provision."); *see also Rockland Exposition, Inc. v. Great Am. Assur. Co.*, 746 F. Supp. 2d 528, 543 (S.D.N.Y. 2010) (policyholder's "alleged good-faith belief that it was not liable" not an excuse).

## V.     Match's Estoppel Argument Fails

Match appears to concede (as it must) that coverage cannot be created by estoppel under New York law. (Opp. at 24.) Instead, Match argues that this principle does not apply here because Match could have obtained coverage for the Mellesmoen Claim by purchasing the Optional Extension Period. However, the plain language of the Policy refutes this argument. *See Rye Ridge Corp. v. Cincinnati Ins. Co.*, 535 F. Supp. 3d 250, 253 (S.D.N.Y. 2021) (stating that insurance policy should be construed "as a whole; all pertinent provisions of the policy should be given meaning" (quotations omitted)).

---

[10] The *Sheldon* decision involved an extension of the time to report claims under a claims-made-and-reported policy by application of *§ 108 of the Bankruptcy Code*, which "occasionally effect[s] *drastic* changes in bargained for contracts by terminating, modifying, or … extending certain provisions contained therein." *Fed. Ins. v. Sheldon*, 150 B.R. 314, 321 (S.D.N.Y. 1993) (emphasis added). The Bankruptcy Code is not at issue in this case.

Match is correct that the Policy permits the policyholder to report Claims by "the end of the Optional Extension Period (*if applicable*)."[11] (Policy § IX.A, ECF No. 26-1, at 58–59 (emphasis added).) But Match ignores Section X (titled "Optional Extension Period"), which specifies **to which Claims** the "Optional Extension Period" is applicable. The Optional Extension Period, when issued, applies to "***Claims first made*** against any Insured and reported to [Beazley] ***during the Optional Extension Period***." (*Id.* § X.A, ECF No. 26-1, at 60 (emphases added).) Nothing in the Policy permits the policyholder to purchase an Optional Extension Period to obtain additional time to report Claims first made before the Optional Extension Period.

Match's interpretation also flouts the rule that "absurd results should be avoided." *Retail Brand All., Inc. v. Factory Mut. Ins. Co.*, 489 F. Supp. 2d 326, 330 (S.D.N.Y. 2007) (quotations omitted). Insurance policies insure against "fortuity." *See generally City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 47 (2d Cir. 2003). No insurer would issue a policy that permits coverage for "all Claims" – even known claims – simply by purchasing an endorsement. Yet that is what Match urges here. Tellingly, Match does not identify a decision supporting this position.

<u>C<small>ONCLUSION</small></u>

This litigation began just four months ago, but Match has already cycled through three different leading coverage theories and amended its pleading to add "factual" allegations. Beazley respectfully asks the Court to dismiss the Amended Complaint with prejudice.

---

[11] The Optional Extension Period, also known as "tail coverage," is a standard policy term in claims-made policies. As one treatise explains: "A claims-made policy provides coverage for claims first made during the policy period. What happens to the coverage after a policy terminates? Typically, insureds can purchase, or are automatically afforded, extended reporting period, or *tail*, coverage. Such coverage extends to future claims, made within the *tail* period, if the claims are based upon acts/incidents that took place during the policy period of the terminated policy." 3 Insurance Claims & Disputes § 11:5 (6th ed.) (emphases in original).

Dated: October 7, 2022

Respectfully submitted,

By:  /s/ *Jonathan S. Zelig*
Jonathan S. Zelig
**DAY PITNEY LLP**
One Federal Street
Boston, MA 02110
jzelig@daypitney.com
Tel. (617) 345-4601
Fax (617) 892-4236

Joseph T. Nawrocki
**DAY PITNEY LLP**
242 Trumbull Street
Hartford, CT 06103
jnawrocki@daypitney.com
Tel. (860) 275-0356
Fax (860) 748-4929

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that, on October 7, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                              */s/ Jonathan S. Zelig*
                              Jonathan S. Zelig