UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                     :
MATCH GROUP, LLC,                         :
                                                     :
                                        Plaintiff,      :            22 Civ. 4629
                                                     :
                     -against-                  :           **OPINION AND ORDER**
                                                     :
BEAZLEY UNDERWRITING LIMITED,   :
                                                     :
                                       Defendant.   :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Match Group, LLC brings this insurance action against Defendant Beazley Underwriting Limited. The First Amended Complaint (the "Complaint") asserts claims of breach of contract and equitable estoppel. Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion is granted in part and denied in part.

**I.      BACKGROUND**

        The following facts are taken from the Complaint and documents incorporated by reference in it. *See Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021). The alleged facts are assumed to be true for purposes of this motion. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022).

        Plaintiff, formerly Match.com, L.L.C., is a subsidiary of InterActiveCorp ("IAC"). Defendant is a foreign entity engaged in the business of selling insurance, investigating claims and issuing policies that cover policyholders and activities located in New York.

A. **Insurance Policy**

On November 16, 2015, Defendant sold a liability coverage policy (the "Policy") to IAC, the named insured under the policy, for the period beginning August 20, 2015, and ending August 20, 2016, at 12:01 A.M. (the "Policy Period"). The Policy provides coverage for:

> Damages and Claims Expenses . . . which the Insured shall become legally obligated to pay because of liability imposed by law or Assumed Under Contract resulting from any Claim first made against any Insured during the Policy Period or Optional Extension Period (if applicable) and reported to [Defendant] during the Policy Period.

The Policy defines "Claim" as, among other things, "a written demand received by any Insured for money or services, including the service of a suit or institution or arbitration proceedings [or] a threat or initiation of a suit seeking injunctive relief." The notice provision provides that:

> Claims made against any Insured must be reported no later than (i) the end of the Policy Period, (ii) sixty (60) days after the expiration date of the Policy Period in the case of Claims first made against the Insured during the last sixty (60) days of the Policy Period, [or] (iii) the end of the Optional Extension Period (if applicable) . . . .

The Policy also includes an Optional Extension Period, which may be purchased "[i]n the event of the termination of th[e] Insurance for any reason except the non-payment of premium." If purchased, the option extends the period to report a claim "first made against any Insured and reported to [Defendant] during the Optional Extension Period" by thirty days after termination. Section XIX states that "all Insureds agree that this Policy embodies all agreements between [Defendant] and the Insured relating to this Policy . . . the terms of this Insurance [shall not] be waived or changed, except by endorsement issued to form a part of this policy signed by [Defendant]." The self-insured retention under the Policy as applicable here is $1,000,000.

The Policy defines "Insured" to include "any Subsidiaries of the Named Insured." Match.com, L.L.C. and Tinder, Inc. were both subsidiaries of IAC at the time the Policy was

issued.  In July 2017, after the end of the Policy Period, Tinder, Inc. merged with Match Group, Inc. -- a parent company of Plaintiff.

    **B.  Previous Dealings**

Defendant has issued liability policies covering IAC and its subsidiaries, including Tinder, Inc. and Match.com, L.L.C., since 2008.  During this time, Defendant and the insureds reached several explicit and implicit mutual understandings about these policies.  For example, Defendant and the insureds understood that minor matters did not constitute "Claims."  The insureds had no obligation to provide Defendant with notice of such matters -- regardless of whether any of their insurance policies required otherwise -- unless and until the insureds determined that the matters were substantially likely to develop into significant legal proceedings.  Consistent with this understanding, the insureds did not notify Defendant of every potential claim, complaint, grievance or other assertion against them.  The insureds reported only matters that they determined were substantially likely to develop into significant legal proceedings.

This mutual understanding was discussed by Defendant, the insureds, and the insureds' representatives and brokers during one or more insurance renewal meetings that pre-dated the issuance of the Policy.  Defendant was also reminded of this mutual understanding during regularly scheduled meetings attended by, among other persons, Defendant's outside counsel and representatives of the insureds.  Neither Defendant nor its counsel indicated a desire to deviate from such course.  Defendant did not expect to be notified of every demand or matter asserted against the insureds.

### C. Underlying Litigation

On February 16, 2016, counsel for John Mellesmoen sent a letter to (a) Joey Levin, the CEO of IAC, (b) Gregg J. Winiarski, the then-Executive Vice President and General Counsel of IAC, (c) Greg Blatt, the then-Chairman and CEO of Match Group, Inc. and (d) Sean Rad, the then-CEO of Tinder, Inc., notifying them of "potential legal claims" Mellesmoen allegedly had against Tinder, Inc. (the "Letter").

The Letter alleged that, during a meeting at a shopping mall, Mellesmoen presented Rad with product and marketing ideas, for which Mellesmoen was promised compensation. The Letter further alleged that Tinder, Inc. later used Mellesmoen's ideas without compensating him, and that Rad began to avoid communicating with Mellesmoen.

IAC viewed the allegations in the Letter as frivolous and responded to Mellesmoen by letter, explaining why his assertions were meritless and not to be taken seriously. Neither IAC nor any other insured considered the Letter a "Claim" because, at that time, the insureds determined it was unlikely that Mellesmoen would initiate a formal claim or lawsuit against any insured. Neither IAC nor any other insured provided notice to Defendant of the Letter.

On August 18, 2016, during the last sixty days of the Policy, the insureds received notice that Mellesmoen had filed a lawsuit the day before against IAC, Tinder, Inc. and Rad in California state court (the "Lawsuit"). On Friday, August 19, 2016, IAC provided notice of the Lawsuit to Marsh USA Inc., its insurance broker, via e-mail. On Sunday, August 21, 2016, a Marsh employee responded that she would handle it. At 8:42 A.M. on Monday, August 22, 2016, Marsh provided Defendant with notice of the Lawsuit.

On August 23, 2016, Defendant confirmed receipt of the notice, stated it was evaluating coverage and requested a call. Defendant did not mention late notice then or during the call.

Over the next several weeks, the insureds kept Defendant apprised of updates in the Lawsuit during regularly scheduled calls with Defendant's outside counsel. Throughout the fall of 2016, Defendant indicated to the insureds that it was continuing to investigate whether and to what extent the Policy may cover the Lawsuit. On November 21, 2016, Defendant proposed that it further defer its coverage decision until a ruling was issued on the underlying defendants' demurrer. Defendant requested that the insureds continue to keep Defendant updated on the status of the matter. In February 2017, the insureds reported that the underlying defendants' demurrer was unsuccessful. On March 31, 2017, Defendant denied coverage on late notice grounds.

The Lawsuit was litigated for several years before it settled in July 2021. Plaintiff incurred charges of approximately $3,315,000 defending against the Lawsuit. On September 17, 2021, Plaintiff sent a demand letter to Defendant, explaining the bases for coverage under the Policy and requesting that Defendant provide full and prompt coverage for the defense and indemnity costs that Plaintiff had incurred in the Lawsuit. On November 14, 2021, Defendant responded with a denial letter.

## II.   STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).[1] To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which their claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (cleaned up).

New York law governs this dispute because the Policy includes a New York choice of law provision, and the parties' submissions assume that New York law applies. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law[.]").

**III.   DISCUSSION**

Defendant argues that the Complaint should be dismissed for failure to state a claim as (i) Plaintiff's failure to report its claim during the Policy Period precludes coverage as a matter of law and (ii) coverage cannot be, or has not been, created by equitable estoppel. For the reasons below, Defendant's motion to dismiss is granted in part and denied in part.

**A.   Breach of Contract**

The Complaint states a viable claim for breach of the insurance contract. First, notice of Mellesmoen's claim was timely because the Letter was not a "Claim" that

triggered the notice obligation under the Policy. Second, even if the Letter was a "Claim," the Complaint sufficiently alleges that the notice provision under the policy was modified by the parties' course of dealing.

The Complaint's breach of contract claim alleges a second theory of liability -- that Defendant breached the contract's implied covenant of good faith and fair dealing by failing to disclose promptly its late notice defense. That portion of the breach of contract claim is dismissed.

### 1. The Letter Was Not a "Claim"

Under New York law, "the courts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies." *Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 97 N.E.3d 711, 712 (N.Y. 2018). "In determining a dispute over insurance coverage, we first look to the language of the policy." *Id.* "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *Id.* at 712-13.

"Determining whether a contract is ambiguous is an issue of law for the courts to decide." *Donohue v. Cuomo*, 184 N.E.3d 860, 867 (N.Y. 2022). "[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech." *Mostow v. State Farm Ins. Cos.*, 668 N.E.2d 392, 394 (N.Y. 1996). "[P]rovisions in a contract are not ambiguous merely because the parties interpret them differently." *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 668 N.E.2d 404, 406 (N.Y. 1996). "[A] contract is not ambiguous if the language it uses has a definite and precise meaning, unattended by

7

danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1151 (N.Y. 2016).

Defendant asserts that Plaintiff's breach of contract claim fails because the Letter was a "Claim" under the Policy for which IAC failed to provide timely notice. This argument is incorrect because the definition of "Claim" under the Policy is unambiguous and does not encompass the Letter. The Policy and Letter are properly considered on this motion because they are referenced in, and integral to, the Complaint; the Policy is also appended to the Complaint. *See Sabir v. Williams*, 52 F.4th 51, 54 (2d Cir. 2022) ("In reviewing a motion to dismiss, [the court] may consider not only the facts alleged in the complaint, but also documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

As relevant here, the Policy defines "Claim" as a "demand . . . for money or services, including the service of a suit or institution of arbitration proceedings" or "a threat . . . of a suit seeking injunctive relief." A basic tenet of contract interpretation is that different words in a contract -- "demand" versus "threat of a suit" -- have different meanings. *See NFL Enters. LLC v. Comcast Cable Commc'ns, LLC*, 851 N.Y.S.2d 551, 557 (1st Dep't 2008) ("The use of different terms in the same agreement strongly implies that the terms are to be accorded different meanings."); *accord Thompson v. Mun. Credit Union*, No. 21 Civ. 7600, 2022 WL 2717303, at *4 (S.D.N.Y. July 13, 2022) (New York law). While the Letter is explicitly a "threat of a suit," it does not seek injunctive relief. Nor is the Letter a demand for money, service of a suit or commencement of arbitration. The Letter merely invites negotiation toward an amicable resolution. Although

8

Mellesmoen's grievance might be resolved with the payment of money, that grievance could be resolved otherwise -- by providing Mellesmoen recognition, or employment or some other benefit; or by responding with a correction or clarification should Plaintiff "disagree with the facts," as the Letter invited, and as Plaintiff did.  Consequently, the Letter was not a "demand for money."

The cases that Defendant cites concerning the meaning of "Claim" are inapt because they deal with different policy definitions for the term "Claim."  *See, e.g.*, *W. Waterproofing Co., Inc. v. Zurich Am. Ins. Co.*, No. 20 Civ. 3199, 2022 WL 329225, at *4 (S.D.N.Y. Feb. 3, 2022) (defining "claim" as a "demand, notice or assertion of a legal right seeking a remedy or alleging liability or responsibility on the part the insured"); *Quanta Lines Ins. Co. v. Invs. Cap. Corp.*, No. 6 Civ. 4624, 2009 WL 4884096, at *2 (S.D.N.Y. Dec. 17, 2009) (defining "claim" as "a demand received by any Insureds for Damages (including pleadings received in a civil litigation or arbitration) for an actual or alleged Wrongful Act").  There can be no omnibus definition of a contractual term untethered to the particular contract at issue.

Because Mellesmoen's first "Claim" under the Policy was the demand for money in the complaint filed to commence the Lawsuit, and because IAC gave timely notice of that claim, the breach of contract claim survives Defendant's late notice defense.

### 2.     Modification of the Contract

Alternatively, even if the Letter is construed to be a "Claim" under the Policy, the breach of contract claim survives because the Complaint sufficiently alleges facts to show that the parties' agreement was modified by their course of dealing -- specifically, that minor matters did not constitute "Claims" unless and until they appeared likely to ripen into significant legal proceedings.

Under New York law, parties may modify a contract "by another agreement, by course of performance, or by conduct amounting to a waiver or estoppel." *CT Chems. (U.S.A.), Inc. v. Vinmar Impex, Inc.*, 613 N.E.2d 159, 162 (N.Y. 1993); *accord Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 502 (S.D.N.Y. 2022). "Notice requirements are to be liberally construed in favor of the insured . . . ." *Greenburgh Eleven Union Free Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 758 N.Y.S.2d 291, 293 (1st Dep't 2003); *accord Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 840 (S.D.N.Y. 2018) (New York law).

"As a general rule, where a contract has a provision which explicitly prohibits oral modification, such clause is afforded great deference." *Healy v. Williams*, 818 N.Y.S.2d 121, 123 (2d Dep't 2006); *accord Volt Elec. NYC Corp. v. A.M.E., Inc.*, 586 F. Supp. 3d 262, 281 (S.D.N.Y. 2022) (New York law). However, "the law is abundantly clear in New York that, even where a contract specifically contains a nonwaiver clause and a provision stating that it cannot be modified except by a writing, it can, nevertheless, be effectively modified by actual performance and the parties' course of conduct." *Aiello v. Burns Int'l Sec. Servs. Corp.*, 973 N.Y.S.2d 88, 96 (1st Dep't 2013) (citing *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 850 N.E.2d 653, 658 (N.Y. 2006)). "[W]hen a party's conduct induces another's significant and substantial reliance on the agreement to modify, albeit oral, that party may be estopped from disputing the modification notwithstanding [New York's statutory requirement of a writing]." *Rose v. Spa Realty Assocs.*, 366 N.E.2d 1279, 1281 (N.Y. 1977); *accord Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 4 N.E.3d 336, 340-41 (N.Y. 2013); *Signature Fin. LLC v. Garber*, 159 N.Y.S.3d 38, 39-40 (1st Dep't 2021); *see also Premier*

10

*Med. Sys., LLC v. NeuroLogica Corp.*, No. 21 Civ. 1337, 2022 WL 603999, at *9-10 (S.D.N.Y. Feb. 28, 2022) (New York law).  "[C]onduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written."  *Rose*, 366 N.E.2d at 1283; *accord Garcia v. Dezba Asset Recovery, Inc.*, No. 22 Civ. 1736, 2023 WL 2691756, at *8 (S.D.N.Y. Mar. 29, 2023).

Defendant argues that the breach of contract claim should be dismissed because notice of the claim was untimely -- i.e., the claim was first made when Plaintiff received the Letter in February 2016, and Plaintiff failed to report the claim by the end of the Policy Period.  The argument fails in light of the Complaint's allegations that the Policy was modified so that minor matters did not constitute "Claims" unless and until they appeared likely to ripen into significant legal proceedings.  The allegations include that, when Defendant issued the Policy in 2015, the parties had already established a course of dealing.  Defendant had issued liability policies covering IAC and its subsidiaries since 2008, and the parties had reached several explicit and implicit mutual understandings during that time, including that the insureds would not notify Defendant of every complaint, grievance or other assertion received.

The Complaint alleges that Defendant and the insureds discussed the modification during one or more insurance renewal meetings that pre-dated the issuance of the Policy.  Defendant was reminded of the modification during regularly scheduled meetings attended by Defendant's outside counsel and representatives of the insureds.  Defendant offered no objection and, to the contrary, made clear that it did not expect to be notified of every single demand against the insureds.  If these allegations are true, therefore, over the parties' seven-year course of performance, Defendant "induce[d] . . . significant and

substantial reliance on the agreement to modify, albeit oral," and is "estopped from disputing the modification notwithstanding [New York's statutory requirement of a writing]." *Rose*, 366 N.E.2d at 1281; *accord Signature Fin. LLC*, 159 N.Y.S.3d at 39-40; *see also Aircraft Servs. Resales LLC v. Oceanic Cap. Co.*, No. 9 Civ. 8129, 2013 WL 4400453, at *6 (S.D.N.Y. Aug. 14, 2013) (applying New York law and holding parties' conduct established enforceable oral modifications despite no-oral modification clause). That a de minimis or frivolous written demand for money did not constitute a "Claim" is not otherwise compatible with the agreement as written, which defines "Claim" to include an unqualified "written demand for money." *See Rose*, 366 N.E.2d at 1283 ("[C]onduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written.").

Under the Policy as modified, Plaintiff provided timely notice. The Letter, received February 16, 2016, was not a "Claim" because it appeared to be meritless and frivolous. According to the Complaint, the underlying grievance was based on a meeting -- held in a shopping mall -- between Mellesmoen and Rad, the then-CEO of Tinder, Inc. Mellesmoen alleged that he presented Rad with product and marketing ideas, for which Rad promised Mellesmoen compensation, and that Tinder, Inc. later used his ideas without compensating him. IAC viewed the Letter as frivolous and responded to Mellesmoen via a letter that explained why his assertions were meritless and not to be taken seriously. As the insureds determined it was unlikely that Mellesmoen would initiate a formal claim or lawsuit against any insured, let alone a claim or lawsuit that would exceed the Policy's $1,000,000 retention, no "Claim" as to the insureds was then made.

Based on the alleged Policy modification which arose from the parties' alleged course of dealing, Defendant's motion to dismiss the breach of contract claim is denied. *See, e.g.*, *Concourse Rehab. & Nursing Ctr. Inc. v. Exec. Risk Indem. Inc.*, No. 8 Civ. 9040, 2010 WL 4642357, at *2 (S.D.N.Y. Nov. 12, 2010) (denying motion to dismiss where the amended complaint and supporting affidavit contained "factual allegations that the parties' course of conduct was to provide notice once the matter proceeded beyond the EEOC level, which, taken as true, could support a finding that Plaintiff's notice was not untimely"); *Randolph Equities, LLC v. Carbon Cap., Inc.*, No. 5 Civ. 10889, 2007 WL 914234, at *3 (S.D.N.Y. Mar. 26, 2007) ("At this early stage of the pleadings, Plaintiffs' allegation that the parties' course of dealings modified the Second Commitment Letter, despite the no-oral modification clause, is sufficient. . . . Plaintiffs . . . have adequately alleged the performance of their obligations . . . Therefore, [Defendant's] motion to dismiss the contract claim is denied."); *Premier Med. Sys., LLC*, 2022 WL 603999, at *9-10 (similar).

Defendant's arguments to the contrary are unavailing.  First, Defendant suggests that it "is simply implausible that [Plaintiff] and [Defendant] would orally negotiate critical coverage terms of the Policy at renewal meetings, but never add those terms to the written contract."  But factual allegations in the Complaint are assumed to be true, "even if doubtful in fact."  *Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 393 (S.D.N.Y. 2019) (citing *Twombly*, 550 U.S. at 555).

Second, Defendant argues that the allegations in the Complaint "blatantly contradict[]" the initial complaint, and that Plaintiff never explains why the initial complaint omitted "the reporting provision applicable to Claims made in the last sixty

13

days of the Policy Period," a provision critical to Plaintiff's theory that Mellesmoen's claim was first made with the filing of the Lawsuit, and that the Letter did not constitute a Claim. Defendant is referring to the policy provision on which Plaintiff relies for its argument that its notice of the Lawsuit was timely, an assertion that Defendant does not seem otherwise to dispute.[2]

This argument is unpersuasive. "[W]here a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." *Vasquez v. Reilly*, No. 15 Civ. 9528, 2017 WL 946306, at *3 (S.D.N.Y Mar. 9, 2017). Here, the Complaint does not contradict the facts pleaded in the initial complaint, including its allegations about the oral modification. For example, the initial complaint alleged that "it was understood by [Defendant] and the insureds that the insureds had no obligation to notify [Defendant] of minor matters that could potentially implicate their insurance policies unless and until the insureds determined that such matters were substantially likely to develop into formal claims made or filed against them," which is consistent with allegations in the Complaint. That the initial complaint did not refer to a notice provision does not support Defendant's argument that Plaintiff "blatantly changed" its story in a way that "directly contradicts" its earlier pleading.

---

[2] The Complaint alleges that the Claim was first made on August 18, 2016, when the insureds received notice of the Lawsuit the day before. The coverage period under the Policy ended August 20, 2016. Plaintiff, through its insurance broker, notified Defendant of the claim on August 22, 2016, well within the required "sixty (60) days after the expiration date of the Policy Period in the case of Claims first made against the Insured during the last sixty (60) days of the Policy Period."

14

3.      **Remaining Causes of Action**

The Complaint asserts two causes of action based on Defendant's failure to disclose promptly its disclaimer of coverage based on late notice.  Plaintiff alleges that an earlier disclaimer would have allowed the insureds to purchase the Optional Extension Period to cover the claim.  These two causes of action -- breach of the implied covenant of good faith and fair dealing (part of Count 1) and equitable estoppel (Count 2) -- are dismissed because the premise on which Plaintiff relies is incorrect.  The Optional Extension Period would have had no effect on the Mellesmoen claim, whether it was first made on February 16, 2016, when the Plaintiff received the Letter, or on August 18, 2016, when Plaintiff received notice of the Lawsuit.

The Policy provides for an Optional Extension Period -- an option for the insured to extend coverage for a period of one, two or three years beyond the original policy period by paying an additional premium.  "Optional Extension Period" is defined in Section VI. X. as "the period of time after the end of the Policy Period for reporting Claims as provided in Clause X., Optional Extension Period . . . ."  Section X. A. of the Policy states that the Optional Extension Period provides coverage only for "Claims first made against any Insured and reported to [Defendant] during the Optional Extension Period."  Here, the Claim was made either on February 16 or August 18, 2016, in either case during the Policy Period, which ended August 20, 2016, and not during the Optional Extension Period.

Plaintiff argues that the Optional Extension Period extends the notice period for "all Claims," not just those made during the Optional Extension Period.  Plaintiff relies on the notice provision, which states: "all Claims made against any Insured must be

reported no later than . . . (iii) the end of the Optional Extension Period (if applicable)." Plaintiff's position is untenable because it asks the Court to ignore the unambiguous language in Section X of the Policy, which makes clear that the Optional Extension Period extends only to claims first made during the Optional Extension Period. *See Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Cap., Inc.*, 92 N.E.3d 743, 748 (N.Y. 2017) ("[A] contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect."). Plaintiff's interpretation is therefore rejected, and the breach of implied covenant claim and equitable estoppel claim are dismissed.

## IV. CONCLUSION

For the reasons stated above, the motion to dismiss is GRANTED in part and DENIED in part. The motion to dismiss the claims for breach of the implied covenant of good faith and fair dealing and equitable estoppel is granted. The motion to dismiss the breach of contract claim is otherwise denied.

By June 8, 2023, Defendant shall file a letter stating why Plaintiff should not be granted summary judgment on the surviving contract claim based on the discussion in Section III.A.1 above. A court may apply an unambiguous contract term to undisputed facts to grant summary judgment to either party. *See Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) ("Summary judgment is appropriate if the terms of the contract are unambiguous.") (New York law); *accord Metwally v. City of New York*, No. 19 Civ. 8206, 2023 WL 2808215, at *3 (S.D.N.Y. Apr. 6, 2023) (New York law) (granting summary judgment based on the "clear and unambiguous language" of the contract).

16

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 33.

Dated: May 25, 2023
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**