

1776 K STREET NW
WASHINGTON, DC 20006
PHONE    202.719.7000

www.wileyrein.com

March 31, 2017

Leslie A. Platt
202.719.3174
LPlatt@wileyrein.com

Parker J. Lavin
202.719.7367
PLavin@wileyrein.com

**VIA E-MAIL**

Mr. James Root                                   Mr. Ben Gildin
(*james.root@iac.com*)                           (*ben.gildin@iac.com*)
Senior Director, Risk Management                 Corporate Counsel
IAC/InterActiveCorp                              IAC/InterActiveCorp
555 West 18th Street                             555 West 18th Street
New York, NY 10011                               New York, NY 10011

Re:   Insurer:            Beazley USA, underwritten by certain underwriters at
                          Lloyd's, Syndicate 2623/623 ("Beazley")
      Named Insured:      IAC/InterActiveCorp ("IAC")
      Matter:             *Mellesmoen v. Tinder, Inc., et al.*, No. SC126284
                          (Cal. Super. Ct., Los Angeles Cnty.)
      Policy Nos.:        W11DBA150501 (the "2015 Policy")
                          W11DBA160601 (the "2016 Policy")
                          (collectively, the "Policies")
      Policy Periods:     August 20, 2015 to August 20, 2016
                          August 20, 2017 to August 20, 2017
      Beazley Claim No.:  BEAZL100002878086
      Marsh Claim No.:    16NYC_205579

Dear Jim and Ben:

As you know, we represent Beazley USA ("Beazley") in connection with the above-referenced Policies issued to IAC/InterActiveCorp ("IAC"). On behalf of Beazley, we again thank you for the August 22 email notifying Beazley of the complaint filed against IAC's subsidiary Tinder, Inc. ("Tinder") by Mr. John Mellesmoen in the above-referenced matter (the "Mellesmoen matter"*)*, as well as the further updates you have provided to Beazley.

As you may recall, on November 21, 2016, Beazley proposed that it defer its coverage evaluation for the Mellesmoen matter pending the outcome of IAC's demurrer, and IAC agreed with that approach on December 5, 2016. Following the court's ruling on IAC's demurrer and the filing of the second amended complaint, on March 23, 2017, IAC requested that Beazley conclude its deferral and provide IAC with its coverage position in light of the matter proceeding. Beazley has completed its coverage evaluation and, for the reasons set forth below, regrets to inform you that the Policies do not provide coverage for this matter.



I. **The Mellesmoen Matter**

Beazley's understanding of the factual background is drawn from the materials provided in the August 22 email notifying Beazley of this matter, which included the original *Mellesmoen* complaint and the two letters exchanged between the parties involved and/or their counsel, as well as the information provided on our August 25, 2016 telephone call and subsequent discussions and e-mail correspondence.

By letter dated February 16, 2016 and titled "Settlement Communication" (the "February 2016 letter"), counsel for Mr. Mellesmoen wrote to apprise certain individuals at Tinder, IAC, and Match Group, Inc. "of claims Mr. Mellesmoen has against Tinder stemming from an in-person pitch meeting [Mr. Mellesmoen] had with Sean Rad, then-CEO of Tinder, in January 2014." The letter alleges that in this meeting, Mr. Rad "unequivocally assured Mr. Mellesmoen that he would operate in 'good faith' and would absolutely 'reward' Mr. Mellesmoen should the company utilize any ideas that Mr. Mellesmoen presented during the meeting." The February 2016 letter asserts that "in reliance on Mr. Rad's promises," Mr. Mellesmoen presented Mr. Rad with the concept of a function described as "Really Like" to be used on the Tinder app, and that despite no further contact with Mr. Mellesmoen, Tinder launched the app function "Super Like" approximately a year and half later, which Mr. Mellesmoen contends is essentially the same as the idea he pitched to Mr. Rad in their meeting.

The February 2016 letter further alleges that, "[i]n addition to a wealth of ordinary common law claims, including but not limited to fraud, promissory estoppel, quantum meruit, misrepresentation, and unjust enrichment, Mr. Mellesmoen has a compelling 'idea submission' claim for which the law provides substantial damages." After setting forth various case law in support of Mr. Mellesmoen's position, the February 2016 letter contends that a "jury will find [Mr. Mellesmoen's 'idea submission' claim] persuasive," allowing him to "recover considerable damages." The letter closes by alleging that "Tinder's malicious and bad faith refusal to compensate Mr. Mellesmoen for his valuable idea is unlawful, wrong, and entitles Mr. Mellesmoen to substantial recovery" and that the letter is "an attempt to amicably resolve Mr. Mellesmoen's legal claims, confidentially and without media exposure." It also notes that the letter is "formal notification of potential litigation" and "caution[s]" the recipients about their preservation obligations as a result.

On March 26, 2016, Ed Ferguson, Associate General Counsel for IAC, responded to the February 2016 letter, stating that IAC has "investigated [Mr. Mellesmoen's]



claims and believe[s] they are without merit" and explains, among other ways the claims "have no factual or legal basis," that "[m]onetizing such a feature [as Super Like] was considered at Tinder long before Mr. Mellesmoen came along."

On August 17, 2016, Mr. Mellesmoen filed his complaint in California state court (the "*Mellesmoen* Complaint") based on substantially the same allegations as those set forth in the February 2016 letter. The Complaint names as defendants Tinder and Mr. Rad and asserts causes of action for breach of contract, quantum meruit, breach of the duty of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, false promise, and promissory estoppel. In connection with his claims, Mr. Mellesmoen seeks an unspecified amount in monetary damages, including punitive damages, as well as restitution.

A first amended complaint was filed on November 30, 2016, and a second amended complaint ("SAC") was filed on March 8, 2017. The SAC, the operative complaint, asserts causes of action for breach of contract, quantum meruit and false promise.

IAC first reported the matter to Beazley on August 22, 2016, at which time it provided Beazley with a copy of the original *Mellesmoen* Complaint, as well as the February 16, 2016 and March 26, 2016 correspondence.

## II. Coverage Analysis

In discussing the availability of coverage under the Policies, Beazley is not in any way suggesting that the allegations made by Mr. Mellesmoen have merit or will give rise to any liability. Rather, Beazley is providing you with its assessment of coverage based on the allegations made by Mr. Mellesmoen. Please note that this discussion is not intended to be exhaustive or exclusive, and that future developments may affect Beazley's coverage analysis. Beazley respectfully reserves all of its rights under the Policy and applicable law, including the right to raise in the future other terms, conditions and exclusions in the Policies as appropriate.

### A. The Policies and Their Claims Made and Reported Nature

Beazley issued AFB Media Tech Policy No. W11DBA150501 (the "2015 Policy") to IAC/InterActiveCorp ("IAC") for the Policy Period of August 20, 2015 to



August 1, 2016, as well as AFB Media Tech Policy No. W11DBA160601 (the "2016 Policy") to IAC for the Policy Period of August 20, 2016 to August 1, 2017.[1]

The 2015 Policy and the 2016 Policy provide specified coverage under several separate insuring agreements, and to the extent that they afford third-party liability coverage, it is for a Claim first made against an Insured and reported to Beazley during their respective Policy Periods. *See, e.g.,* Policies, §§ I.A., B., E. and F. More specifically, and as a further example, Insuring Agreement F, which affords Multimedia and Advertising Liability Coverage and appears to be the only potentially applicable insuring agreement based upon the allegations by Mr. Mellesmoen, provides that Beazley will pay on behalf of any Insured:

> Damages and Claims expenses . . . which the Insured shall become legally obligated to pay because of liability imposed by law or Assumed Under Contract resulting from *any Claim first made against any Insured during the Policy Period . . . and reported to [Beazley] during the Policy Period* or as otherwise provided in Clause IX. of this Policy for one or more of the following acts first committed on or after the Retroactive date . . . . and before the end of the Policy Period in the course of the Insured Organization's performance of Professional Services, Media Activities or Technology Based Services:
>
> . . . .
>
> 6. . . . . misappropriation of ideas under implied contract;
>
> . . . .

Policy, § I.F. (emphasis added).

The Policies define "Insured" to include the Named Insured – that is, IAC – along with any Subsidiaries, which together are referred to as the "Insured Organization." *See* Policies, § III.A. "Insured" is also defined to include a "director, officer or Manager of the Insured Organization, but only with respect to the performance of his or her duties as such on behalf of the Insured Organization." *See id.*, § III.B. Beazley understands that Tinder and Match Group, Inc. are Subsidiaries of IAC,

---

[1] Except as otherwise indicated, the relevant terms and conditions of the 2015 Policy and the 2016 Policy are the same. Accordingly, as noted above, we refer and cite to the 2015 Policy and 2016 Policy, together, as the "Policies."



Messrs. Root and Gildin
March 31, 2017
Page 5

and that Mr. Rad was the CEO of Tinder, such that Tinder, Match Group, Inc. and Mr. Rad are Insureds under the Policies.

"Claim" is defined to include, in relevant part, "a written demand received by any Insured for money or services, including the service of a suit or institution of arbitration proceedings." Policies, § VI.G.1. Under the Policies, multiple Claims "arising from the same or a series of related or repeated acts, errors or omissions, or from any continuing acts, errors, or omissions . . . . shall be considered a single Claim for purposes of this Policy . . . . deemed to have been made at the time of the first such Claim." *Id.*, § VI.G.

With respect to notice and reporting, Section IX. of the Policies provides:

> If any Claim is made against the Insured, the Insured, upon knowledge of the Office of the Risk Manager or the Office of the General Counsel of the Named Insured (the "Claims Control Group"), shall forward as soon as practicable to [Beazley] . . . written notice of such Claim in the form of a telecopy, email, or express or certified mail together with every demand, notice, summons or other process received by the Insured or the Insured's representative. Notwithstanding the foregoing, all Claims made against any Insured must be reported no later than (i) the end of the Policy Period, (ii) sixty (60) days after the expiration date of the Policy Period in the case of Claims first made against the Insured during the last sixty (60) days of the Policy Period, (iii) the end of the Optional Extension Period (if applicable), or (iv) one year after the expiration date of the Policy Period for Claims not known to the Claims Control Group at the end of the Policy Period.

*See* Policies, § IX.A.

A Claim is considered reported to Beazley when written notice is first received by Beazley. *See* Policies, § IX.D.

BEAZLEY0015067



### B. The Mellesmoen Matter Is Not a Claim Both Made *and* Reported During the Policy Period of Either of the Policies

The February 2016 letter from Mr. Mellesmoen's counsel, which informs Tinder that Mr. Mellesmoen seeks to "resolve [his] legal claims" against Tinder arising out of the alleged actions of Mr. Rad and Tinder, constitutes a Claim. Notably, after setting forth his allegations, the February 2016 letter repeatedly asserts that Mr. Mellesmoen is owed and will receive, should the case go to a jury, "substantial" and "considerable" compensation as damages for his Claim, and threatens to "proceed vigorously with litigation" should "good faith attempts to resolve th[e] matter not commence within 14 days of [the date of the February 2016 letter]."

The *Mellesmoen* Complaint also is a Claim as it similarly contends, after repeating the allegations in the February 2016 letter, that Mr. Mellesmoen is owed unspecified monetary damages from Tinder and Mr. Rad and was served upon IAC/Tinder.

Because the allegations set forth in the February 2016 letter are substantially the same and/or "aris[e] from the same or a series of related or repeated acts" as those alleged in the *Mellesmoen* Complaint, the Claims are considered a single Claim deemed first made when IAC/Tinder received the February 2016 letter, which Beazley presumes was received within days of the February 16 letter being sent and no later than IAC's response letter of March 25, 2016. As the latter was signed by IAC's Associate General Counsel, it is evident that a member of IAC's Claims Control Group knew of the February 2016 letter by the time of IAC's March response. IAC, however, did not report the Claim to Beazley until August 22, 2016.

The Mellesmoen matter, therefore, is not a Claim both first made against an Insured and reported to Beazley during either the Policy Period of either the 2015 Policy or the 2016 Policy. It is a Claim first made during the 2015 Policy (and not during the last 60 days of the 2015 Policy Period), but it was not reported to Beazley until after the inception of the 2016 Policy. Likewise, while the Mellesmoen matter was reported to Beazley during the 2016 Policy, it is not a Claim first made during that Policy Period.

Because the two requirements as to the timing of the Claim and its reporting to Beazley are not together satisfied with respect to either of the Policies, neither the 2015 Policy nor the 2016 Policy affords coverage for the Mellesmoen matter.



### C. Reservation of Rights

In light of the dispositive effect of the issues identified above, Beazley does not address other provisions of the Policies that may apply to limit or bar coverage for the Mellesmoen matter at this time. Rather, Beazley reserves all of its rights under the Policies and at law, including the right to rely on other Policy terms and conditions as appropriate, including but not limited to:

- whether or not the Mellesmoen matter triggers an insuring clause in the Policies;

- the definition of Damages, which does not include restitution, disgorgement of unjust enrichment or profits by an Insured, or punitive or exemplary damages (unless insurable by law in any applicable venue that most favors coverage for such punitive or exemplary damages) (Policies, § VI.M.);

- Exclusion A (Policies, § V.A.), which precludes coverage for intentional or knowing violation of the law, among other things;

- Exclusion E (Policies, § V.E.), which precludes, with certain exceptions, coverage for any Claim or Loss arising out of or resulting from any contractual liability or obligation, or arising out of or resulting from breach of contract or agreement either oral or written;

- Exclusion F (Policies, § V.F.), which precludes coverage for breach of any express warranties or representations or other contractual obligation, which goes beyond an express or implied duty to exercise a degree of care or skill as is consistent with applicable industry standards; as well as for breach of guarantee or any promises of profits; and

- Exclusion H (Policies, § V.H.), which precludes coverage for any actual or alleged obligation to make licensing fee or royalty payments.

### III. Conclusion

For the reasons set forth above, Beazley has determined that coverage is not available under either of the Policies for the Mellesmoen matter and that it has no defense or indemnity obligations to any party in connection with this matter. Please understand that this conclusion is based on the information provided thus far. If there is any additional information that the Insured believes may warrant a



Messrs. Root and Gildin
March 31, 2017
Page 8

reconsideration of Beazley's coverage position, Beazley invites you to provide that information to us.

In the meantime, and pending developments in the litigation, Beazley reserves all of its rights under the Policy and at law, including but not limited to the right to rely on other terms and conditions in the Policy as appropriate. Additionally, please do not hesitate to contact us if you have any questions or concerns about anything in this letter.

While we encourage you in the first instance to contact us with any questions, should the California Insurance Commissioner have jurisdiction over this matter you may have the right to have this matter reviewed by the California Department of Insurance. It can be contacted as follows:

> California Department of Insurance
> Consumer Services Division
> Claim Services Bureau
> 300 South Spring Street, 11th Floor
> Los Angeles, CA 90013
> (800) 927-4357 (in state)
> (213) 897-8921 (out of state)
> (800) 482-4833 (TTD)

Again, should you have any questions or otherwise wish to discuss the matter, please do not hesitate to contact us.

Sincerely,

*[signature]*

Leslie A. Platt
Parker J. Lavin

cc: Shamica Aleong, Marsh (*Shamica.Aleong@marsh.com*)
    Susan Friedman, Marsh (*Susan.F.Friedman@marsh.com*)
    Katy Tejada-Ortega, Marsh (*katy.tejada-ortega@marsh.com*)
    R. Damian Brew, Marsh (*damian.brew@marsh.com*)
    Beth D. Diamond, Beazley (*beth.diamond@beazley.com*)