# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MATCH GROUP, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **BEAZLEY UNDERWRITING LIMITED**, <br><br> Defendant. | Case No.: 1:22-cv-04629-LGS |

## DECLARATION OF ERNEST MARTIN, JR.
## IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

1. My name is Ernest Martin, Jr. I am over twenty-one years of age, am of sound mind, and am capable of making this Declaration. The facts stated in this Declaration are within my personal knowledge and are true and correct. The opinions stated in this Declaration are based on my knowledge of this case and my professional background, knowledge, and experience.

2. I am a partner in Haynes and Boone, LLP ("Haynes Boone"). I chair the firm's Insurance Recovery Litigation Section. I practice nationally, litigating insurance disputes. Match Group, LLC ("Match") engaged me and my firm to provide legal representation in connection with the above-styled dispute (the "Match Lawsuit"), and we have done so since June 2021.

## QUALIFICATIONS

3. I received my law degree from the University of California, Berkley School of Law, in 1987. I joined Haynes Boone in 1987 and have practiced there since.

4. I am and have been in good standing and licensed to practice law in Texas since 1988. I am admitted *pro hac vice* in this matter. I am also a member of good standing in numerous federal courts, including the Fifth Circuit, and all the U.S. District Courts in Texas.

5. For most of my career, I have focused on representing policyholders in insurance-

related disputes. I have litigated numerous cases in jurisdictions across the county,[1] including New York. Since 2004, I have earned a Band One rating from *Chambers USA* as a top insurance lawyer in Texas and I am "widely considered a leading policyholder-side practitioner."[2]

6. I have served in leadership roles for the insurance bar at the local, state, and national levels for many years. I am the co-founder and past Chair of the Insurance Law Section of the State Bar of Texas. I was the co-chair of the ABA's Insurance Coverage Litigation Committee from 2019 to 2021. I am a Fellow of the American College of Coverage Counsel. I also serve as an Adjunct Professor of Insurance Law at the Southern Methodist University Dedman School of Law and have done so for seventeen years. Seven years ago, I founded the Texas Insurance Academy, which sponsors an annual education and networking program for policyholders and insurance brokers addressing important insurance issues.

7. I have also served in significant leadership roles in my firm, including as head of the firm's Insurance Recovery Litigation Section, Admission to Partnership Committee, and as managing partner of the Dallas office. I currently serve on the firm's managing Board of Directors.

8. Through my work, I have become familiar with and have provided my opinion regarding the reasonableness of the fees reasonably expended and rates customarily charged by policyholder attorneys in jurisdictions across the country.

9. The following exhibits are attached to this Declaration:

- **Exhibit 1-A** is my current resume, including my qualifications and a list of publications authored by me, which further highlights my experience and education;
- **Exhibit 1-B** are our invoices generated for this matter. The invoices are partially redacted to prevent the disclosure of privileged information and/or work product, and

---

[1] *See, e.g.*, *In re Boy Scouts*, 650 B.R. 87 (D. Del. 2023); *Homeland Ins. v. Clinical Pathology Labs.*, No. 20-cv-00783 (W.D. Tex. 2022).
[2] *Ernest Martin*, CHAMBERS & PARTNERS, https://chambers.com/lawyer/ernest-martin-usa-5:161516 (last visited June 20, 2023). *See* Exhibit 1-A attached for other awards and recognitions.

are submitted herewith in four parts to comply with the Court's ECF filing rules;

- **Exhibit 1-C** contains biographical information for the below-referenced attorneys who worked on this matter (*see infra* ¶ 23);
- **Exhibit 1-D** is a partially redacted report showing all amounts that I wrote off and did not charge Match for in connection with this matter; and
- **Exhibit 1-E** is two charts of datapoints on attorneys' fees from Thomson Reuters' "PeerMonitor" service, a proprietary database of attorneys' fees information;
- **Exhibit 1-F** consists of invoices for e-discovery costs incurred in this action.[3]

## OPINION ON MATCH'S FEES

10. Match incurred and paid fees and costs to Haynes Boone for its representation of Match in this coverage dispute ("Match's Fees"). The facts and my opinions regarding Match's Fees, and related expenses (*e.g.*, e-discovery expenses), are below.

**A.   The data or other information considered.**

11. Match retained Haynes Boone for purposes of seeking insurance coverage under the Policy for costs incurred in connection with the Mellesmoen Lawsuit (the "Representation").[4]

12. In making this Declaration and addressing the reasonableness of the fees related to the Representation, I considered and relied upon the invoices that Haynes Boone issued to Match throughout the Representation, which include detailed descriptions of the time spent and services performed by Haynes Boone; the billing judgment exercised in issuing those invoices, as explained in more detail below; the docket, certain filings, and discovery; my personal knowledge and experience in this matter, in addition to knowledge and experience I have gained over more than thirty-five years of legal practice; confidential reports of standard hourly rates charged by lawyers at other AmLaw 100 firms; and the Court's Order (ECF No. 48.). I have also considered

---

[3] On June 30, 2023, Match filed a consent letter motion for leave to file Exhibits 1-B, 1-D, and 1-F because they exceed this Court's 15-page limit for exhibits submitted in support of motions. (*See* ECF No. 56.)

[4] All undefined capitalized terms—*e.g.*, "Policy"—are defined in the Memorandum of Law filed contemporaneously with this Declaration.

jurisprudence in the Second Circuit and New York regarding the recovery of attorneys' fees.

**B.     Summary and support for my opinion.**

13.     Through monthly invoices, Haynes Boone has billed Match $553,393.19 in fees and $911.40 in costs for work performed between June 23, 2021, and May 31, 2023 (the last date of work reflected in the most recent invoice that Haynes Boone issued on June 26, 2023). Match has paid all but the two most recent invoices, which I expect Match will pay in the ordinary course.

14.     As of May 31, 2023, Haynes Boone had billed Match for 958.9 hours of time at an average hourly rate, for attorneys and legal professionals, of $577.11. *See* Ex. 1-B. My team calculated the average hourly rate by dividing the attorneys' fees that Haynes Boone billed through May 31, 2023 ($553,393.19) by the hours billed and not written off (958.9). Haynes Boone reduced its charges in a total amount of $32,503.78 over the life of this matter via discounts, write downs or write offs, and the exercise of judgment by me, the billing partner on this case.

15.     Match also incurred e-discovery expenses in connection with this matter, totaling $22,653.13, primarily to facilitate the review and production of documents. *See* Ex. 1-F.

16.     In my opinion, the amounts Match paid were reasonable and necessary. This case involved a recovery of over $3.6 million (*see* ECF No. 55), sophisticated counsel on both sides, significant amounts of discovery, and complicated briefing. For those and the reasons detailed below, I believe that what Match paid was reasonable according to the standards set forth in caselaw from the Second Circuit and other New York authorities and otherwise.

**C.     Lodestar of Match's Fees and factors related to reasonableness.**

17.     In analyzing the reasonableness of Match's Fees, I first calculated the lodestar: multiplying the hours reasonably expended by a reasonable rate. I determined that Haynes Boone reasonably billed 958.9 hours at reasonable rates between $340–$1075, for a lodestar figure of

$553,393.19. Match's payment of that amount (save two pending invoices) bolsters that lodestar.

18. Match also incurred e-discovery expenses, totaling $22,653.13, to facilitate storage, review, organization, tagging, production, and redaction of thousands of documents collected and/or produced in this action in first- and third-party discovery. *See* Ex. 1-F.

19. I considered other factors in determining the reasonableness of Haynes Boone's fees and whether to adjust the lodestar amount up or down, including: (1) whether the billed tasks would normally be billed to a paying client; (2) the number of hours spent on each task; (3) the complexity of the case; (4) the number of reasonable strategies pursued; (5) the responses necessitated by maneuvers of the other side; and (6) duplication of services by multiple lawyers.[5]

20. In considering the reasonableness of Haynes Boone's rates, I considered the services performed; the experience, reputation, and ability of the lawyers performing the services; the skill required; and the prevailing market rates for attorneys of similar experience and expertise.

21. *Services performed*. In this action, Haynes Boone personnel provided the following non-exclusive list of services: (a) investigated, researched, and evaluated legal and factual bases for Beazley's coverage denial and the parties' claims and defenses; (b) facilitated settlement negotiations and meetings in an attempt to resolve the parties' disputes; (c) drafted and revised Match's various pleadings; (d) reviewed and analyzed Beazley's pre-motion letter regarding its intent to file a motion to dismiss; (e) prepared Match's response to Beazley's pre-motion letter; (f) reviewed and analyzed Beazley's motion to dismiss; (g) prepared Match's response to Beazley's motion to dismiss; (h) analyzed Beazley's reply in support of its motion to dismiss; (i) prepared Match's initial disclosures; (j) conferred with opposing counsel and prepared proposed scheduling orders, a joint motion for protective order, and an ESI protocol; (k) prepared Match's

---

[5] *See Millea v. Metro-N. R. Co.*, 658 F.2d 154, 166 (2d. Cir. 2011).

discovery requests and reviewed Beazley's responses and document productions, which consisted of more than 15,000 pages; (l) prepared responses to Beazley's discovery requests; (m) prepared Match's document productions responsive to Beazley's discovery requests and its accompanying privilege and redaction logs; (n) prepared and served a third-party subpoena; (o) reviewed document productions responsive to Match's subpoena, which consisted of more than 40,000 pages; (p) prepared a pre-motion letter requesting a stay of the disposition of the attorneys' fees issue; and (q) conferred with counsel and prepared a joint stipulated judgment.[6]

22. *Who performed the services*. Haynes Boone is an AmLaw 100 firm with a well-known reputation for providing sophisticated legal services and quality representation. Haynes Boone's Insurance Recovery Litigation Section has been at the forefront of the development of insurance law, and therefore brought a unique skill set to this dispute. Each of the lawyers who worked on this matter were well qualified with respect to the tasks performed, as evidenced not only by the result obtained, but by the fact that several of those lawyers have previously litigated insurance and/or other complex business cases. I exercised billing judgment throughout the case to assign appropriate tasks to timekeepers with lower rates whenever possible.

23. In addition to myself, the following Haynes Boone lawyers worked on this matter:

**Greg Van Houten, Associate**: Participated in all aspects of pre-litigation representation, pleadings, discovery, and motions practice. He handled most of the day-to-day management of the matter. Mr. Van Houten has been a practicing lawyer since 2015 and is licensed to practice in New York. In 2023, he was included in the "Ones to Watch" category of *Best Lawyers in America* and has been named a "Rising Star" in Insurance Coverage by *Washington, D.C. Super Lawyers*

---

[6] The attached billing records, Ex. 1-B, further detail each service performed within those broader categories, all of which were reasonable and necessary to obtain the recently-issued Judgment.

since 2018. He received his law degree with honors from Georgetown University. *See* Ex. 1-C.

**Rebecca Schwarz, Associate**: Participated in pre-litigation representation, pleadings, discovery, and motions practice. Ms. Schwarz has been a practicing lawyer since 2018. She is licensed to practice law in New York. She received her law degree with honors from Harvard and served as Editor-in-Chief for the *Harvard Business Law Review*. *See id.*

**Storm Lineberger, Associate**: Performed legal research, conducted discovery, and assisted with briefing. Mr. Lineberger has been a practicing lawyer since 2022. He received his law degree with honors from Southern Methodist University. *See id.*

**Joe Pinto, Associate**: Performed legal research, conducted discovery, and assisted with briefing. He has been a practicing lawyer since 2022. He received his law degree with honors from Emory University. *See id.*

**Rae Guyse, Associate**: Performed research and assisted in briefing during the litigation before leaving Haynes Boone for other employment. She has been a practicing lawyer since 2020. Ms. Guyse received her law degree with honors from the University of Texas. *See id.*

24. In addition to the services provided by the above-described lawyers, Match's Fees also include work performed by other Haynes Boone professionals. All such work was substantive work performed under an attorney's direction and supervision. Where possible, professionals were used to reduce costs. Those professionals include ESI consultants DiAnna Gaeta and Patti Zerwas, paralegals Pandeli Mano and Alecia Tipton, and librarian Stacie Schmidt. They performed reasonable and necessary services including but not limited to processing and analyzing document productions, preparing and revising pleadings, and conducting factual research.

25. *Reasonable amount of time to perform services.* As shown in the billing records, the legal services performed as part of the Representation were performed throughout the dispute,

including before and during the Match Lawsuit, and continue to be performed. In the aggregate and individually, the amount of time billed to Match was more than reasonable considering the issues in this case, the amount in controversy, and Match's success in response to Beazley's motion to dismiss, among other things. Notably, Match advanced six legal theories in this action: breach of contract, ambiguity of the Policy, excuse, modification by course-of-dealing, modification by New York general construction statute, and estoppel. Some of the theories required extensive legal and factual research. The course-of-dealing theory required significant discovery (including third-party discovery). Also, this was a significant case to Match given its monetary value. Thus, it was reasonable for Match to prepare a thorough and diligent prosecution of its claims.

26. Throughout the Representation—and in the normal course of business—I reviewed all the billing entries by Haynes Boone timekeepers before fees were invoiced to Match. In doing so, I exercised billing judgment, as I do for all my clients, to reduce or write-off time entries for work that was duplicative, unnecessary, or otherwise unreasonable. Collectively, I wrote down or off $32,503.78-worth of time worked between June 23, 2021, and May 31, 2023. *See* Ex. 1-D.

27. Below is the rate range for each timekeeper:

| Name | Rate Range |
|---|---|
| Guyse, Rae | $450–$550 |
| Lineberger, Storm | $374–$467.50 |
| Martin, Ernest | $995–$1075 |
| Pinto, Joe | $374–$467.50 |
| Schwarz, Rebecca | $650–$675.75 |
| Van Houten, Greg | $650–$775 |
| Gaeta, DiAnna | $403.75 |
| Mano, Pandeli | $370–$382.50 |
| Schmidt, Stacie | $270.00 |
| Tipton, Alecia | $340.00 |
| Zerwas, Patti | $403.75 |

28. Based on my review of the billing records, my experience, and my consideration of the relevant factors outlined in the caselaw referenced above, I believe the amount of time spent to perform the necessary services described above was both necessary and reasonable.

29. *Reasonable hourly rates*. The fees Match incurred were initially based on Haynes Boone's normal market rates, as agreed to by Match at the outset of the Representation. Haynes Boone's fees were not contingent. Starting in November 2022, Haynes Boone agreed to provide its services at 15% off Haynes Boone's normal market rates—which typically increase annually—with time spent on document review discounted an additional 20%. Based on my experience, the rates charged by Haynes Boone are reasonable considering rates charged by its peer firms, the specialized knowledge of its attorneys, the legal theories advanced by Match, and Match's success.

30. Haynes Boone's insurance group is *Chambers*-ranked. Because insurance litigation is a specialized area, it typically commands higher rates than general litigation. Most (if not all) the legal theories advanced by Match (*see supra* ¶ 25) are unique to insurance litigation and thus required specialized counsel experienced in litigating insurance coverage cases. In my experience, the rates charged by Haynes Boone are reasonable and consistent with the rates charged by other lawyers of comparable skill and experience at other AmLaw 100 firms, both nationally and in the New York market. Indeed, my average rate in this case ($1,017) is lower than average rates charged by senior partners at other top ranked firms. *See* Ex. 1-E. Haynes Boone's rates for associates are also in line with (or less than) rates charged by comparable lawyers at other equally ranked firms. *See id.* Hiring a firm with Haynes Boone's specialized insurance experience was reasonable and appropriate.

31. In addition to my experience in this area, I relied on datapoints on attorneys' fees from Thomson Reuters' "PeerMonitor" service, a proprietary database of attorneys' fees data compiled from and used by many law firms.[7] *See* Ex. 1-E. Exhibit 1-E contains the PeerMonitor

---

[7] PeerMonitor gathers hourly rates charged by AmLaw 100 firms and organizes that data by attorney seniority, position, geography, and practice area. The fee data is proprietary and restricted by Haynes Boone's licensing agreement for use of PeerMonitor, requiring a filing under seal.

information on standard hourly rates for attorneys in two datasets: (1) insurance coverage lawyers at AmLaw 100 firms nationwide; and (2) commercial litigators at AmLaw100 firms in New York. This data supports my opinion that Haynes Boone's rates are reasonable.

**D.     Ultimate opinions regarding Match's Fees.**

32.     For the reasons outlined above, it is my opinion that the fees charged by Haynes Boone were reasonable and necessary and that the appropriate lodestar amount of attorneys' fees for services rendered to Match through May 31, 2023, is $553,393.19.

33.     I considered whether an adjustment of this lodestar amount is appropriate, but determined an adjustment is not appropriate. In reaching my opinion, I considered, among other things, the legal issues at play, the extensive discovery this case involved, and the success Match obtained. The amounts billed were reasonable and necessary given the circumstances.

**E.     Fees for any appeal in the Match Lawsuit.**

34.     If Beazley files an appeal in this action, I understand Match will seek its appellate attorneys' fees and related costs following resolution of the appeal. I reserve the right to supplement my opinions if that occurs. I also reserve the right to supplement this Declaration as additional attorneys' fees are incurred while the case remains pending.

35.     Haynes Boone's invoices also contain pass-through charges for out-of-pocket expenses that the firm regularly and customarily bills to clients. In my experience and opinion, those charges were all reasonable and necessary. Match paid those amounts in the regular course of business, in addition to other costs and expenses of the litigation that were invoiced directly to Match. Because I understand that Match will have the opportunity to submit a Bill of Costs following the entry of judgment, I have not specifically addressed any cost issues in this Declaration. But I reserve the right to supplement this Declaration if that becomes necessary.

* * *

I declare under penalty of perjury that the statements above are true and correct.

Executed on June 30, 2023, in Dallas, Texas.

_____
Ernest Martin, Jr.