# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MATCH GROUP, LLC,

                Plaintiff,

v.

BEAZLEY UNDERWRITING LIMITED,

                Defendant.

Case No.: 1:22-cv-4629-LGS-SLC

---

## DEFENDANT BEAZLEY UNDERWRITING, LTD.'S
## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF MATCH GROUP, LLC'S MOTION FOR ATTORNEYS' FEES

Jonathan S. Zelig
**DAY PITNEY LLP**
One Federal Street
Boston, MA 02110
jzelig@daypitney.com
Tel. (617) 345-4601
Fax (617) 892-4236

Joseph T. Nawrocki
**DAY PITNEY LLP**
242 Trumbull Street
Hartford, CT 06103
jnawrocki@daypitney.com
Tel. (860) 275-0356
Fax (860) 748-4929

*Attorneys for Defendant*

TABLE OF CONTENTS

Page

Introduction................................................................................................ 1

Background ................................................................................................. 2

Argument .................................................................................................... 5

I.     **Match Is Not Entitled to Recover Attorneys' Fees Under New York Law** ................... 5

     A.     **New York Court of Appeals Precedent Bars the Award of Attorneys' Fees Where, as Here, the Insured Commences the Coverage Action**............................ 5

     B.     **Match Fails to Identify Any New York Precedent Supporting an Award of Attorneys' Fees Under the Facts of This Dispute** .................................... 11

II.    **In the Event the Court Decides to Award Match Attorneys' Fees, Match's Requested Award Should Be Reduced Significantly** .................................... 18

     A.     **The Court Should Not Award Fees for Work Related to Match's Initial Complaint** ........................................................................... 19

     B.     **Match Should Not Recover Attorneys' Fees For Unnecessary Discovery** .......... 21

     C.     **Match's Remaining Attorneys' Fees Should Be Reduced for Deficient Time Entries and Excessive Legal Rates and Hours** ....................................... 22

Conclusion ................................................................................................ 25

TABLE OF AUTHORITIES

Page(s)

**Cases**

*126 Mulberry St. Realty Corp. v. Diamond State Ins. Co.*,
  2010 WL 11710636 (S.D.N.Y. Nov. 1, 2010) ..................................................24

*625 Ground Lessor LLC v. Cont'l Cas. Co.*,
  17 N.Y.S.3d 26 (1st Dep't 2015) .............................................................8

*ACMAT Corp. v. Greater New York Mut. Ins. Co.*,
  282 Conn. 576 (Conn. 2007) ............................................................10, 18

*American Motorists Ins. Co. v. GTE Corp.*,
  2000 WL 1459813 (S.D.N.Y. Sept. 29, 2000) ...........................................12

*Anthony v. Franklin First Fin., Ltd.*,
  844 F. Supp. 2d 504 (S.D.N.Y. 2012) .......................................................24

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*,
  522 F.3d 182 (2d Cir. 2008) ................................................................23

*City of New York v. Zurich-Am. Ins. Grp.*,
  811 N.Y.S.2d 773 (2d Dep't 2006) .....................................................13, 14

*Danaher Corp. v. Travelers Indem. Co.*,
  2013 WL 364734 (S.D.N.Y. Jan. 31, 2013) ...............................................14

*Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*,
  810 F.3d 861 (2d Cir. 2015) .................................................................5

*Discover Prop. & Cas. Ins. Co. v. Pathmark Stores, Inc.*,
  2010 WL 4365561 (E.D.N.Y. Oct. 27, 2010) ............................................17

*Emps. Mut. Cas. Co. v. Key Pharms.*,
  75 F.3d 815 (2d Cir. 1996) ..................................................................6

*Fed. Ins. Co. v. Safeskin Corp.*,
  1998 WL 832706 (S.D.N.Y. Nov. 25, 1998) ..............................................14

*Fin. Servs. Vehicle Tr. v. Saad*,
  27 N.Y.S.3d 584 (2d Dep't 2016) ...........................................................8

*First Jeffersonian Assocs. v. Ins. Co. of N. Am.*,
  691 N.Y.S.2d 506 (1st Dep't 1999) .........................................................8

*Flatiron Acquisition Vehicle, LLC v. CSE Mortgage LLC*,
2020 WL 6875172 (S.D.N.Y. Nov. 22, 2020)........................................................24

*Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*,
22 F.4th 83 (2d Cir. 2021) ......................................................................1, 16

*Globecon Grp., LLC v. Hartford Fire Ins. Co.*,
434 F.3d 165 (2d Cir. 2006)...........................................................................9

*Greenburger v. Roundtree*,
2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020)..................................................24

*Greenburger v. Roundtree*,
2020 WL 6561598 (S.D.N.Y. Jan. 16, 2020) ...................................................23

*Halloway v. State Farm Ins. Companies*,
805 N.Y.S.2d 107 (2d Dep't 2005)..................................................................17

*Hardy v. Kulwicki*,
46 N.Y.S.3d 361 (4th Dep't 2017)...................................................................9

*Hershfeld v. JM Woodworth Risk Retention Grp., Inc.*,
181 N.Y.S.3d 667 (2d Dep't 2023)...................................................................8

*Hervochon v. Iona Coll.*,
2019 WL 1375359 (S.D.N.Y. Mar. 27, 2019) ..................................................13

*Hervochon v. Iona Coll.*,
2019 WL 2451431 (S.D.N.Y. Feb. 15, 2019)...................................................13

*Houston Cas. Co. v. Prosight Specialty Ins., Co.*,
462 F. Supp. 3d 443 (S.D.N.Y. 2020)........................................................14, 15

*Jarosz v. Am. Axle & Mfg., Inc.*,
2019 WL 6723741 (W.D.N.Y. Dec. 11, 2019)..................................................25

*KCG Holdings, Inc. v. Khandekar*,
2020 WL 7053229 (S.D.N.Y. Dec. 2, 2020) ....................................................23

*Kirsch v. Fleet St., Ltd.*,
148 F.3d 149 (2d Cir. 1998)...........................................................................22

*Kramarik v. Travelers*,
808 N.Y.S.2d 807 (3d Dep't 2006)...................................................................9

*Louisiana Generating LLC v. Illinois Union Ins. Co.*,
2014 WL 1270049 (M.D. La. Mar. 27, 2014) ..................................................12

*Makinen v. City of New York*,
 2016 WL 1451543 (S.D.N.Y. Apr. 12, 2016)........................................................................19

*Mason Tenders Dist. Council Welfare Fund v. Gibraltar Contracting, Inc.*,
 2020 WL 6363960 (S.D.N.Y. Oct. 29, 2020) ......................................................................22

*Mighty Midgets, Inc. v. Centennial Ins. Co.*,
 47 N.Y.2d 12 (1979) ...............................................................................................1, 5, 6, 8, 18

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
 598 F. Supp. 2d 473 (S.D.N.Y. 2009), *aff'd in part, vacated in part, remanded,* 599 F.3d 102
 (2d Cir. 2010)..........................................................................................................................16

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
 599 F.3d 102 (2d Cir. 2010)....................................................................................................16

*New York Univ. v. Cont'l Ins. Co.*,
 87 N.Y.2d 308 (1995) ...............................................................................................1, 5, 6, 7, 16

*Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*,
 2011 WL 8955840 (S.D.N.Y. Apr. 7, 2011)....................................................................22, 23

*Nutmeg Ins. Co. v. Rosen*,
 683 N.Y.S.2d 593 (3d Dep't 1998).............................................................................................9

*NYSA-ILA Med. & Clinical Servs. Fund v. Salco Trucking Corp.*,
 1995 WL 404863 (S.D.N.Y. July 6, 1995) ............................................................................24

*Perez v. Foremost Ins. Co.*,
 2020 WL 3316095 (W.D.N.Y. June 18, 2020) ......................................................................10

*Republic Franklin Ins. Co. v. Pistilli*,
 791 N.Y.S.2d 639 (2d Dep't 2005)..........................................................................................17

*Roman Cath. Diocese of Rockville Ctr. v. Gen. Reinsurance Corp.*,
 2016 WL 5793996 (S.D.N.Y. Sept. 23, 2016) ......................................................................10

*Ruiz v. Liberty Mut. Fire Ins. Co.*,
 2019 WL 7293377 (S.D.N.Y. Dec. 30, 2019) .......................................................................10

*Sanderson v. First Liberty Ins. Corp.*,
 2017 WL 5176371 (N.D.N.Y. Nov. 7, 2017) ........................................................................10

*Sidley Holding Corp. v. Ruderman*,
 2009 WL 6047187 (S.D.N.Y. Dec. 30, 2009) .......................................................................23

*Silva v. F.R. Real Est. Dev. Corp.*,
 870 N.Y.S.2d 328 (1st Dep't 2009) ...........................................................................................8

*Stein v. N. Assur. Co. of Am.*,
    2012 WL 1605365 (E.D.N.Y. May 7, 2012) ........................................................................10

*Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc.*,
    958 F. Supp. 2d 399 (E.D.N.Y. 2013) ................................................................................14

*Sukup v. State*,
    19 N.Y.2d 519 (1967) ..........................................................................................................6

*Those Certain Underwriters at Lloyd's, London v. DVO, Inc.*,
    473 F. Supp. 3d 236 (W.D.N.Y. 2020) ........................................................................19, 20

*U.S. Football League v. Nat'l Football League*,
    887 F.2d 408 (2d Cir. 1989) ........................................................................................19, 22

*U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*,
    3 N.Y.3d 592 (2004) .........................................................................................................5, 7

*Zelasko Const., Inc. v. Merchants Mut. Ins. Co.*,
    38 N.Y.S.3d 643 (4th Dep't 2016) ......................................................................................9

**Other Authorities**

14A Couch on Ins. § 207:87 (3d ed., updated June 2023) ......................................................9, 18

Bad Faith Actions Liability & Damages § 4:14 (2d ed., updated Oct. 2022) ................................9

George L. Priest, *A Principled Approach Toward Insurance Law: The Economics of Insurance
    and the Current Restatement Project*, 24 Geo. Mason L. Rev. 635 (2017) ...........................17

Ostrager & Newman, Handbook on Insurance Coverage Disputes § 5.06[b] (21st ed. 2022) ........9

**<u>INTRODUCTION</u>**

Plaintiff Match Group, LLC ("Match") asks the Court to do something barred by New York law: award attorneys' fees to a policyholder that commences and prevails in a garden-variety, good-faith contract dispute with its insurer, defendant Beazley Underwriting Ltd. ("Beazley"). The New York Court of Appeals has squarely addressed this issue. Twice. On both occasions, the Court of Appeals held that the American Rule – under which each side bears its own costs – applies where, as here, an insured commences and prevails in a breach of contract action against its insurer.[1] This Court's analysis can, and should, stop there.[2]

If the Court looks further, it will find legions of decisions affirming and applying this well-known rule – from all four Departments of the Appellate Division, all four New York federal district courts, and the Second Circuit, among others. Match tries to distinguish forty-four years of voluminous New York case law on the supposed basis of Beazley's singularly offensive and aggressive conduct. But everything Match describes – *e.g.*, declining coverage, retaining counsel, filing a responsive pleading – only confirms that this is a run-of-the-mill insurance contract dispute, and Match's motion is resolved by applying long-standing Court of Appeals precedent. The Court therefore should deny Match's motion in its entirety.

Should the Court decide to award fees to Match, Beazley respectfully requests that the Court award only a small fraction of the $576,957.72 demanded. The vast majority of Match's

---

[1] *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979) ("It is the rule in New York that such a recovery may not be had in an affirmative action brought by an assured to settle its rights."); *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 324 (1995) ("It is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy.").

[2] *See Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 101 (2d Cir. 2021) ("[T]he highest court of a state has the final word on the meaning of state law, and thus we are bound to apply New York law as determined by the New York Court of Appeals." (quotations omitted)).

fees were incurred pursuing failed legal theories and engaging in needless discovery over Beazley's objections. Moreover, Haynes Boone billed at excessive rates, over-staffed the matter, and submitted bills with various deficiencies, warranting further reductions.

For these reasons, Beazley respectfully requests that the Court deny Match's motion.

### BACKGROUND

In 2015, a predecessor of Match, InterActiveCorp ("IAC"), renewed its MediaTech policy of insurance (the "Policy") with Beazley. ECF No. 26, Am. Compl. ¶ 10. By that time, Beazley had been issuing liability policies to IAC for several years. *Id.* ¶ 44 (alleging that "Beazley had issued liability policies covering IAC and its subsidiaries … since at least 2008"). Due to the complexity of the account, Beazley retained Wiley Rein LLP ("Wiley") to serve as coverage counsel with respect to nearly all matters noticed by Match to the Policy and predecessor policies.[3] *See, e.g.*, Declaration of Jonathan S. Zelig ("Zelig Decl."), Exhibits 1–4.

 In August 2016, Match tendered the Mellesmoen Claim to Beazley. As it had done with prior matters tendered to the Policy, Beazley engaged Wiley to assist with coverage issues. Beazley investigated the claim, concluded it was not covered, and denied coverage. *See* Match Br. at 4. The parties then engaged in good faith discussions about the declination. *See id.* at 4–5. Those discussions ultimately did not change Beazley's position, and Beazley reaffirmed its declination. *See id.*

In 2021, Match retained counsel, Haynes Boone, who developed new arguments for coverage. *See* ECF No. 59-6, Letter of Haynes Boone to Wiley (Sept. 17, 2021). Beazley considered Match's new arguments, was unpersuaded, and (through Wiley) reaffirmed its declination. *See* ECF No. 59-7, Letter of Wiley to Haynes Boone (Nov. 4, 2021). As it turns out,

---

[3] Match conveniently omits this fact in its brief.

this Court rejected most of the arguments proffered by Match in the September 17, 2021 letter. *Compare* ECF No. 59-6, Letter of Haynes Boone to Wiley (Sept. 17, 2021) *with* ECF No. 48, Opinion and Order.[4]

In response, Match threatened litigation and sent Beazley a draft complaint. ECF No. 59-8, Letter of Haynes Boone to Wiley (Apr. 29, 2022). Beazley thereafter retained litigation counsel, Day Pitney LLP. *See* Match Br. at 5. Unable to dissuade Match from pursuing litigation, counsel for Beazley worked cooperatively with counsel for Match to proceed "in an efficient manner." ECF No. 59-9, E-mail of J. Zelig to G. Van Houten (June 2, 2022). That included advising Match as to which Beazley entity Match should name as the defendant in the event Match insisted on filing a lawsuit in the Southern District of New York. *Id.*[5]

On June 3, 2022, Match commenced the instant litigation against Beazley. ECF No. 1, Compl. Match brought three causes of action: (i) breach of contract; (ii) waiver; and (iii) equitable estoppel. *Id.* ¶¶ 83–109. Notably, the Complaint did not contain the legal theory on which the Court would eventually grant summary judgment in favor of Match. To the contrary, the initial Complaint omitted the relevant policy provision with an ellipsis:

> **E.** **The Policy's Notice Requirements**
>
> 34. The Policy provides, in pertinent part, that "Claims made against any Insured [must] be reported no later than (i) the end of the Policy Period [. . . or . . .] (iii) the end of the Optional Extension Period (if applicable) . . . ." *See id.* at IX.

*Id.* ¶ 34.

---

[4] The Court, however, declined to dismiss Match's course-of-dealing allegations on the grounds that they raised a material issue of fact. *See* ECF No. 48, Opinion and Order, at 13.

[5] Match misleadingly, and disappointingly, describes Beazley's extension of this professional courtesy as "encourag[ing] Match to sue." Match Br. at 5.

In accordance with Section III.C.2 of Judge Schofield's Individual Rules and Procedures for Civil Cases, Beazley filed a pre-motion letter in anticipation of filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 15, Beazley Pre-Motion Letter. The letter set forth the various infirmities in Match's position. *See id.* In response, Match abandoned entirely one of its three claims (based on waiver), and replaced it with a new argument based on the Policy's definition of "Claim." *See* ECF No. 26, Am. Compl., ¶¶ 100–120. It was this new argument – first introduced by Match in response to Beazley's pre-motion letter – upon which the Court eventually granted summary judgment in favor of Match. *See* ECF No. 48, Opinion and Order, at 7–9.

Because this litigation principally turned on questions of contract interpretation, Beazley proposed to Match and the Court that the parties defer unnecessary discovery costs pending resolution of its Motion to Dismiss. *See* ECF No. 15, Beazley Pre-Motion Letter, at 3 (requesting stay of discovery). Match, however, insisted that the parties proceed with discovery. ECF No. 19, Match Response to Pre-Motion Letter, at 3 (Match requesting that discovery proceed). In light of the parties' disagreement, the Court allowed discovery pending resolution of Beazley's Motion to Dismiss. ECF No. 20, Order.

The Court granted in part and denied in part Beazley's Motion to Dismiss. *See* ECF No. 48, Opinion and Order. Specifically, the Court dismissed Match's claims based on estoppel, the Policy's optional reporting period provision, and breach of the implied covenant of good faith and fair dealing. *Id.* at 15–16. The Court, however, denied Beazley's Motion to Dismiss Match's allegations based on the Policy's definition of "Claim" and the parties' course of dealing. *Id.* at 7–14. Shortly thereafter, the Court entered summary judgment based on its interpretation of "Claim." *See* ECF No. 55, Judgment.

Match now asks this Court to award nearly $600,000 in legal fees and costs for prevailing with respect to the Policy's definition of that one word – "Claim" – as a matter of law via a single opposition brief.

**A**RGUMENT

## I.     Match Is Not Entitled to Recover Attorneys' Fees Under New York Law

The New York Court of Appeals has twice addressed the precise issue raised by Match: whether an insured can recover attorneys' fees when it commences and prevails in coverage litigation with its insurer. In both decisions, the Court of Appeals unequivocally answered "no." *See Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 16 (1979); *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 324 (1995). In this diversity action governed by New York law, those two decisions are dispositive. *See Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015) ("When sitting in diversity jurisdiction and determining New York state law claims, we must apply 'the law of New York as interpreted by the New York Court of Appeals.'"). The multitude of decisions faithfully applying *Mighty Midgets* and *New York University* – together with Match's inability to identify even one decision awarding attorneys' fees in a garden-variety coverage dispute commenced by an insured – further confirm that Match's motion must be denied.

### A.     New York Court of Appeals Precedent Bars the Award of Attorneys' Fees Where, as Here, the Insured Commences the Coverage Action

New York follows the American Rule, under which "a prevailing party may not recover attorneys' fees from the losing party except where authorized by statute, agreement or court rule." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597 (2004). In *Mighty Midgets*, the New York Court of Appeals held that the American Rule applies with full force where, as here, an insured brings a breach of contract action against its insurer. As the Court of Appeals declared:

"we … hold that the insurer is not liable for attorneys' fees and disbursements necessarily incurred in the policyholder's successful prosecution of the action it brought to compel the insurer to comply with its policy obligations." *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 16 (1979); *see also id.* at 21 ("It is the rule in New York that such a recovery may not be had in an affirmative action brought by an assured to settle its rights.").

To be sure, *Mighty Midgets* carved out "a narrow exception" to that rule based on an insurer's duty to defend. *Emps. Mut. Cas. Co. v. Key Pharms.*, 75 F.3d 815, 824 (2d Cir. 1996). Specifically, *Mighty Midgets* acknowledged that an insurer's duty to defend may extend to "circumstances … when an insurer compels its assured ***to defend*** against its attempts to obtain a declaration of its right to disclaim," *i.e.*, where an insurer brings a declaratory judgment action against an insured. *Mighty Midgets*, 47 N.Y.2d at 22 (emphasis added).[6] But that narrow exception does not apply where an insured is the plaintiff because, in those circumstances, the insured is not defending an action. *Id.* at 21–22. In deciding to draw this bright-line rule, the Court of Appeals expressly weighed "fundamental" policy considerations for and against fee-shifting. *Id.*

In the four decades since issuing *Mighty Midgets*, the Court of Appeals has policed the bright-line rule that an insured can recover attorneys' fees against its insurer only where the insurer commences the litigation. In *New York University*, an insurer-defendant appealed the denial of a motion to dismiss an insured's demand for attorneys' fees. *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 324 (1995). The Court of Appeals reversed the lower court's denial of the insurer's motion to dismiss and re-affirmed the *Mighty Midgets* Rule in unqualified, unmistakable terms:

---

[6] New York courts also recognize an exception to the American Rule where an insurer exhibits "such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it." *Sukup v. State*, 19 N.Y.2d 519, 522 (1967). This exception does not apply here because, among other reasons, the Court dismissed Match's claims for breach of the implied covenant of good faith and fair dealing. ECF No. 48, Opinion and Order, at 7, 16.

> *It is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy.*

*Id.* (emphasis added)*. Moreover, in *City Club Hotel*, the Court of Appeals re-affirmed that an insured *can* recover attorneys' fees where the *insurer* – not the insured – brings a declaratory judgment action. *City Club Hotel*, 3 N.Y.3d at 598 (re-affirming the *Mighty Midgets* Rule that an insured can potentially recover attorneys' fees "in an action **brought by an insurance company** seeking a declaratory judgment" (emphasis added)).

 *Mighty Midgets* and *New York University* control here. It was Match – not Beazley – who commenced this litigation. The *Mighty Midgets* Rule brooks no exception for where an insurer declines coverage, or retains counsel, or files a pleading in response to an insured's complaint. Nor could it. If an insured could recover fees in these common circumstances, the *Mighty Midgets* Rule would be eviscerated. After all, there would be no case and controversy absent a disagreement about coverage, and a default judgment would be entered against an insurer-defendant for failing to comply with procedural rules requiring pre-motion letters and responsive pleadings. Put simply, Match's imagined exceptions (if they existed) would swallow the *Mighty Midgets* Rule whole.

 Nowhere in its brief does Match endeavor to distinguish *Mighty Midgets*, other than to baldly assert that the decision applies only in "specific factual circumstances." Match Br. at 11. Tellingly, Match does not identify what those "specific" circumstances are, let alone explain how the facts of the instant action might be distinguishable. More revealing still, Match does not mention the 1995 decision in *New York University* anywhere in its brief, despite that decision's plain-language recitation of the rule known by all insurance coverage practitioners in New York: "[A]n insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." *New York Univ.*, 87 N.Y.2d at 324.

Instead, Match argues that a passing remark in *Mighty Midgets* explaining the basis for shifting fees in actions commenced by the insurer – *i.e.*, that the insured "has been cast in a defensive posture," 47 N.Y.2d at 21 – somehow nullifies the bright-line rule set forth in *Mighty Midgets*, *New York University*, and their progeny. The multitude of decisions applying the *Mighty Midgets* Rule refutes Match's position.

For example, **all four Departments of the New York Appellate Division** have repeatedly affirmed – often in the course of reversal – that the "well established" *Mighty Midgets* Rule prohibits the award of attorneys' fees where, as here, the insured commences coverage litigation:

- **First Department:** *625 Ground Lessor LLC v. Cont'l Cas. Co.*, 17 N.Y.S.3d 26, 27 (1st Dep't 2015) (citing *Mighty Midgets* in rejecting policyholder's request for attorneys' fees); *Silva v. F.R. Real Est. Dev. Corp.*, 870 N.Y.S.2d 328, 330 (1st Dep't 2009) ("However, we modify the judgment to the extent indicated, since the law is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." (quotations omitted)); *First Jeffersonian Assocs. v. Ins. Co. of N. Am.*, 691 N.Y.S.2d 506, 507 (1st Dep't 1999) (reversing Supreme Court's award of attorneys' fees to insured prosecuting case based on *Mighty Midgets*).

- **Second Department:** *Hershfeld v. JM Woodworth Risk Retention Grp., Inc.*, 181 N.Y.S.3d 667, 669 (2d Dep't 2023) ("Correspondingly, such costs and fees ordinarily cannot be recovered where the insured commences a declaratory judgment action to settle his or her rights under the policy or where the insured affirmatively sues the insurer for breach of the insurance contract."); *Fin. Servs. Vehicle Tr. v. Saad*, 27

N.Y.S.3d 584, 588 (2d Dep't 2016) (reversing Supreme Court's award of attorneys' fees to insured based on *Mighty Midgets*).

- **Third Department:** *Kramarik v. Travelers*, 808 N.Y.S.2d 807, 809–10 (3d Dep't 2006) (affirming Supreme Court's denial of attorneys' fees to insured based on *Mighty Midgets*); *Nutmeg Ins. Co. v. Rosen*, 683 N.Y.S.2d 593, 594 (3d Dep't 1998) ("[T]here exists no basis to recover expenses incurred … as the insureds were affirmatively prosecuting a claim against the insurer for a determination of their rights under the policy of insurance.").

- **Fourth Department:** *Hardy v. Kulwicki*, 46 N.Y.S.3d 361, 363 (4th Dep't 2017) ("It is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." (quotations omitted)); *Zelasko Const., Inc. v. Merchants Mut. Ins. Co.*, 38 N.Y.S.3d 643, 644 (4th Dep't 2016) ("The court [below] erred in granting that part of the motion seeking attorneys' fees.").

Likewise, the Second Circuit and all four New York federal district courts have issued numerous decisions denying motions for attorneys' fees based on the *Mighty Midgets* Rule where, as here, the insured commences the action against its insurer.[7] *See, e.g.*, *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 177 (2d Cir. 2006) ("Finally, we affirm the district court's

---

[7] Numerous legal treatises also recognize that New York law does not permit an award of attorneys' fees where an insured commences an action against its insurer. *See, e.g.*, Ostrager & Newman, Handbook on Insurance Coverage Disputes § 5.06[b] (21st ed. 2022) (stating that, under New York law, "[t]here is no recovery for attorneys' fees in an affirmative action brought by an insured to determine its rights, even when the insured is successful in establishing coverage"); Bad Faith Actions Liability & Damages § 4:14 (2d ed., updated Oct. 2022) ("In New York it appears that the insured may recover fees incurred in defending a meritless declaratory relief action initiated by the insurer…. ***The insured may not recover fees incurred in an action that the insured has initiated***." (emphasis added)); 14A Couch on Ins. § 207:87 (3d ed., updated June 2023) ("where the insured prosecutes the declaratory judgment action, attorney's fees are not recoverable even where the insured prevails in the suit," and citing *Mighty Midgets*).

dismissal of New Globecon's request for attorneys' fees. Under New York law, 'an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy.'" (quoting *New York Univ.*, 87 N.Y.2d at 324)); *Perez v. Foremost Ins. Co.*, 2020 WL 3316095, at *5 (W.D.N.Y. June 18, 2020) ("Moreover, under New York law, an insured is not entitled to recover legal fees and expenses incurred in pursuing his right to coverage."); *Ruiz v. Liberty Mut. Fire Ins. Co.*, 2019 WL 7293377, at *3–4 (S.D.N.Y. Dec. 30, 2019) (same); *Sanderson v. First Liberty Ins. Corp.*, 2017 WL 5176371, at *6 (N.D.N.Y. Nov. 7, 2017) (same); *Roman Cath. Diocese of Rockville Ctr. v. Gen. Reinsurance Corp.*, 2016 WL 5793996, at *5 (S.D.N.Y. Sept. 23, 2016) ("Further, an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy…. This district has repeatedly dismissed such requests for relief at the motion to dismiss stage." (citation omitted; quotation omitted)) (collecting cases); *Stein v. N. Assur. Co. of Am.*, 2012 WL 1605365, at *12 (E.D.N.Y. May 7, 2012) (declining to award attorneys' fees based on *Mighty Midgets*); *see also ACMAT Corp. v. Greater New York Mut. Ins. Co.*, 282 Conn. 576, 587 (Conn. 2007) ("For example, the New York courts will award attorney's fees to a successful policyholder, but only if that party has been 'cast in a defensive posture' in a declaratory judgment action brought by its insurer to establish the duty to defend or indemnify; ***that insured may not recover fees if it is the plaintiff in the action against the insurance company***." (emphasis added)). And these decisions are just the tip of the iceberg.

In sum, controlling New York Court of Appeals precedent precludes an award of attorneys' fees where, as here, an insured commences and prevails in an action against its insurer. Match's motion therefore should be denied.

## B. Match Fails to Identify Any New York Precedent Supporting an Award of Attorneys' Fees Under the Facts of This Dispute

Despite the express holdings of the New York Court of Appeals, and the legions of decisions applying those holdings faithfully in both the state and federal courts in New York over the last forty-four years, Match argues that the facts here are so unique that none of those precedents apply. Match is wrong.

As an initial matter, Match fails to identify anything unusual about this litigation's procedural posture or the parties' actions before or during litigation. Beazley declined coverage; Beazley reaffirmed the declination after Match threatened litigation; Beazley retained counsel and defended itself against Match's complaint. These are routine events that precede nearly all coverage litigations commenced by policyholders.[8] Nor is there anything unusual about cooperation between counsel on the eve of litigation, as when Beazley's counsel responded to Match's inquiry about which entity might best serve as the named defendant in Match's forthcoming lawsuit. *See* Match Br. at 5 (misrepresenting Beazley's extension of professional courtesy as "encourag[ing] Match to sue").

Match does not cite (and Beazley is not aware of) any New York decision awarding attorneys' fees in circumstances that even remotely resemble those here. Instead, Match resorts to misleading descriptions of the handful of decisions where courts grappled with how to apply *Mighty Midgets* in unusual procedural postures – such as where an insurer commenced the first action, but lost the race to serve the complaint. Even a cursory review of these decisions reveals that they are irrelevant and inapposite.

---

[8] As for Beazley's retention of Wiley at the beginning of the claims-handling process: Match neglects to mention that, due to the complexity of the IAC account, Beazley had retained Wiley to assist with nearly *all* matters tendered to the account as a matter of routine. *See* Zelig Decl.

- ***American Motorists.*** *American Motorists Ins. Co. v. GTE Corp.* involved a straight-forward application of the *Mighty Midgets* Rule. 2000 WL 1459813 (S.D.N.Y. Sept. 29, 2000). In that case, the *insurer* filed the declaratory judgment action and so was the *plaintiff. Id.* at \*2. In "direct response," the insured filed a second lawsuit, bringing claims that were "mirror images" of the insurer's declaratory judgment action. *Id.* at \*6. The court consolidated the insured's second-filed lawsuit into the insurer's first-filed declaratory judgment action. *Id.* at \*1 & n.2. The court then held (unremarkably) that *Mighty Midgets* permitted fee-shifting because the insurer-plaintiff commenced the action.[9] *American Motorists* has no application here because Beazley did not commence litigation against Match.

- ***Louisiana Generating.*** In *Louisiana Generating* – like *American Motorists* – the insurer first commenced a declaratory judgment action against the insured. *Louisiana Generating LLC v. Illinois Union Ins. Co.*, 2014 WL 1270049, at \*2 (M.D. La. Mar. 27, 2014) (applying New York law). But before the insurer served the complaint, the insured filed and served a second, competing action "in direct response." *Id.* The court held that *Mighty Midgets* permitted fee shifting because the insurer was the first to initiate litigation. *Id. Louisiana Generating* has no application here because Beazley did not commence any litigation against Match.

- ***Hervochon.*** In *Hervochon*, the court found that *Mighty Midgets* did not permit fee shifting with respect to an additional insured, Iona College, because, before the insurer commenced litigation, the additional insured took a "legal step" that was "tantamount

---

[9] Match is flatly wrong (at 8 n.4) when it states that it was "insured who initiated litigation." It was the insurer – not the insured – who was the plaintiff.

to an action" brought by a party seeking to determine the insurance policy's obligations. *Hervochon v. Iona Coll.*, 2019 WL 1375359, at *4 (S.D.N.Y. Mar. 27, 2019) (quotations omitted). That "legal step" was "fil[ing] a letter with this Court seeking permission to file a third-party complaint" against the insurer. *Id.* The court found that the "letter was not merely a manifestation of [the additional insured's] intent to sue but was the first step in initiating a suit by meeting a procedural prerequisite under the operative Case Management Plan." *Id.* The court did, however, permit fee shifting with respect to policyholder Hennessey Construction Co, Inc.'s claims against its insurer, because the insurer had filed a "mirror image" New Jersey state court action[10] naming Hennessey as a defendant *before* Hennessey filed a letter with the federal court seeking permission to file a fourth-party complaint against the insurer.[11] *Id.* at *5. *Hervochon* has no application here because Beazley did not take any such "legal steps" in court against Match before Match brought this action.

- **Zurich-American.** In *Zurich-American*, the insured commenced litigation against its insurer, and the court granted summary judgment in favor of the insured. *City of New York v. Zurich-Am. Ins. Grp.*, 811 N.Y.S.2d 773, 774 (2d Dep't 2006). Thereafter, the insurer tried to begin the litigation anew, by "mov[ing] for leave to amend its answer and for summary judgment." *Id..*[12] The court held that, in those unusual circumstances, the insured could recover fees – but only for the expenses incurred in defending against

---

[10] The insurer's New Jersey action was dismissed without prejudice *before* Hennessey filed its letter in the federal court action seeking permission to file a fourth-party complaint against the insurer. *Hervochon v. Iona Coll.*, 2019 WL 2451431, at *2 (S.D.N.Y. Feb. 15, 2019).

[11] Match omits this critical fact – that the insured first initiated litigation against its policyholder – from its parenthetical. *See* Match Br. at 8 n.4.

[12] Match also omits this critical fact. *See* Match Br. at 8 n.4.

the post-summary-judgment motions. *Id.* at 775; *see also Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 958 F. Supp. 2d 399, 407 (E.D.N.Y. 2013) ("Thus, the [*Zurich-American*] court granted attorneys' fees to the insured only for expenses incurred in defending against the motions that the insurer filed after the insured had been awarded summary judgment."). *Zurich-American* has no application here because Beazley did not move to reopen pleadings after the Court entered summary judgment.[13]

That brings us to the Southern District's decision in *Houston Casualty*, upon which Match most heavily relies. *See* Match Br. at 1–2, 8, 12–15 & 22. *Houston Casualty* represents the most unusual, and inapposite, circumstances of them all. In that case, the insurer-plaintiff (Houston Casualty) sought contribution from another insurer (New York Marine) on the basis that Houston Casualty's insured (New York University Hospitals Center) was an additional insured under a policy issued by New York Marine. *Houston Cas. Co. v. Prosight Specialty Ins., Co.*, 462 F. Supp. 3d 443, 444, 448 (S.D.N.Y. 2020).[14] Critically, however, two years earlier and in a separate litigation, New York Marine (through its insured, Nouveau) had filed counter-claims seeking to resolve the same coverage issues. *Id.* at 445; *see also id.* at 452 (explaining New York Marine "resisted … [the] duty to defend …. in Nouveau's counterclaim seeking a judgment against NYUHC and an accompanying declaration that it lacked such a duty," among other ways). This

---

[13] Match further cites (at 13 n.11) two decisions concerning the re-alignment of parties: *Fed. Ins. Co. v. Safeskin Corp.*, 1998 WL 832706, at *1 (S.D.N.Y. Nov. 25, 1998), and *Danaher Corp. v. Travelers Indem. Co.*, 2013 WL 364734, at *6 (S.D.N.Y. Jan. 31, 2013). *Safeskin* concerned the proper alignment of parties for the purposes of subject matter jurisdiction, and is therefore irrelevant to this action. *Danaher* concerned the application of the *Mighty Midgets* Rule where an insurer-defendant became a third-party-plaintiff via impleader. Notably, in the same sentence Match excerpted, *Danaher* went on to reject Match's theory: "Travelers has not cited any case that suggests it is necessary to engage in counterfactual gymnastics in order to decide entitlement to attorneys' fees under the *Mighty Midgets* rule." 2013 WL 364734, at *6.

[14] The complaint mistakenly named Prosight Specialty Insurance Company, instead of New York Marine, as the defendant. *Houston Cas. Co. v. Prosight Specialty Ins. Co.*, 462 F. Supp. 3d 443, 444 n.1 (S.D.N.Y. 2020).

was despite lacking any reasonable basis for denying coverage, since the policy "made this duty plain." *Id.* at 452. In light of these "unusual circumstances," including New York Marine's efforts to initiate a proxy coverage battle through its insured, the *Houston Casualty* court awarded the insurer-plaintiff its attorneys' fees. *Id.*

The facts of *Houston Casualty* bear no resemblance to the instant action. Match and Beazley have litigated a standard coverage dispute brought by an insured against its insurer – not a contribution claim between two insurers that insured two different policyholders. And, unlike New York Marine, Beazley did not use its insured as a pawn in proxy coverage litigation. Rather, Beazley declined Match's requests for coverage and responded to Match's complaint with a motion to dismiss.

Moreover, Match does not claim that the coverage issues here were "plain," as in *Houston Casualty*. To the contrary, Match represents that it needed to pay exorbitant rates to retain Haynes Boone because this litigation presented such "novel and difficult questions" that only "an AmLaw 100 firm with a robust Band One *Chamber's*-ranked insurance practice" could handle it. Match Br. at 16–18. In any event, the Court's Opinion and Order confirms that this dispute was not "plain." The Court dismissed in whole Match's claims for breach of the implied covenant of good faith and fair dealing and equitable estoppel. ECF No. 48, Opinion and Order, at 16. Thus, unlike insurer-plaintiff Houston Casualty, Match has no claim sounding in bad faith.

Faced with the task of fitting the instant "square peg" dispute into the "round hole" bored by *Houston Casualty*, Match tries to re-shape *Houston Casualty* into a decision that stands for something more: *i.e.*, that an insured can recover attorneys' fees whenever an insurer issues an initial declination, reaffirms that declination, and defends itself in coverage litigation commenced by a policyholder. That reading not only ignores the unique fact pattern and procedural posture

presented in *Houston Casualty*; it flouts *Mighty Midgets* and forty-four years of precedent applying the *Mighty Midgets* Rule, including the New York Court of Appeals' subsequent decision in *New York University. See New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 324 (1995) ("It is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy."). Thus, Match's efforts to turn *Houston Casualty* into a new authority that broadens New York's fee-shifting law, even if they were credible, must be rejected. *See Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 101 (2d Cir. 2021) ("In [diversity] cases, 'the highest court of a state has the final word on the meaning of state law,' and thus 'we are bound to apply New York law as determined by the New York Court of Appeals' even when a decision of the New York Court of Appeals conflicts with our precedent." (quoting *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003)).

Grasping at straws, Match devotes (at 9) a full page to *New York Marine*, a case that arose under the federal court's *admiralty* jurisdiction. This fact is critical because, as the Second Circuit explains, "[a]ttorneys' fees awards in admiralty suits are discretionary." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 127 (2d Cir. 2010). In deciding whether to award attorneys' fees, the district court commented that there is "some authority for the proposition" that an insured that commenced litigation can, in certain circumstances, recover its fees. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 598 F. Supp. 2d 473, 497 (S.D.N.Y. 2009), *aff'd in part, vacated in part, remanded,* 599 F.3d 102 (2d Cir. 2010). But the district court does not provide any citations, so we do not know if the court is referring to New York authority, federal common law, or something else entirely. Much less do we know whether that "authority" (if it applied to this non-admiralty dispute) would support an award of fees under the facts of this case. That Match hangs so much of its argument on this cryptic passage from a federal district court –

as opposed to, for example, the plain authoritative statements from New York's highest court – only highlights the absence of actual authority for its position.

Later in its brief, Match quotes (at 10 & 12) part of a sentence from a Second Department[15] decision, *Republic Franklin Ins. Co. v. Pistilli*, 791 N.Y.S.2d 639 (2d Dep't 2005). Match implies that *Republic Franklin* requires an insurer to file a declaratory judgment action whenever it declines coverage and a policyholder disputes the declination.[16] The Second Department said no such thing. As the full quote makes clear, *Republic Franklin* was criticizing an insurer for seeking a declaratory judgment without first issuing a timely disclaimer. *Id.* at 641 ("When in doubt, an insurer should issue a prompt disclaimer and then seek a declaratory judgment concerning its duty to defend or indemnify, ***rather than seeking such a judgment in lieu of issuing a disclaimer***, as the plaintiff has done here." (emphasis added)); *see also Discover Prop. & Cas. Ins. Co. v. Pathmark Stores, Inc.*, 2010 WL 4365561, at *6 n.3 (E.D.N.Y. Oct. 27, 2010) (finding that the passing remark in *Republic Franklin* had no legal significance). The Second Department was not announcing a new substantive rule requiring insurers to commence litigation against their insureds every time an insured questioned a declination. Such a rule would directly contradict the *Mighty Midgets* fee regime, by which insurers are discouraged from filing lawsuits against their insureds.

Finally, Match dedicates over a quarter of its argument to extended quotations from the controversial Restatement of the Law of Liability Insurance,[17] a couple of decisions cherry-picked

---

[15] Match incorrectly claims (at 10) that *Republic Franklin* was a First Department decision.

[16] Match implies that this is a broadly accepted legal principle by representing that *Republic Franklin* has "progeny." Match Br. at 12 ("in accord with *Republic Franklin* and its progeny…"). Yet Match identifies only one other opinion that makes this statement: *Halloway v. State Farm Ins. Companies*, 805 N.Y.S.2d 107 (2d Dep't 2005). And Match neglects to mention that it is citing to the *Halloway* dissent.

[17] For example, Yale Law School professor George L. Priest has criticized the Restatement as "a strikingly pro-policyholder statement, not generally reflective of the law in various U.S. jurisdictions." George L. Priest, *A Principled Approach Toward Insurance Law: The Economics of Insurance and the Current Restatement Project*, 24 Geo. Mason L. Rev. 635, 636 (2017) (footnotes omitted).

from foreign jurisdictions,[18] and one professor's treatise.[19] Needless to say, law professors and foreign courts cannot abrogate New York Court of Appeals precedent, which undisputedly controls here. Nor can hypotheticals overturn the express policy preferences set by the Court of Appeals. *See Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21–22 (1979) (weighing the costs and benefits of fee-shifting when adopting the *Mighty Midgets* Rule).

## II.      In the Event the Court Decides to Award Match Attorneys' Fees, Match's Requested Award Should Be Reduced Significantly

As set forth above, Match is legally barred from recovering its attorneys' fees under well-established New York law. However, if the Court chooses to award attorneys' fees, Match's proposed recovery should be reduced significantly. Match seeks nearly $600,000 in attorney's fees, but it prevailed only on the strength of a single argument advanced in a single brief in opposition to Beazley's Motion to Dismiss. Most of the fees Match seeks to recover relate to needless discovery (which Beazley opposed) and failed coverage arguments (which the Court rejected). Match's invoices also reveal excessive rates, over-staffing, and other deficiencies. The Court should therefore exercise its discretion and significantly reduce Match's requested recovery of attorneys' fees.

---

[18] Though case law from other states is irrelevant to this dispute, Beazley notes that many states have adopted fee-shifting rules that are even *less* policyholder-friendly than New York – either allowing fee-shifting only in the case of bad faith or barring fee-shifting altogether. *See generally ACMAT Corp. v. Greater New York Mut. Ins. Co.*, 282 Conn. 576, 583–92 (Conn. 2007) (comprehensive survey of case law from sister courts); *see also id.* at 592 (adopting narrower exception to American Rule than *Mighty Midgets*, under which "a trial court may award attorney's fees to a policyholder that has prevailed in a declaratory judgment action against its insurance company only if the policyholder can prove that the insurer has engaged in bad faith conduct prior to or in the course of the litigation").

[19] In any case, the rule articulated by Prof. Appleman and advocated for by Match is the minority position. *See* 14A Couch on Ins. § 207:87 (3d ed., updated June 2023) ("According to most authorities, where the insured prosecutes the declaratory judgment action, attorney's fees are not recoverable even where the insured prevails in the suit.").

## A. The Court Should Not Award Fees for Work Related to Match's Initial Complaint

"A court has discretion to impose an across-the-board reduction if an attorney has billed excessive, redundant, or unnecessary hours." *Makinen v. City of New York*, 2016 WL 1451543, at *5 (S.D.N.Y. Apr. 12, 2016). "[W]ork on an unsuccessful claim that is based on different facts and legal theories than a successful one may not be included in the fee award." *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989). "Where 'a plaintiff has achieved only partial or limited success,' full compensation for attorney's fees would not be reasonable. … The district court may either 'attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'" *Id.* at 414 (citation omitted) (affirming district court's exercise of discretion to reduce fee award by twenty percent to reflect plaintiff's "limited success" on most claims); *Those Certain Underwriters at Lloyd's, London v. DVO, Inc.*, 473 F. Supp. 3d 236, 268 (W.D.N.Y. 2020) (stating that when an insured's claims are not entirely successful, "attorneys' fees must be apportioned to reflect [the insured's] partial success").

The Court should exercise its discretion and reduce Match's requested attorneys' fees for time spent developing and litigating unavailing legal theories. Here, the Court's task of reducing Match's requested fee award is simplified by the fact that Match first shifted legal theories in its July 7, 2022 response to Beazley's pre-motion letter, and all fees incurred prior to that date can be deducted.

In its initial complaint, Match alleged that it timely reported the Mellesmoen lawsuit by operation of New York General Construction Law Section 25. ECF No. 1, Compl., ¶ 50. Match further alleged that the Policy provided coverage for the Mellesmoen lawsuit under theories of waiver and equitable estoppel. *Id.* ¶ 54. In its pre-motion letter, Beazley identified the flaws with

these theories in a preview of arguments it would make in a forthcoming motion to dismiss. *See* ECF No. 15, Beazley Pre-Motion Letter. Having seen the shortcomings of its existing legal theories laid plain, Match introduced an entirely new legal theory in its July 7, 2022 response letter (ECF No. 19, Match Response to Pre-Motion Letter, at 3), which it further developed in an Amended Complaint filed on July 25, 2022. *See* ECF No. 26, Am. Compl. Specifically, in the Amended Complaint, Match alleged that the February 16, 2016 Mellesmoen letter was not a "Claim" under the Policy and, thus, Match timely reported the Mellesmoen lawsuit (filed in the last sixty days of the policy period) after the end of the policy period. *Id.* ¶ 71. Match not only failed to make this argument in its initial complaint, but had even deleted and replaced with ellipses the Policy's particular notice language central to the new theory:

> **E.**     **The Policy's Notice Requirements**
>
> 34.     The Policy provides, in pertinent part, that "Claims made against any Insured [must] be reported no later than (i) the end of the Policy Period [. . . or . . .] (iii) the end of the Optional Extension Period (if applicable) . . . ." *See id.* at IX.

ECF No. 1, Compl., ¶ 34. Match principally prevailed on this new theory it first introduced on July 7, 2022. ECF No. 48, Opinion and Order, at 9.

Haynes Boone commenced work for Match in June 2021 (*see* ECF No. 60-2, Martin Decl., at 2), a year before first asserting the legal theory on which it prevailed. During that time, Haynes Boone invoiced over $150,000 in legal services without devising a winning argument. *See* ECF No. 60-2, Martin Decl., at 2–37; ECF No. 60-3, Martin Decl., at 1–5. The Court should exercise its discretion to deny Match these fees, which were incurred developing and litigating an

unsuccessful case.[20] *See DVO, Inc.*, 473 F. Supp. 3d at 268 (granting motion for attorneys' fees incurred briefing successful duty to defend argument, and denying motion for fees incurred briefing unsuccessful duty to indemnify argument).

**B.  Match Should Not Recover Attorneys' Fees For Unnecessary Discovery**

Beginning with its pre-motion letter, Beazley argued (over Match's objection) that discovery in this case was unnecessary because the parties' dispute principally involved questions of law that could be resolved on the pleadings. *See, e.g.*, ECF No. 15, Beazley Pre-Motion letter, at 3 (requesting stay of discovery); ECF No. 19, Match Response to Pre-Motion Letter, at 3 (opposing stay of discovery) ECF No. 28, Joint Letter, at 2 (Match requesting that discovery proceed). Beazley was correct: the Court entered judgment upon deciding Beazley's Motion to Dismiss. *See* ECF No. 55 (entering judgment in Match's favor after denying Beazley's Motion to Dismiss Match's breach of contract claim). Having insisted on proceeding with needless discovery, Match should not now recover those fees from Beazley.

After filing its Opposition to Beazley's Motion to Dismiss, Match incurred almost $200,000 in legal fees – the vast majority of which were related to discovery. *See* ECF No. 60-3, Martin Decl., at 24–26; ECF No. 60-4, Martin Decl.; ECF No. 60-5, Martin Decl. Match should not be permitted to recover attorneys' fees and costs for discovery when Match opposed a stay of discovery. Accordingly, all invoices after September 28, 2022, when Match filed its Opposition, should be reduced by ***eighty percent***.[21]

---

[20] For the same reason, Match is not entitled to recover any fees litigating its (i) breach of the implied covenant of good faith and fair dealing and (ii) equitable estoppel claims, which the Court dismissed. ECF No. 48, Opinion and Order, at 16. A reduction of those fees is reflected in the thirty percent reduction requested below.

[21] Eighty percent reflects a conservative estimate of the proportion of time Match spent on discovery after filing its Opposition to Beazley's Motion to Dismiss. The frequent block-billing and redactions in Match's time entries make it impossible for Beazley to provide a precise estimate.

**C.    Match's Remaining Attorneys' Fees Should Be Reduced for Deficient Time
     Entries and Excessive Legal Rates and Hours**

Match's invoices also contain numerous deficiencies, and reveal excessive attorney rates

and billing practices. The Court therefore should reduce recovery for the invoices by ***thirty***

***percent***.

*1.  Match's Invoices Contain Numerous Deficient Time Entries*

Match's attorneys' fees should be reduced for myriad time entry deficiencies. District

courts are empowered to "deduct a reasonable percentage of the number of hours claimed 'as a

practical means of trimming fat from a fee application.'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149,

173 (2d Cir. 1998) (affirming twenty percent reduction for "vagueness, inconsistencies, and other

deficiencies in the billing records"); *see also*, *e.g.*, *U.S. Football League v. Nat'l Football League*,

887 F.2d 408, 415 (2d Cir. 1989) (affirming thirty-percent reduction); *Mason Tenders Dist.

Council Welfare Fund v. Gibraltar Contracting, Inc.*, 2020 WL 6363960, at *2 (S.D.N.Y. Oct. 29,

2020) (collecting cases); *Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*, 2011 WL

8955840, at *7 (S.D.N.Y. Apr. 7, 2011) (same).

Here, the invoices contain numerous deficiencies, including block-billing, vague entries,

excessive redactions, entries for unrelated matters, and excessive staffing:

- **Block-billing:** s*ee, e.g.*, ECF No. 60-3, Martin Decl., at 14–18, 20–21 (block-billed time entries for Attorney Martin), 18–22 (same for Attorney Van Houten), 21–22 (same for Attorney Lineberger), 18–21 (same by Attorney Schwarz);

- **Vagueness:** *see*, *e.g.*, ECF No. 60-3, Martin Decl., at 14–16 (nine time entries for "Drafting and revising initial disclosures"), 20 ("Drafting email response to client re discovery");

- **Time billed for unrelated matters:** *see, e.g.*, ECF No. 60-3, Martin Decl., at 10 ("Communication with Ms. Schwarz regarding drafting of complaint against Marsh"; "Discussing strategy and next steps for Match v. Marsh and Beazley"; "correspondence regarding possible tolling agreement with Marsh and initiating litigation"), 25 ("DISCO training"; "Attend, participate in, and debrief DISCO document review training");

- **Excessive redactions:** *see, e.g.*, ECF No. 60-3, Martin Decl., at 14–22; *cf. Sidley Holding Corp. v. Ruderman*, 2009 WL 6047187, at *24 (S.D.N.Y. Dec. 30, 2009); and

- **Excessive staffing:** *see, e.g.*, ECF No. 60-3, Martin Decl., at 23 (billing time for four attorneys and one paralegal); ECF No. 60-5, Martin Decl., at 2 (billing for four attorneys, two consultants, and one paralegal).

These deficiencies warrant a significant reduction to Match's invoices.

### 2. Match's Invoices Contain Excessive Hourly Rates and Hours Billed

Match's invoices should also be reduced because of the excessive rates and hours. When assessing a request for attorneys' fees, courts look at the "nature of the legal matter and context of the fee award in considering the reasonable rate and reasonable time spent on the matter." *Greenburger v. Roundtree*, 2020 WL 6561598, at *11 (S.D.N.Y. Jan. 16, 2020) (providing standard to determine reasonable hourly rates and hours billed); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 187 n.3 (2d Cir. 2008) (listing factors considered when assessing the reasonableness of fees). "If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*, 2011 WL 8955840, at *5 (S.D.N.Y. Apr. 7, 2011).

Here, at a minimum, Haynes Boone billed work by Attorney Martin at $995 per hour and both Attorneys Van Houten and Schwarz at $650 per hour. These rates far exceed those commensurate with a dispute about the definition of "Claim" in the Beazley Policy. *See, e.g., KCG Holdings, Inc. v. Khandekar*, 2020 WL 7053229, at *5 (S.D.N.Y. Dec. 2, 2020) ("[A] number of cases have commonly found partner rates in the range of $350 to $650 per hour to be reasonable in breach of contract suits."); *Flatiron Acquisition Vehicle, LLC v. CSE Mortgage LLC*, 2020 WL

-23-

6875172, at *31 (S.D.N.Y. Nov. 22, 2020) (finding reasonable rates of "$320–$495 for partner time, $265–$340 for associate time, and $245 for paralegal time"); *Greenburger v. Roundtree*, 2020 WL 4746460, at *6 (S.D.N.Y. Aug. 16, 2020) (reducing from $700 to $600 hourly rate for a partner with more than 40 years' experience); *126 Mulberry St. Realty Corp. v. Diamond State Ins. Co.*, 2010 WL 11710636, at *4 (S.D.N.Y. Nov. 1, 2010) (reducing partner and associate rates).

Moreover, for instance, during just the three-month period between when Match introduced its prevailing argument and filed its opposition brief, Haynes Boone billed over 300 hours. *See* ECF No. 60-3, Martin Decl., at 7–11 (82.7 hours), 14–16 (65.6 hours), 18–23 (157.9 hours). And these invoices contain multiple examples of excessive time spent on straight-forward tasks. *See*, *e.g.*, ECF No. 60-3, Martin Decl., at 14–16 (23 hours billed for "Drafting and revising initial disclosures"); 14 (1.10 hours for "Reviewing judges edits to case management plan and drafting summary of changes"); 16 (3.20 hours for "Discussing initial disclosures and related next steps"); 14–16 & 18–21 (several internal conferences); *see also* ECF No. 60-3, Martin Decl., at 23 (billing time for four attorneys and one paralegal).[22] The excessive hours billed warrant a substantial reduction of Match's invoices. *See Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 509 (S.D.N.Y. 2012) (reducing invoices for some excessive or unnecessary hours billed); *NYSA-ILA Med. & Clinical Servs. Fund v. Salco Trucking Corp.*, 1995 WL 404863, at *4 (S.D.N.Y. July 6, 1995) (same for "excessive, but not outrageous, amounts of time in performing certain work"); *Jarosz v. Am. Axle & Mfg., Inc.*, 2019 WL 6723741, at *9 (W.D.N.Y. Dec. 11, 2019).

The aforementioned deficiencies and excessive rates and hours billed warrant an across-the-board reduction to Match's invoices by a reasonable rate of ***thirty percent***.

---

[22] There are very likely other instances of excessive billing for discrete tasks that Beazley cannot identify because of the block-billing and redactions throughout Match's invoices.

<u>**CONCLUSION**</u>

The New York Court of Appeals' decisions in *Mighty Midgets* and *New York University* bar Match from recovering attorneys' fees in this action. Beazley respectfully requests that the Court deny Match's motion.

Respectfully submitted,

By: <u>/s/ *Jonathan S. Zelig*</u>
Jonathan S. Zelig
**DAY PITNEY LLP**
One Federal Street
Boston, MA 02110
jzelig@daypitney.com
Tel. (617) 345-4601
Fax (617) 892-4236

Joseph T. Nawrocki
**DAY PITNEY LLP**
242 Trumbull Street
Hartford, CT 06103
jnawrocki@daypitney.com
Tel. (860) 275-0356
Fax (860) 748-4929

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that, on July 19, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                */s/ Jonathan S. Zelig*
                                Jonathan S. Zelig