**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATCH GROUP, LLC, | |
| Plaintiff, | Case No.: 1:22-cv-4629-LGS-SLC |
| v. | |
| BEAZLEY UNDERWRITING LIMITED, | |
| Defendant. | |

**DEFENDANT BEAZLEY UNDERWRITING, LTD.'S RESPONSE TO**
**PLAINTIFF MATCH GROUP, LLC'S LIMITED OBJECTION TO**
**THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff Match Group, LLC ("Match") has filed an objection (ECF No. 79 ("Objection")) to the Magistrate Judge's Report and Recommendation denying Match's motion for attorneys' fees in this diversity action (ECF No. 76 ("R&R")). Under FRCP 72, this Court may "modify or set aside any part of the [R&R] that is clearly erroneous or is contrary to law.'" *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 333 F.R.D. 60, 64 (S.D.N.Y. 2019). "[A] finding is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.*

For the reasons set forth below, the R&R is not "clearly erroneous" or "contrary to law." It correctly applies New York law in denying Match's motion for attorneys' fees. Accordingly, this Court should adopt the R&R denying Match's motion.

<u>BACKGROUND</u>

In 2015, Beazley issued a renewal MediaTech policy of insurance ("Policy") to Match's predecessor, InterActiveCorp ("IAC"). ECF No. 26, Am. Compl., ¶ 10. In August 2016, Match tendered the Mellesmoen Claim to Beazley. Beazley engaged counsel to assist with coverage

issues,[1] investigated the claim, concluded it was not covered, and denied coverage. *See* ECF No. 58, Match Br. ISO Fee Motion, at 9. After the parties engaged in good faith discussions about the denial, Beazley maintained its position and reaffirmed its denial. *See id.* at 9–10.

In 2021, Match retained counsel, Haynes Boone, which developed new arguments for coverage. *See* ECF No. 59-6, Haynes Boone Letter to Wiley (9/17/2021). Beazley considered Match's new arguments, was unpersuaded, and (through Wiley) reaffirmed its declination. *See* ECF No. 59-7, Wiley Letter to Haynes Boone (11/4/2021). In response, Match threatened litigation and sent Beazley a draft complaint. ECF No. 59-8, Haynes Boone Letter to Wiley (4/29/2022). Beazley retained Day Pitney LLP as litigation counsel. *See* ECF No. 58 at 10. Unable to dissuade Match from pursuing litigation, counsel for Beazley worked cooperatively with counsel for Match to proceed "in an efficient manner." ECF No. 59-9, J. Zelig E-mail to G. Van Houten (6/2/2022).[2]

On June 3, 2022, Match commenced this litigation against Beazley, pleading breach of contract, waiver, and equitable estoppel claims. ECF No. 1, Compl.[3] After Beazley filed a pre-motion letter in anticipation of filing a motion to dismiss (ECF No. 15), Match amended the Complaint, abandoning its waiver claim and alleging a new argument based on the Policy's

---

[1] Beazley retained Wiley Rein LLP ("Wiley") to serve as coverage counsel for nearly all matters noticed by Match to the Policy and predecessor policies. *See, e.g.*, ECF No. 68, Declaration of Jonathan S. Zelig, at Exhibits 1–4. In other words, Beazley's retention of Wiley was a matter of routine. Match conveniently omits this fact in its Objection.

[2] The June 2, 2022 email was a courtesy to advise Match of a Beazley entity amenable to federal jurisdiction so that Match could proceed, as it desired, in the Southern District rather than state court. ECF No. 59-9; R&R at 2. Match's continued insistence that Beazley "encouraged" or "instruct[ed]" Match to file a lawsuit based on that email is, at best, a careless misrepresentation of the record. *See* Objection at 6–7. It is troubling that Beazley's extension of professional courtesy to avoid jurisdictional issues would be mischaracterized by Match's counsel in support of a post-judgment motion.

[3] Notably, the Complaint did not contain the legal theory on which the Court would eventually grant summary judgment in Match's favor, *i.e.*, claims made during the last sixty days of the policy period may be reported sixty days after the policy period expires. *See* ECF No. 48, Opinion and Order, at 2. The initial Complaint omitted the policy language relevant to that theory with an ellipsis. ECF No. 1 ¶ 34.

-3-

"Claim" definition. *See* ECF No. 26 ¶¶ 100–20. Ultimately, the Court granted in part and denied in part Beazley's motion. The Court dismissed Match's claims based on estoppel, the Policy's optional reporting period provision, and breach of the implied covenant of good faith and fair dealing. ECF No. 48 at 15–16. But the Court agreed with Match's argument concerning the Policy's "Claim" definition – an argument Match first introduced in response to Beazley's pre-motion letter – and maintained allegations concerning the parties' course of dealing. *Id.* at 7–14. The Court entered summary judgment based on its ruling on the motion to dismiss (*see* ECF No. 55), and Beazley appealed. ECF No. 69, Notice of Appeal.

Match then filed its Motion for Attorneys' Fees. ECF No. 57. The Court referred this "specific non-dispositive motion" to the Magistrate Judge. ECF No. 64. In the R&R, the Magistrate recommended that the Court deny Match's motion or, alternatively, reduce Match's requested award. R&R at 1–2. Match objects solely to that portion of the R&R denying Match's Fee Motion.

<u>**ARGUMENT**</u>

**I.      Match Is Not Entitled to Recover Attorneys' Fees Under New York Law.**

When sitting in diversity, this Court "must apply 'the law of New York as interpreted by the New York Court of Appeals." *See Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015). The New York Court of Appeals has stated the law relevant to this motion in concise, unmistakable language:

> *It is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy.*

*New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 324 (1995) (emphasis added); *see also Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 16 (1979) ("[T]he insurer is not liable for attorneys' fees and disbursements necessarily incurred in the policyholder's successful prosecution

of the action it brought to compel the insurer to comply with its policy obligations."). This is the only law relevant to the outcome of Match's motion, and it requires that the motion be denied.

Remarkably, the Objection fails to address or even cite to the governing Court of Appeals decisions in *New York University* and *Mighty Midgets*. Instead, the Objection proceeds as if the well-known rule elaborated in those decisions is actually the "R&R's proposed rule for fee-shifting"; complains that the rule "makes no sense" and "cannot be right"; and demands that this Court instead adopt a "better rule." Objection at 2–3. The final 2.5 pages of the Objection are devoted to policy-based arguments that the fee-shifting rule "disincentivizes insurers from exercising their duty to defend and improperly shifts the burden of obtaining a judgment from insurers to insureds." Objection at 8–10. Irrespective of their merits, these arguments are beside the point – and they are particularly misplaced in front of this federal court. Match may prefer a different rule (a "better rule," by its telling) but neither Match nor a federal court sitting in diversity can change the rule adopted by the Court of Appeals in *Mighty Midgets* and clearly restated in *New York University*. *See Deutsche Bank*, 810 F.3d at 865. Match, "which could have sued in a [state] court and argued for modification of that state's substantive law – opted instead to avail itself of a federal forum" and therefore "is not in a position to ask … to blaze a new trail that the [state] courts have not invited." *President & Fellows of Harvard Coll. v. Zurich Am. Ins. Co.*, 77 F.4th 33, 39 (1st Cir. 2023); *see also City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1153 (2d Cir. 1989) ("Our role as a federal court sitting in diversity is ... not to adopt innovative theories that may distort established state law." (citation omitted)).

To be clear, the New York state courts "have not invited" deviation from the rule spelled out in *Mighty Midgets* and restated by *New York University*. All four divisions of the New York Appellate Division have faithfully applied the *Mighty Midgets* rule to actions commenced and won

-4-

by policyholders seeking coverage under a policy of insurance. *See, e.g.*, ECF No. 67, Beazley

Opp. Br., at 14–15 (collecting decisions). Likewise, the Second Circuit and all four New York

federal district courts have issued numerous decisions denying motions for attorneys' fees based

on the *Mighty Midgets* rule where, as here, the insured commences the action against its insurer.

*See e.g.*, *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 177 (2d Cir. 2006) ("Under

New York law, 'an insured may not recover the expenses incurred in bringing an affirmative action

against an insurer to settle its rights under the policy.'" (quoting *New York Univ.*, 87 N.Y.2d at

324)); ECF No. 67 at 15–16 (collecting decisions).[4]

      New York law establishes a bright-line rule: where an insured brings an affirmative action

against its insurer to settle a dispute concerning coverage under an insurance policy, the insured

may not recover its attorneys' fees. That rule applies to this case, too.

    **II.**    **This Case Does Not Fall Into New York's Narrow Exception to the American Rule for Actions Brought by an <u>Insurer</u>.**

        **a.**  **The *Mighty Midgets* Exception to the American Rule Applies Only to Actions Commenced by an Insurer.**

      The Objection argues that this case falls into a narrow exception to the American Rule

recognized by *Mighty Midgets* and its progeny: an insured who is "cast in a defensive posture by

the legal steps an insurer takes in an effort to free itself from policy obligations, and who prevails

on the merits, may recover attorneys' fees incurred in defending against the insurer's action." *U.S.*

*Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597 (N.Y. 2004) (citing *Mighty*

---

[4] *See also* Ostrager & Newman, Handbook on Insurance Coverage Disputes § 5.06[b] (21st ed. 2022) (Under New York law, "[t]here is no recovery for attorneys' fees in an affirmative action brought by an insured to determine its rights, even when the insured is successful in establishing coverage."); Bad Faith Actions Liability & Damages § 4:15 (2d ed., updated Nov. 2023) (Under New York law, "***[t]he insured may not recover fees incurred in an action that the insured has initiated***." (emphasis added)); 14A Couch on Ins. § 207:87 (3d ed., updated Nov. 2023) (same).

*Midgets*, 47 N.Y.2d at 21) (quotations omitted). In *City Club Hotel*, for example, the Court of Appeals permitted fee shifting where the **insurer** filed (and lost) a declaratory judgment action against its policyholder in New York state court. *Id.* at 598.

However, neither *Mighty Midgets*, *New York University*, nor *City Club Hotel* expands this exception so far as to apply to a civil action commenced **by the insured**. To the contrary, sixteen years after the *Mighty Midgets* decision, the Court of Appeals wrote without reservation or qualification that "an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." *New York Univ.*, 87 N.Y.2d at 324. Likewise, in 2004, the Court of Appeals held that the exception applies only to a policyholder's fees "incurred in defending against the insurer's action." *City Club Hotel*, 3 N.Y.3d at 597.

The Court of Appeals has also never extended the exception to circumstances where, as here, an insurer merely declines coverage, or retains counsel, or uses a law firm to issue a declination of coverage letter to an insured that "includes extensive contract analysis." Objection at 2. Nor could it. If an insured could recover fees in these common circumstances, the rule set forth in *Mighty Midgets* and *New York University* would be swallowed by its own "narrow exception." *Emps. Mut. Cas. Co. v. Key Pharms.*, 75 F.3d 815, 824 (2d Cir. 1996).

### b. Match Cannot Rely on Beazley's Routine Acts or Outlier Cases to Escape Application of *Mighty Midgets* and *New York University*.

The vast majority of state and federal decisions have strictly enforced the *Mighty Midgets* rule and its "narrow exception" by refusing to shift fees in actions initiated by the policyholder (*see* 4–5, *supra*). For the reasons set forth above, this Court should follow in that path.

However, as with any rule applied to countless fact patterns over forty-five years, the *Mighty Midgets* rule's "narrow exception" for insurer-commenced actions has also generated interpretative commentary and outlier decisions from the state and federal courts in New York.

Some of those decisions have expounded upon *Mighty Midgets*' use of the phrase "defensive posture" to find that the exception to the no-fee-shifting rule could apply where the insurer takes a first "legal step" that is "tantamount to a lawsuit or an action brought by the insurer seeking to free itself from its policy obligations." *See* R&R at 9–10 (citing cases).

The R&R rightly concludes that Beazley took no such "legal steps" in this case. *See* R&R at 11–12. There is no authority to support Match's contentions that retaining outside counsel, declining coverage in writing, or filing a motion to dismiss constitute actions "tantamount to a lawsuit." And for good reason: as noted above, such exceptions would swallow the rule.

The R&R also rightly distinguishes outlier cases with unusual postures and no application here. *See* R&R at 12–14. In particular, both in its motion and Objection, Match relies heavily on the Southern District's decision in *Houston Casualty*. *See* Objection at 6–8.[5] However, *Houston Casualty* bears no resemblance to this case. In *Houston Casualty*, the insurer-plaintiff (Houston Casualty) sought contribution from another insurer (New York Marine) on the basis that Houston Casualty's insured (NYUHC) was an additional insured under a policy issued by New York Marine. *Houston Cas. Co. v. Prosight Specialty Ins., Co.*, 462 F. Supp. 3d 443, 444 (S.D.N.Y. 2020).[6] Critically, however, two years earlier and in a separate litigation, New York Marine

---

[5] Match's remaining cited authorities involve (i) irrelevant discovery disputes (*Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc.*, 1998 WL 729735 (S.D.N.Y. Oct. 16, 1998) (concerning privilege assertions); *Roc Nation LLC v. HCC Int'l Ins. Co., PLC*, 2020 WL 1970697 (S.D.N.Y. Apr. 24, 2020) (same); *In re Residential Cap., LLC*, 575 B.R. 29, 33 (Bankr. S.D.N.Y. 2017) (same)); (ii) cases where the court **declined** to award attorneys' fees (*Nationwide Mut. Ins. Co. v. Welch*, 988 F. Supp. 629, 631 (S.D.N.Y. 1997) (declining award to insured); *Folksamerica Reinsurance Co. v. Republic Ins. Co.*, 2004 WL 2423539, at *4 (S.D.N.Y. Oct. 29, 2004) (declining award in reinsurance dispute)); and (iii) a decision resolving a jurisdictional dispute (*Fed. Ins. Co. v. Safeskin Corp.*, 1998 WL 832706, at *1 (S.D.N.Y. Nov. 25, 1998)). *See* Objection at 2–3, 6–7, 10. These irrelevant decisions only demonstrate the absence of authority supporting Match's position.

[6] The complaint mistakenly named Prosight Specialty Insurance Company, instead of New York Marine, as the defendant. *Houston Cas. Co.*, 462 F. Supp. 3d at 444 n.1.

(through its insured, Nouveau) had filed counter-claims seeking to resolve the same coverage issues. *Id.* at 445; *see also id.* at 452 (explaining New York Marine "resisted … [the] duty to defend …. in Nouveau's counterclaim seeking a judgment against NYUHC and an accompanying declaration that it lacked such a duty," among other ways). This was despite lacking any reasonable basis for denying coverage, since the policy "made this duty plain." *Id.* at 452. In light of these "unusual circumstances," including New York Marine's efforts to initiate a proxy coverage battle through its insured, the court awarded the insurer-plaintiff fees. *Id.*[7]

As the R&R observed, *Houston Casualty* is "distinguishable." *See* R&R at 12–13. Match and Beazley have litigated a standard coverage dispute brought by an insured against its insurer – not a contribution claim between two insurers that insured two different policyholders. Unlike the insurer in *Houston Casualty*, Beazley never initiated a counterclaim in separate litigation to obtain a judgment of no coverage. And finally, the coverage issues here were not "plain," as in *Houston Casualty*. In fact, according to Match, the issues here presented such "novel and difficult questions" that only "an AmLaw 100 firm with a robust Band One *Chamber's*-ranked insurance practice" could handle the case. ECF No. 58 at 21–23.[8]

---

[7] In addition to the *Zurich-American* case (distinguished *infra* at 9–10), Match's Fee Motion previously relied on three other decisions purportedly supporting its claim to attorneys' fees: *American Motorists*, *Louisiana Generating*, and *Hervochon*. ECF No. 58 at 13 n.4. In opposition to Match's motion, Beazley comprehensively distinguished these cases presenting distinct procedural postures – such as where insurers commenced the first action, but lost the race serving the complaint. ECF No. 67 at 17–19. In its Objection, Match has abandoned its reliance on these decisions.

[8] Match belatedly changes its tune, arguing that Beazley based its denial on an unreasonable interpretation of the Policy. Objection at 7. Match contends that "[t]his Court found the policy's definition of 'Claim' was unambiguous," (*id.* at 7 n.1), but "would have found ambiguity had Beazley's interpretation also been reasonable." *Id.* at 3. Match is wrong. Beazley has always argued (and the Court agreed) that the Policy is unambiguous. *See, e.g.*, ECF No. 34, Beazley Br. ISO Motion to Dismiss, at 15. The Court merely disagreed with Beazley that the Mellesmoen Letter constituted a "Claim" under the Policy. But, in so doing, the Court granted Beazley's Motion to Dismiss Match's breach of the implied covenant of good faith and fair dealing claim, demonstrating the reasonableness of Beazley's position. *See* ECF No. 48 at 15.

In essence, Match tries to convert *Houston Casualty* – a Southern District decision concerning unusual circumstances not present here – into something it cannot be: an alteration to, or expansion of, the clear rule set forth in *Mighty Midgets* and *New York University*. But it is those two Court of Appeals decisions, not *Houston Casualty* or any other Southern District case particular to its facts, that must form the "ultimate source" of this Court's ruling on Match's motion and Objection. *Borley v. United States*, 22 F.4th 75, 82 (2d Cir. 2021) (discounting "federal court opinions" as a basis for state law adjudication); *see also Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 101 (2d Cir. 2021) ("In [diversity] cases, 'the highest court of a state has the final word on the meaning of state law….'").[9]

### III.      Match Cannot Recover Fees Incurred After Beazley's Appeal.

Alternatively, relying solely on its misreading of an Appellate Division decision in *City of New York v. Zurich-Am. Ins. Grp.*, Match seeks an award of its fees from when Beazley appealed this Court's judgment. Objection at 4–6. In *Zurich-American*, the insured sued its insurer, and the court granted summary judgment in the insured's favor. 811 N.Y.S.2d 773, 774 (2d Dep't 2006). The insurer then tried to "relitigate anew the declaration of coverage issue based upon a ***new theory***." *City of New York v. Zurich-Am. Ins. Grp.*, 798 N.Y.S.2d 708 (Sup. Ct. 2004) (emphasis

---

[9] Match also cites the controversial Restatement, cherry-picked decisions from foreign jurisdictions, and one professor's treatise. Objection at 8–9, nn.2 & 4. These authorities are not persuasive and advocate a minority position. *See, e.g.*, George L. Priest, *A Principled Approach Toward Insurance Law: The Economics of Insurance and the Current Restatement Project*, 24 Geo. Mason L. Rev. 635, 636 (2017) (criticizing the Restatement as "a strikingly pro-policyholder statement, not generally reflective of the law in various U.S. jurisdictions"); 14A Couch on Ins. § 207:87 (3d ed., updated Nov. 2023) ("According to most authorities, where the insured prosecutes the declaratory judgment action, attorney's fees are not recoverable even where the insured prevails in the suit."). Regardless, they cannot abrogate controlling New York Court of Appeals precedent and express policy preferences. *See Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21–22 (1979) (weighing fee-shifting costs and benefits before adopting rule barring recovery of fees in actions brought by insureds).

added). Under those unusual circumstances, the court awarded the insured fees incurred defending against the post-summary-judgment motions. *Zurich-Am.*, 811 N.Y.S.2d at 775.

The *Zurich-American* decision has no application here. In this case, Beazley did not move to reopen pleadings after the Court entered summary judgment. Nor did Beazley assert new theories after the Court entered judgment for Match. Beazley appealed this Court's entry of judgment by advancing the ***same*** theory elaborated in its Motion to Dismiss. *See Match Group, LLC v. Beazley Underwriting Ltd.*, Case No. 23-1058 (2d Cir.), ECF No. 10 at 5 (proposed issues on appeal). Moreover, an appeal is ***not*** a "whole new action," as Match contends. *See, e.g.*, *Gulf Ref. Co. of Louisiana v. United States*, 269 U.S. 125, 137 (1925) ("[a]n appeal is not a new suit in the appellate court, but a continuation of the suit in the court below" and "a step toward the final adjudication of the original cause, which the law allows quite as much as it allows a defense in the first instance"); *Hosp. Ass'n of New York State v. Toia*, 435 F. Supp. 819, 829 (S.D.N.Y. 1977). The Court should reject Match's request for attorneys' fees from when Beazley appealed.[10]

<u>CONCLUSION</u>

The New York Court of Appeals' decisions in *Mighty Midgets* and *New York University* bar Match from recovering attorneys' fees in this action. Beazley respectfully requests that the Court reject Match's Objection and adopt the Magistrate R&R denying Match's Motion for Attorneys' fees.

---

[10] In any event, Match's request for fees after Beazley's appeal is premature because it seeks an award of fees without contemporaneous proof of fees incurred, and Beazley's appeal remains ***pending***. *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 2021 WL 1549916, at *6 (S.D.N.Y. Apr. 20, 2021) (requested fee awards without contemporaneous records are generally denied).

-11-

Respectfully submitted,

By:  /s/ *Jonathan S. Zelig*
Jonathan S. Zelig
**DAY PITNEY LLP**
One Federal Street
Boston, MA 02110
jzelig@daypitney.com
Tel. (617) 345-4601
Fax (617) 892-4236

*Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 24, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jonathan S. Zelig*
Jonathan S. Zelig